IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **GRISSELLE RAMOS, on behalf of herself and all others similarly situated** | ) <br> ) <br> ) <br> ) Case No. 08cv2703 EDA <br> ) <br> ) Judge Lefkow <br> ) <br> ) Magistrate Judge Ashman <br> ) <br> ) <br> ) <br> ) <br> ) |
| Plaintiffs, | |
| v. | |
| **PLAYTEX PRODUCTS, INC., RC2 CORPORATION, LEARNING CURVE BRANDS, INC., and MEDELA, INC.,** | |
| Defendants. | |

### MEDELA INC.'S BRIEF IN SUPPORT OF MOTION TO SEVER CLAIMS AGAINST MEDELA INC.

Plaintiff Grisselle Ramos ("Ramos") filed this putative nationwide class action complaint against Defendant Medela Inc. ("Medela") and three defendants not related to Medela, indiscriminately lumping together all claims against all defendants. Ramos improperly joined her claims against Medela with her claims against the other defendants because she cannot satisfy the requirements for joinder under Federal Rule of Civil Procedure 20(a) -- namely, (1) that the claims arise out of the same transaction, occurrence, or series of transactions and occurrences, and (2) that some question of law or fact common to all the parties arises in the action. Here, Ramos' claims (and the claims of the putative class members) against Medela, and their operative facts, are not logically connected to the claims against the other defendants. Defendants manufacture different products, have different marketing, and have different purchasers who have different children. Thus, key factual and legal issues, such as whether there is exposure to lead, causation, and damages will be different for each defendant, each product, and each plaintiff.

Moreover, severing the claims against Medela would promote judicial economy and prevent the prejudice to Medela that otherwise would result from the joinder of all claims against all defendants. Accordingly, Medela respectfully requests, pursuant to Federal Rule of Civil Procedure 21, that Ramos' claims against Medela in these two cases be severed immediately from the claims against the other defendants for all purposes, and that all proceedings pertaining to Medela be separate from the proceedings against the other defendants.

## BACKGROUND

Plaintiff Grisselle Ramos ("Ramos"), filed this putative nationwide class action complaint against three unrelated defendants, Playtex Products, Inc., RC2 Corporation ("RC2"), and Medela.[1] (Ramos Compl. at ¶¶ 1, 9-12 (filed May 9, 2008).)[2] Ramos alleges that the defendants manufacture, import, and/or distribute their own, different products:

- "a vinyl cooler for storing breast milk[,] made by Medela";

- "a carrying case for a First Years 'Natural Transitions' breast pump made by RC2"; and

- "a Playtex 'Fridge to Go' vinyl baby bottle cooler".

(*Id.* at ¶¶ 1, 31, 49.)

Ramos contends that defendants' different products are unsafe for newborns and children because the products allegedly increased their exposure to lead. (*Id.* at ¶¶ 2, 4, 6, 30-32.) Ramos has asserted consumer fraud claims under the laws of 43 jurisdictions, breach of the implied warranty of merchantability under the laws of 23 jurisdictions, and negligence and unjust enrichment claims under the laws of all fifty states. (*Id.* at ¶¶ 60-89.) She seeks to recover, for

---

[1] A fourth defendant, Learning Curve Brands, Inc. ("LCB"), is a subsidiary of one of the other defendants, RC2 Corporation, and is not alleged to be a manufacturer of any product that is at issue in this litigation. LCB apparently is involved with licensing and distributing products for RC2, including the RC2 product at issue in this litigation.

[2] For purposes of this motion only, Medela accepts as true the allegations set forth in the respective complaints.

herself and others, money paid to purchase defendants' products, as well as the costs of medical monitoring relating to the alleged increased exposure to lead from the defendants' three different products. (*Id*. at ¶¶ 7, 47-48.) Ramos also seeks disgorgement and injunctive relief. (*Id*. at ¶¶ 57, 67, 89.)

Ramos alleges that she purchased "one or more" of defendants' products. (*Id*. at ¶ 8.) However, she does *not* specify which product(s) she purchased. Nor has Ramos alleged when, where, and from whom she purchased the product(s); what she knew about the product(s) that she purchased; what marketing she has seen and how that marketing affected her decision to purchase; how she used the product(s); or how and to what extent her child was (or children were) exposed to lead from the product(s). (*Id*., *passim*.) Ramos also does not allege any agreement or other connection between Medela and any of the other defendants. (*Id*.) Nor does Ramos allege that Medela is jointly and severally liable with any of the other defendants. (*Id*.)

Approximately one week *after* filing the instant action, counsel for Ramos filed a second, nearly identical putative nationwide class action against these same defendants. The only differences in the allegations between the two complaints relate to (1) the identity and number of the named plaintiffs, and (2) the states of citizenship of the plaintiffs.[3]

### ARGUMENT

**I.    CLAIMS AGAINST A PARTY MAY SEVERED IF JOINDER IS IMPROPER.**

Pursuant to Rules 20 and 21 of the Federal Rules of Civil Procedure, this Court should sever all claims against Medela from the claims against the other defendants because Ramos improperly joined her claims against Medela with her claims against the other defendants.

---

[3]    Medela will be filing a motion to sever in that case in due course.

Rule 20, which governs joinder issues, provides that parties may be joined as defendants in a single action only if "there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a). Thus, plaintiffs may join multiple defendants in an action *only* if (1) the claims "arise out of the same transaction, occurrence or series of transactions", *and* (2) "some question of law or fact common to all the parties" arises in the action. *Rowell v. Voortman Cookies, Ltd.*, No. 02 C 0681, 2005 U.S. Dist. LEXIS 20260, *7 (N.D. Ill. Sept. 14, 2005) (Darrah, J.); *see also, Intercon Res. Assocs., Ltd. v. Dresser Inds., Inc.*, 696 F.2d 53, 57 (7th Cir. 1982). The joinder rule, as is evident from its two criteria, promotes efficiency and helps avoid inconsistent judgments because all interested parties may be joined in a single proceeding and bound by a single judgment. *Hussain v. TCF Bank*, No. 03 C 9404, 2004 U.S. Dist. LEXIS 12035, *6 (N.D. Ill. Jun. 30, 2004) (Der-Yeghiayan, J.); *Insolia v. Philip Morris Inc.*, 186 F.R.D. 547, 549 (W.D. Wis. 1999).

"Misjoinder" occurs when plaintiffs fail to satisfy either of the two requirements of Rule 20(a). *E.g., Bailey v. The Northern Trust Co.*, 196 F.R.D. 513, 515 (N.D. Ill. 2000) (Alesia, J.). Additionally, joinder of parties also must "comport with fundamental fairness," and a court can deny joinder if it would "cause prejudice, expense, or delay," even if the two prerequisites of Rule 20(a) are satisfied. *Direct TV, Inc. v. Delaney*, 03 C 3444, 2003 U.S. Dist. LEXIS 24262, *14 (N.D. Ill. Nov. 20, 2003) (Kocoras, J.); *see also, Ambrose v. Steelcase, Inc.*, 2002 U.S. Dist. LEXIS 12527, *21 (N.D. Ill. Jul. 3, 2002) (Lefkow, J.) (severing claims against defendant to serve "just, speedy and inexpensive" disposition of the litigation).

A court "may sever any claim" against a misjoined defendant. Fed. R. Civ. P. 21. Rule 21 does not prescribe standards regarding proper joinder, so courts decide whether to grant a motion for severance based on the requirements and policy considerations underlying permissive joinder under Rule 20(a). *See*, *e.g.*, *Bailey*, 196 F.R.D. at 515 (considering "both requirements of Rule 20(a)" in granting motion to sever). Here, Ramos has not, and could not, satisfy either of the requirements of Rule 20(a). Moreover, the claims against Medela should be severed to further judicial efficiency and ensure that Medela is not prejudiced.

## II. JOINDER OF THE CLAIMS AGAINST MEDELA WITH THE CLAIMS AGAINST THE OTHER DEFENDANTS VIOLATES RULE 20(a).

### A. Ramos' claims against Medela do not arise out of the same transactions or occurrences that give rise to Ramos' claims against the other defendants.

Alleging similar statutory violations or similar facts is insufficient to satisfy the "same transaction or occurrence" requirement. *See Direct TV*, 2003 U.S. Dist. LEXIS 24262 at *14 ("Simply alleging a similar statutory violation is not enough to satisfy the 'same transaction or occurrence requirement.'"). Only "logically related events" giving rise to a cause of action constitute a transaction or occurrence. *Id.* at *16 (claims do not arise out of the same transaction or occurrence when jury's resolution of fact-specific questions for one defendant would be "completely independent of its tasks in answering those questions with regard to the other defendants").

In this case, Ramos' claims against Medela cannot arise out of the same transactions or occurrences as those that give rise to Ramos' claims against the other defendants because the claims and their operative facts are not logically connected to each other. Most significantly, Ramos' acknowledges in her complaints that each defendant has its own separate product. (Ramos Compl. at ¶¶ 1, 31, 49.) Thus, a fundamental issue that underlies every claim

5

in the case -- the amount of exposure to lead, if any -- necessarily will be different for each defendant's product.

Moreover, the circumstances surrounding each Ramos' (and the putative class members') purchases of a product manufactured by one of the defendants are not connected to each other. Ramos and each class member certainly did not purchase the defendants' different products at the same time or from the same vendors because Ramos purports to represent a nationwide class. (Ramos Compl. at ¶¶ 49-50, 61, 68, 78, 85.) Nor is there any indication in the Complaint that the defendants' marketing statements were identical (indeed, the complaints identify different website statements for each defendant) nor any allegation that Ramos and the putative class members saw, heard, and were affected to the same extent by the defendants' different marketing communications. There is no suggestion that Ramos' and the putative class members' particular use (*e.g.*, habit, duration) of the different products allegedly exposed their children to lead in the same way and to the same degree (if at all). Finally, Ramos does not allege any agreement or other connection between Medela and any of the other defendants, nor that Medela is jointly and severally liable with any of the other defendants. All of these factual differences preclude a finding that the claims against Medela arise from the same transactions or occurrences, or series of transactions or occurrences, that give rise to the claims against the other defendants. *See Hussain*, 2004 U.S. Dist. LEXIS 12035 at*6 (the "many factual differences between the claims … illustrate that Plaintiffs' claims are indeed entirely separate claims arising from different occurrences").

The only similarity between Ramos' claims (and the claims of the putative class members) -- a generic allegation of "significant exposure" to lead from defendants' products -- is superficial at best. (Ramos Compl. at ¶ 48.) Even that allegation is, in actuality, packed with

6

numerous different factual circumstances: different defendants' different products supposedly exposed Ramos' and the putative class members' different children to lead to varying degrees (if at all) with varying effects (if any). Moreover, and in any event, a generic exposure claim against various manufacturers does not establish that legal claims against those manufacturers arose out of the same transactions or occurrences. *See Adams v. Minnesota Mining and Mfg. Co.*, No. 6:04-521-DCR, 2005 U.S. Dist. LEXIS 27404, *18 (E.D. Ky. Jan. 27, 2005) ("a generic claim against various manufacturers is not necessarily sufficient to find that the plaintiffs claims arose out of the same 'transactions or occurrences'"); claims relating to defective respirators severed when the manufacturers were different, plaintiffs used different respirators for varying periods of time, and the safety information conveyed by each company was likely to be different); *Graziose v. Am. Home Prods. Corp.*, 202 F.R.D. 638, 640 (D. Nev. 2001) (claim of exposure to same active ingredient in different medicines manufactured by different defendants improperly joined); *Insolia v. Philip Morris Inc.*, 186 F.R.D. 547, 550-51 (W.D. Wis. 1999) (no common transaction or occurrence underlying claims against five tobacco companies who have manufactured numerous brands of cigarettes).

The *Graziose* case is particularly instructive. In *Graziose*, the district court severed claims that plaintiffs brought against a number of medicine manufacturers based on alleged exposure to the same active ingredient, phenylpropanolamine ("PPA"). *Graziose*, 202 F.R.D. at 638-41. Although all plaintiffs had taken medicines containing PPA, the medicines taken by the plaintiffs were different and were manufactured by different defendants. *Id.* at 640. The court noted that "[t]he single thread attempting to tie these claims together is the alleged existence, in the various medicines, of … phenylpropanolamine." *Id.* at 639. The court quickly found Plaintiffs' claims were not based on the same transactions or series of transactions: "[The

7

purchases and ingestions] occurred at different times. The medicines were different. The retailers were different. The manufacturers are different." *Id.* at 640. Thus, the court concluded that joinder was improper. *Id*.

The same is true here. Ramos and the putative class members have purchased different products from different manufacturers at different times from different stores, and they likely had different patterns of use of those products. Like *Graziose*, "[t]he single thread attempting to tie these claims together is the alleged existence, in the various [products]," of some amount of lead to which Ramos' and the putative class members' children supposedly were exposed to some degree. As in *Graziose*, such claims are not properly joined in a single action. *See also Gill v. Ethicon, Inc.*, 2001 U.S. Dist. LEXIS 24005 (W.D. La. Aug. 1, 2001) (granting motion to sever in case involving multiple manufacturers of different products).

In sum, Ramos fails to satisfy the requirement that the claims against Medela arise from the same transactions or occurrences that give rise to the claims against the other defendants. That deficiency alone renders joinder of the claims improper and warrants severance of the claims against Medela.

> **B.  Ramos' claims against Medela do not present questions of law or fact common to all the parties.**

Ramos' claims against Medela also do not share a common question of law or fact with her claims against the other defendants. Claims that merely arise under the same "general theory of law" do not establish commonality under Rule 20(a). *Bailey*, 196 F.R.D. 513, 517 (when factual and legal questions "are based upon wholly separate acts of the defendant with respect to each plaintiff, the second requirement of Rule 20(a) is not met"). Similarly, commonality is not established when "the questions of law and fact will have to be tailored to the

8

particulars of each individual defendant's actions, rather than being common to all." *Direct TV*, 2003 U.S. Dist. LEXIS 24262 at *17. As the district court in *Graziose* stated:

> Common issues of law does not mean common issues of an area of the law. For example, while two or more persons could sue a common defendant for Title VII discrimination, based upon the same policies or conduct, all plaintiffs could not join together in one large lawsuit, to sue all defendants for Title VII discrimination, just because all their claims involve Title VII discrimination.

*Graziose*, 202 F.R.D. at 640.

That is precisely what Ramos is trying to do here -- improperly join her claims (and the claims of putative class members) against multiple defendants, based on the same legal theories and a generic allegation of "increased exposure" to lead, when such claims are factually and legally unconnected. As detailed above, the facts and circumstances that underlie Ramos' and the putative class members' claims against Medela are different than the facts and circumstances relevant to their claims against the other defendants. Additionally, key legal and factual issues such as whether there is exposure, causation, and damages will be different for each defendant because of the different products, manufacturing processes, marketing, purchasers, and purchasers' children. Those differences vividly demonstrate the lack of commonality and, thus, show the impropriety of joinder under of Rule 20(a). *See In re Rezulin Prods. Liab. Litig.*, MDL No. 1348, 168 F. Supp. 2d 136, 146 (S.D.N.Y. 2001) ("toxic tort cases raise more complicated issues of causation and exposure"; severing claims against *single* manufacturer of medication when plaintiffs did not allege they received medication from the same source or were exposed to it for similar periods of time); *Graziose*, 202 F.R.D. at 640 ("The damages involve different people with different sets of facts. The purchases, the use, the need, the motivation, the knowledge of the parties, the alleged reliance, apparently the exact nature of the injuries or damages, the potential for contributing factors … are all questions

peculiar to each claim.") Even the generic allegation that all defendants' products contain lead does not establish commonality because the Court still must assess issues different as to each defendant, including, at a minimum, the lead content of each product, the supposed exposure to lead (if any) associated with that content, and the marketing conduct of each defendant. *Graziose*, 202 F.R.D 638, 639 (commonality not established, despite allegation that all defendants exposed plaintiffs to PPA, as claims concerned "different medicines with distinct propensities, which may have contributed to the effects of the individual medicines on individual persons").

Accordingly, Medela is misjoined in these cases because of a lack of common issues of law and fact between the claims against the defendants. Ramos' failure to satisfy either of the two requirements for permissive joinder under Rule 20(a) makes severance of the claims against Medela proper pursuant to Rule 21.

### III.  SEVERANCE OF THE CLAIMS AGAINST MEDELA WILL SERVE JUDICIAL ECONOMY AND PREVENT PREJUDICE TO MEDELA.

Even if Ramos could establish the prerequisites for joining her claims (and the putative class members' claims) against Medela with those against the other defendants, which she cannot, this Court still should sever the claims against Medela to promote judicial economy and fairness to the parties, and to prevent undue prejudice to Medela.

Joinder is intended to serve judicial efficiency. *See, e.g., Hussain*, 2004 U.S. Dist. LEXIS 12035, at *6. Judicial efficiency is frustrated when a court must oversee an unnecessarily complex action with a multiplicity of facts and parties that will only complicate discovery and confuse a jury. *Id.* at *6 (judicial efficiency not served by handling what were effectively three separate discrimination claims in one action); *Insolia*, 186 F.R.D. at 549 ("[j]udicial resources

are wasted, not conserved, when a jury is subjected to a welter of evidence relevant to some parties but not others"). Additionally, in determining whether to sever claims, a court must ensure its decision comports with "fundamental fairness." *Direct TV*, 2003 U.S. Dist. LEXIS 24262, at *14; *Adams*, 2005 U.S. Dist. LEXIS 27404, *20 (court must consider whether it is fair to the individual defendants to defend an action from multiple plaintiffs who used products made by different manufacturers).

Here, allowing Ramos to join her claims against Medela with those against other defendants will undermine judicial economy and fairness. Joinder of these factually and legally distinct claims would create a more complicated and burdensome discovery process for Medela by requiring it to participate in discovery and other pre-trial proceedings that have little or no relevance to the claims against Medela. *See Graziose*, 202 F.R.D. at 641 (granting severance as joinder "would permit the Plaintiffs to significantly increase the cost to Defendants by forcing them to participate in discovery or other proceedings that are irrelevant to the claims against each of them").

Moreover, judicial economy would be undermined, and prejudice to Medela would be palpable, by joining all claims against all defendants in this litigation. On one level, Medela could face a jury swamped and confused by a sea of evidence that is relevant to some but not all of the parties. *See Graziose*, 202 F.R.D. at 641 (claims against multiple manufacturers must be "handled individually in a manageable manner, rather than in a combined lawsuit which would only require an unmanageable trial be conducted in such a way as to create confusion and chaos for the jury"); *Insolia*, 186 F.R.D. at 549. On a different level, there is a distinct possibility that Medela would be prejudiced by having the claims against it joined with the claims against the other defendants. For example, Ramos has included in her complaint

11

prejudicial allegations that one of the defendants, LCB, issued massive recalls on popular children's toys due to lead in those products -- even though those products are not at issue in this case. (Ramos Compl. at ¶ 11.) There is no question that, should such allegations ever be presented to a jury, those allegations would have enormous potential to prejudice other defendants by tainting them unfairly with irrelevant and unrelated conduct.

Accordingly, in the interests of judicial economy and fairness to the parties, this Court should sever all claims against Medela into a separate action.

## CONCLUSION

For the reasons set forth above, Medela respectfully requests that the Court grant the motion and enter an order severing the claims against Medela for all purposes.

Dated:  June 2, 2008

Respectfully submitted,

MEDELA INC.

By:  /s/ Susan M. Benton
         One of Its Attorneys

**WINSTON & STRAWN LLP**
Susan M. Benton  (sbenton@winston.com)
Alexis T. MacDowall  (amacdowall@winston.com)
Kevin A. Banasik  (kbanasik@winston.com)
Charles W. Kierpiec  (ckierpiec@winston.com)
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600
(312) 558-5700 (fax)

*Attorneys for Defendant,*
  *Medela Inc.*

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 2nd day of June 2008, I caused a copy of the foregoing document, MEDELA INC.'S BRIEF IN SUPPORT OF MOTION TO SEVER CLAIMS AGAINST MEDELA INC., to be filed electronically.  Notice of this filing will be sent to the following counsel by operation of the Court's ECF system.  Parties may access this filing through the Court's system.

              /s/ Charles W. Kierpiec


*Attorneys for Plaintiffs:*

  Mary Jane Fait  (fait@whafh.com)
  Adam J. Levitt  (levitt@whafh.com)
  Theodore B. Bell  (tbell@whafh.com)
  WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC
  55 West Monroe Street
  Suite 1111
  Chicago, Illinois 60603
  T: (312) 984-0000

*Attorneys for RC2 Corporation and Leading Curves Brands, Inc.:*

  Bart Thomas Murphy  (bart.murphy@icemiller.com)
  Thomas J. Hayes  (thomas.hayes@icemiller.com)
  ICE MILLER LLP
  2300 Cabot Drive
  Suite 455
  Lisle, Illinois 60532
  T: (630) 955-6392