UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GRISSELLE RAMOS, on behalf of herself and others similarly situated, ) ) ) | |
| Plaintiff, ) ) | Case No. 08-CV-2703 |
| v. ) ) | Judge Lefkow |
| PLAYTEX PRODUCTS, INC., RC2 CORPORATION, LEARNING CURVE BRANDS, INC., and MEDELA, INC., ) ) ) ) | Magistrate Judge Schenkier |
| Defendants. ) | |
| DINA SCALIA, et al., on behalf of themselves and others similarly situated, ) ) ) | |
| Plaintiffs, ) ) | Case No. 08-CV-2828 |
| v. ) ) | Judge Lefkow |
| PLAYTEX PRODUCTS, INC., RC2 CORPORATION, LEARNING CURVE BRANDS, INC., and MEDELA, INC., ) ) ) ) | Magistrate Judge Ashman |
| Defendants. ) | |
| JESSICA SMITH, on behalf of herself and all others similarly situation, ) ) ) | |
| Plaintiff, ) ) | Case No. 08-CV-3352 |
| v. ) ) | Judge Lefkow |
| PLAYTEX PRODUCTS, INC., RC2 CORPORATION, LEARNING CURVE BRANDS, INC., and MEDELA, INC., ) ) ) ) | Magistrate Judge Brown |
| Defendants. ) | |

**BRIEF IN SUPPORT OF DEFENDANT PLAYTEX PRODUCTS, INC.'S
MOTION TO SEVER CLAIMS AGAINST PLAYTEX PRODUCTS, INC.**

1466474.04

## Introduction

The claims of Plaintiffs against Defendant Playtex Products, Inc. ("Playtex") should be severed from the claims against the other defendants in this case. The other defendants, RC2 Corporation, Learning Curve Brands, Inc.,[1] and Medela, Inc. are not related to Playtex by common ownership, control or otherwise. Plaintiffs' claims against those other defendants arise from products and conduct that are wholly separate from the products and conduct that have led Plaintiffs to sue Playtex.

Under Rule 20(a), defendants may be joined in a single civil action only if (1) a right to relief is asserted against them jointly, severally, or in the alternative arising out of "the same transaction or occurrence, or series of transactions or occurrences" and (2) "any question of law or fact common to all defendants will arise in the action." The transactions and occurrences giving rise to Plaintiffs' claims against Playtex are the design, manufacture, and marketing of "Fridge to Go" baby bottle totes. Playtex's design, manufacture and marketing of those totes is unrelated in any way to RC2's and Medela's design, manufacture, and marketing of their products at issue in this action. For this reason, the "transactional relatedness" that is required for joinder under Rule 20 is missing here. The practical advantages of common treatment of related claims that are obtained by joinder of defendants under Rule 20 are absent from this case. The Court should order severance.

## Plaintiffs' Complaints

Plaintiff Ramos filed a complaint on May 9, 2008, joining these unrelated defendants in this putative nationwide class action. Approximately one week after filing the action, counsel for

---

[1] Learning Curve Brands, Inc. is apparently a marketing subsidiary of manufacturer RC2 Corporation and is responsible for the advertising and promotion of the RC2 product at issue in this litigation. (Compl., at ¶ 11.) For purposes of this brief, all references to RC2 should be assumed to include Learning Curve Brands.

Ramos filed a second putative nationwide class action joining the same defendants, with the sole difference between the complaints being the plaintiffs' names and states of citizenship. On June 11, 2008, Plaintiff Smith filed a third putative nationwide class action complaint against the same defendants. Although Plaintiff Smith is represented by different counsel, the only difference between her complaint and the earlier two complaints are the plaintiffs' names and states of citizenship.[2] This Court has now consolidated the Scalia and Smith cases into the present case. (Dkt. ## 40, 60).

Plaintiffs' complaints do not explain why these three particular defendants were joined in one action. The complaints allege that a California environmental group, the Center for Environmental Health, identified these three particular defendants in a report on the lead content of children's products. (Compl., at ¶¶ 4-5, 30-32.)[3] The complaints also allege that each one of the three different products manufactured by each one of the three different defendants is unsafe for children because each allegedly increases a child's risk of lead exposure. (Compl., at ¶¶ 2, 4, 6, 30-32.) The variety of products at issue in this lawsuit range from a vinyl breast milk storage cooler manufactured by Medela to a breast pump carrying case manufactured by RC2. (Compl., at ¶ 31.) Also included in this assortment is Playtex's "Fridge-to-Go" vinyl portable bottle cooler. (Compl., at ¶ 31.)

Plaintiffs have alleged four counts against each defendant. They assert: (1) that each defendant's advertising and marketing materials were deceptive and unfair, and thus in violation of the deceptive trade practice laws of forty-three states. (Compl., at ¶¶ 42-44, 62-64); (2) that

---

[2] Plaintiffs Lopez and Smith both allege that they are citizens of California.

[3] All references and citations to the complaint are to Plaintiff Ramos's Complaint. As previously noted by Plaintiffs, the complaints in these consolidated actions are substantively identical. (*See* Dkt. # 43 at 2 n.1.)

each product breaches the implied warranty of merchantability in twenty-three states (Compl., at ¶¶ 68-77); and (3) that each defendant was negligent and failed to exercise ordinary care in the development of its product (Compl., at ¶¶ 78-84). Plaintiffs seek disgorgement and injunctive relief from each defendant. (Compl., at ¶¶ 85-89.) Plaintiffs demand refunds of the money they paid for the defendants' products, as well as recovery of their past or future expenses in obtaining the medical testing and monitoring they claim is necessary due to their children's exposure to traces of lead allegedly contained in the defendants' various products. (Compl., at ¶¶ 7, 47-48.)

The named plaintiffs do not claim that any of them actually purchased a Playtex product. Rather, they assert that they purchased "one or more" of the three different products made by the three different defendants. (Compl., at ¶ 8.) Plaintiffs do not allege that Playtex is liable jointly, severally, or in the alternative with any other defendant. Nor do they allege that the conduct of Playtex giving rise to their claims was undertaken in collaboration with RC2 or Medela, or that there is any relationship or arrangement between Playtex and RC2, or between Playtex and Medela.

## Argument

I. **THE TRANSACTIONAL RELATEDNESS REQUIRED FOR JOINDER OF DEFENDANTS IS ABSENT FROM THIS CASE.**

   A. **The Governing Standards**

      1. **Time for a Severance Motion**

To further "the just, speedy and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, the rules of procedure accord the Court wide discretion in defining the structure of the case before it. In the first instance, the choice belongs to the plaintiff, who is given broad latitude in framing the dispute. Many plaintiffs may join in a single

4

action, and plaintiffs may join many defendants in a single action, so long as there is at least one common issue of law or fact and the joined claims arise from "the same transaction, occurrence or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(1)(A), (2)(A).

The plaintiff's choice is not, however, the final one. The rules accord the Court authority to change the shape of a case to promote the efficient administration of justice and avoid prejudice to the other parties where circumstances require. If the requirements of Fed. R. Civ. P. 19 (Required Joinder) or Fed. R. Civ. P. 20 (Permissive Joinder) are not met, Fed. R. Civ. P. 21 permits the Court to order that parties be dropped or added, or that one or more claims be severed from the others. The effect of a severance is not simply separate trials, but the division of one civil action into two or more civil actions, each to proceed separately through the pretrial process, trial and appeal. *See Gaffney v. Riverboat Servs. of Ind.*, 451 F.3d 424, 440-44 (7th Cir. 2006); 4 James W. Moore, *Moore's Federal Practice* § 21.06, at 21-26 (3d ed. 2008). Rule 21 has been interpreted to permit such a severance even where the initial joinder was technically proper. *See Randleel v. Pizza Hut*, 182 F.R.D. 542, 545 (N.D. Ill. 1998); *see also* 4 James W. Moore, *Moore's Federal Practice* § 21.05 at 21-21, n.1 (3d ed. 2008).

Apart from the rules related to severance, Rules 20(b) and 42(b) permit separate trials of previously joined claims in a wide variety of circumstances. Similarly, if two cases have not previously been consolidated or even if they have previously been severed because of misjoinder, the court may order a joint trial where there is a common issue of law or fact and justice would be served by such a trial. Fed. R. Civ. P. 42(a).

As the distinction made between severance and separate trials shows, the Court need not await the eve of trial to exercise its authority to reshape the case. A Rule 21 motion to drop or add parties may be made "at any time" under the language of the Rule. Severance motions are

commonly made and granted at early stages of proceedings. *See, e.g., Androphy v. Smith & Nephew*, 31 F. Supp. 2d 620, 623 (N.D. Ill. 1998) (granting severance motion made at same time as initial Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction); *Morton Grove Pharm. v. National Pediculosis Ass'n*, 525 F. Supp. 2d 1049, 1051 (N.D. Ill. 2007) (granting severance motion made by newly-joined defendant).

If granting a severance motion is to advance the "just, speedy and inexpensive" determination of the action against a defendant, whether to sever should be decided early, particularly when misjoinder is apparent. This is especially true in a complex putative nationwide class action like this one, where the pretrial stage promises to be complex and expensive, and the complexity and expense for each defendant will be greatly increased by its joinder in a single action with other, entirely unrelated defendants. Thus, contrary to a position taken by Plaintiffs in responding a Motion to Sever filed by co-defendant Medela (*see* Dkt. # 49), it is appropriate for the Court to consider severance at this time.

### 2. Existence of a Common Question

Under Rule 21, severance is the proper remedy if defendants are misjoined under the test for permissive joinder contained in Rule 20. Of the two Rule 20 requirements for joinder of defendants--that the claims against the defendants arise from a common transaction or occurrence or series of transactions or occurrences and that there be at least one common issue of law or fact--the second is easier to satisfy. *See* 4 James W. Moore, *Moore's Federal Practice* § 20.04[1] at 20-28 (3d ed. 2008). It is uncertain in this case whether even this minimal requirement is met.

It is not enough to create a common issue that the claims are based on similar theories of law. *Randleel*, 182 F.R.D. at 545 n.10. Rather, what is necessary is that there be common and

disputed issues of law or fact that admit of joint adjudication, so that the efficiencies that are served by joinder of logically related claims can be achieved. Permissive joinder under Rule 20 is animated by "the promotion of efficiency, convenience, consistency, and fundamental fairness." *Cole v. Litscher*, No. 04-C-116-C, 2004 U.S. Dist. LEXIS 4900, at *14-15, 2004 WL 602660, at *5 (W.D. Wis. Mar. 15, 2004). At the threshold, true common issues must be present before these goals can be achieved by joinder.

In responding to the motion to sever filed by Medela, Plaintiffs have identified three common issues: "whether lead is dangerous to children, whether Defendants failed to disclose that their VPBP's [vinyl plastic baby products] contained lead, and whether Plaintiff and members of the Class have been injured by the risk of, or actual exposure to lead in VPBPs purchased from Defendants" (Dkt. # 49 at 8.) The first of these supposed common fact issues is not an issue at all.[4] The second and third issues, because they turn on the circumstances of each defendant's manufacture and marketing of its products and each plaintiff's use of and exposure to those products, are not common issues as to all Defendants or all Plaintiffs. While Plaintiffs have asserted that there are "numerous" common issues of law (Dkt. # 49 at 9), they have not identified them.

Even if the Court were to find some common issue of law or fact among these defendants however, this would still be an obvious case of misjoinder. Under any permissible interpretation of the Rule, Plaintiffs' claims against the defendants do not arise from the same "transaction or occurrence, or series of transactions or occurrences."

---

[4] That ingestion of lead at toxic doses can harm children is uncontested. What matters in determining damage and injury is whether there have been exposure, uptake, and received dose sufficient to place a child at risk of injury; these are not common issues in this case.

### 3. Transactional Relatedness

Moore's treatise refers to the "transaction or occurrence" element of the test for joinder as a requirement of "transactional relatedness." 4 James W. Moore, *Moore's Federal Practice* § 20.02[1][a] at 20-5. Courts and commentators agree that there is no bright line standard by which relatedness can be evaluated; rather, analysis must be on a case-by-case basis. *See Bailey v. Northern Trust Co.*, 196 F.R.D. 513, 516 (N.D.Ill. 2000) (employment claims of five different plaintiffs against same employer that are not related to each other and do not arise from common and identifiable wrongful act on part of defendant do not arise from same transaction or occurrence); 4 James W. Moore, *Moore's Federal Practice* §20.05[2], at 20-33 (3d ed. 2008) ("[C]ourts assess the facts of each case individually to determine whether joinder is sensible in light of the underlying policies of permissive party joinder...."); 7 Charles A. Wright, et al., *Federal Practice & Procedure* §1653 (3d ed. 2005) ("Instead of developing one generalized test for ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, the courts seem to have adopted a case-by-case approach.").

Precedent has value in the "transactional relatedness" analysis, however, because multi-party cases tend to fall into patterns that permit consistent application of Rule 20 to similar cases. It is possible (indeed, one treatise states that it is "necessary") to "extrapolate from the decided cases what is likely to qualify as a single 'transaction or occurrence' in a particular case." 7 Charles A. Wright, et al., *Federal Practice & Procedure* §1653 (3d ed. 2005).

This issue recurs, for example, in employment discrimination area. Decisions about joinder of claims and parties in discrimination cases turn on whether the fact pattern suggests there would be advantages in judicial economy in treating the claims together. *Compare Bailey*, 196 F.R.D. at 516 (severing plaintiffs' claims arising from isolated and unrelated acts of

discrimination, even by same employer, because benefits of common preparation and trial that result from joinder were absent), *with Smith v. Northeastern Ill. Univ.*, No. 98 C 3555, 2002 U.S. Dist. LEXIS 3883, at *14, 2002 WL 377725, at *4 (N.D. Ill. Feb. 28, 2002) (finding joinder proper in multi-plaintiff discrimination case where claims were close in time and similar in substance); *see also Berry v. Illinois Dept. of Human Servs.*, No. 00 C 5538, 2001 U.S. Dist. LEXIS 1041, 2001 WL 111035, at *17 (N.D. Ill. Feb. 2, 2001) (factors considered in analyzing joinder in discrimination case include "the time period during which the alleged acts occurred, whether the acts of discrimination are related, whether there were differing types of adverse employment actions, whether more than one type of discrimination is alleged, whether the same supervisors were involved, whether employees worked in the same department, whether employees were at different geographical locations, and whether a company-wide policy is alleged").

Another recurring situation comes closer to the case at bar: the case in which numerous co-plaintiffs allege injury from use of or exposure to manufactured products. Where the products are those of different manufacturers, to which plaintiffs were exposed at different times and in different ways, courts have held that the transactional relatedness test of Rule 20 is not satisfied. Typical of this group of cases is *Asher v. Minnesota Mining & Mfg. Co.*, NO. 04-CV-522-KKC, 2005 U.S. Dist. LEXIS 42266, at *41, 2005 WL 1593941, at *8 (E.D. Ky. June 30, 2005), in which coal miners claiming injury from use of various manufacturers' allegedly defective respirators sought to join in a single action against manufacturers of the various types of respirators. The court found that the claims were improperly joined because:

> whether any manufacturer is liable will likely involve such facts as the particular manufacturer's product; the particular manufacturers' knowledge; the particular manufacturers' warnings; and the particular manufacturers' marketing methods. Moreover, causation of each Plaintiffs' damages will likely involve such facts as

9

which combination of products each Plaintiff used, the length of time each product was used, the manner in which it was used and the Plaintiff's medical history. These facts will differ with each Plaintiff.

*Id.*

Similar cases include *In re Repetitive Stress Injury Litig.*, 11 F.3d 368 (2d Cir. 1993) (granting mandamus where trial court erroneously consolidated cases against various manufacturers of keyboards, mouses and other devices allegedly responsible for repetitive stress injuries in users); *Abdullah v. Acands, Inc.*, 30 F.3d 264, 268 n.5 (1st Cir. 1994) (asbestos claims of plaintiffs against various defendants were improperly joined, where there was no showing that plaintiffs served on the same vessels at the same time, or were exposed to the same asbestos-containing products or equipment); *Norwood v. Raytheon Co.*, 2007 U.S. Dist. LEXIS 61423, 2007 WL 2408480, at *2-5 (W.D. Tex., May 1, 2007) (claims for radiation injury from use of radar devices brought against separate manufacturers of missile systems were improperly joined in one action); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136 (S.D.N.Y. 2001) (holding that certain claims in action arising from withdrawn diabetes medication improperly joined); *Graziose v. American Home Prods. Corp.*, 202 F.R.D. 638 (D. Nev. 2001) (claims by plaintiffs against ten named manufacturers of over the counter products containing phenylpropanolamine improperly joined, because neither Rule 20 requirement for joinder was met); and *Insolia v. Philip Morris, Inc.*, 186 F.R.D. 547, 550-51 (N.D. Cal. 1999) (multi-plaintiff claims against five cigarette manufacturers improperly joined).

The teaching of the foregoing cases is that the phrase "transaction or occurrence, or series of transactions or occurrences" while flexible, has limits. Where the claims sought to be joined are so separate that the judicial efficiencies that are the purpose of joinder are missing, "transactional relatedness" is absent and the claims are misjoined. A case involving independent

sales by different manufacturers, even of similar products, is not one where the transactional relatedness test for joinder is satisfied. That is the situation here.

### B. Transactional Relatedness is Missing Here.

Plaintiffs claim that each of the Defendants has manufactured, marketed, and sold products for use with children that contain polyvinyl materials that contain lead. They assert that this was wrongful under a number of common law and statutory theories, among them that each defendant failed to use ordinary care to prevent the use of lead in its products, falsely advertised the products, and so improperly placed children at risk of injury due to the presence of lead in the products as sold. They seek two forms of relief for themselves and a nationwide class: restitution of the purchase price of the products in question and medical expenses for the cost of medical monitoring that they assert Defendants' conduct has made necessary.

As will be shown when the question of class certification comes before the Court, addressing on a classwide basis even the claims of buyers of these types of products from a single manufacturer would present serious difficulties of management and adjudication. Plaintiffs have greatly compounded the problem by joining the manufacturers as defendants in a single case.

The only connection alleged among the products of the three manufacturers in this case is that the presence of lead was announced at the same time by the Center for Environmental Health, which claims to have bought and tested products from all of the manufacturers. Presumably, there might be some modest saving of time and expense from joinder, resulting from the fact that the initial testing was done by a common agency. Any such benefit is negligible, however, when balanced against the confusion, delay and added expense caused by trying to combine these class actions against the three manufacturers in a single suit.

Either the products at issue contain lead or they do not. Whether they do, and how much, is relatively simple to determine on a product-by-product basis. Common treatment of these cases will not achieve judicial economies on that issue. The real issues in this case are manufacturer-specific: What steps did the manufacturers take to limit the lead content of their products? Were the manufacturers reasonable in the steps they took to do so? Where in the products is the lead found? Is there any risk that users will be exposed? Does each product present an unreasonable risk to users? Did each manufacturer misrepresent the safety of its product? Each of these issues would have to be determined on a manufacturer-by-manufacturer basis, completely independently of the evidence on the same issues related to other manufacturers.

There are cases in which the manufacture and sale of products by a number of manufacturers is interrelated, so that real efficiencies from joinder can be claimed. In some cases, for example, it is claimed that manufacturers have acted in concert to conceal the risks of their products, so that common discovery into their joint conduct is appropriate and it makes sense to consider the cases together. Even where such allegations are made, court approval of joinder is not automatic. *Insolia*, 186 F.R.D. at 550-51 (in tobacco case, allegations of industry-wide conspiracy and misrepresentations are insufficient to support joinder). There is not even an allegation of such a common course of conduct in the complaints in the present actions.

In other cases plaintiffs claim injury from use of and exposure to more than one manufacturers' product, so that the defendants are alleged to be jointly liable for the plaintiffs' injuries. There is no such allegation here. Indeed, nowhere in their complaints do plaintiffs even identify which named Plaintiffs purchased which, if any of the products at issue.

When balanced against the relatively minor (if any) efficiencies to be gained from joinder, the prejudice to the defendants from proceeding with the case as structured by Plaintiffs is evident. Defendants anticipate that there will be extensive manufacturer-specific discovery, requiring the participation by counsel for each defendant in discovery proceedings having little if any connection to that counsel's client. Class action proceedings will be significantly more complicated as the parties and the court attempt to sort out how best to deal with the three separate classes[5]--one applicable to each manufacturer--that plaintiffs have attempted to meld into one class by use of an overly-expansive class definition.

These costs to the defendants are real. "A party may not use aggregation as a method of increasing the costs of its adversaries--whether plaintiffs or defendants--by forcing them to participate in discovery or other proceedings that are irrelevant to their case. It may be that such increased costs would make settlement easier to achieve, but that would occur only at the cost of fundamental fairness." *In re Repetitive Stress Injury Litig.*, 11 F.3d at 374; *see also Graziose*, 202 F.R.D. at 641.

If the claims against these defendants were to remained joined for a common trial, further prejudice would result. This problem has already materialized. The complaint describes an LCB toy that was recalled for lead paint contamination. (Compl., at ¶ 11.) This toy is not marketed or manufactured by Playtex. Permitting the jury that decides Playtex's liability to consider evidence regarding this toy is likely to improperly influence its determination of Playtex's liability. This is but one of what will likely become many evidentiary matters resulting in undue prejudice to Playtex. If two sets of unrelated claims involving bad service and hostile managers

---

[5] Whether the claims against any one manufacturer are suitable for class treatment--either on behalf of a single class or a number of classes--is itself a difficult issue not now before the Court.

at Pizza Hut would be too confusing for a single trial, *see Randleel*, 182 F.R.D. at 545, *four* sets of unrelated claims involving allegedly deceptive trade practices and toxic torts against *three* unrelated defendants is certainly too confusing for a single trial as well.

The case at bar falls squarely within the same class as *Asher, In re Repetitive Stress Injury Litigation, Abdullah, In re Rezulin Products Liability Litigation, Norwood*, and similar cases discussed in Section I.A.3, *supra*. The consensus holding of those cases is represented by the following statement of the *Norwood* court: "The Court does not believe that joinder of claims against different manufacturers of similar products is appropriate, even when, as here, the plaintiffs allege a similar defect and similar types of injuries." *Norwood*, 2007 U.S. Dist. LEXIS 61423 at *14, 2007 WL 2408480 at *4. Separate claims of injury from products manufactured by separate sellers, even products in the same general industry, do not arise from the same "transaction or occurrence, or series of transactions or occurrences" so that they are misjoined if combined in a single civil action. Severance is required under Rule 21. Even if the joinder were technically proper under Rule 20, the court should exercise its discretion in structuring the case to order severance at this time. Such a course would best advance the "just, speedy and inexpensive determination" of the action.

## Conclusion

For the reasons set forth above, Playtex respectfully moves the Court to grant its motion and enter an order severing the claims against Playtex and proceed with them separately.

                              Respectfully submitted,

                              **LEWIS, RICE & FINGERSH, L.C.**

Dated: July 2, 2008          By:   /s/ Andrew Rothschild
                                      Andrew Rothschild, 90785356
                                      Richard B. Walsh, Jr., 6187007
                                      500 North Broadway, Suite 2000
                                      St. Louis, Missouri 63102
                                      (314) 444-7603
                                      (314) 612-7603 (facsimile)

                              **NEAL, GERBER & EISENBERG, LLC**
                              Robert E. Browne, 0321761
                              Dexter G. Benoit, 6284677
                              Two N. LaSalle Street, Suite 2200
                              Chicago, Illinois 60602
                              (312) 269-5225
                              (312) 750-6418 (facsimile)

                              *Counsel for Defendant Playtex Products, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of July 2008, I caused a copy of the foregoing document, BRIEF IN SUPPORT OF DEFENDANT PLAYTEX PRODUCTS, INC.'S MOTION TO SEVER CLAIMS AGAINST PLAYTEX PRODUCTS, INC., to be filed electronically. Notice of this filing will be sent to the following counsel by operation of the Court's ECF system. Parties may access this filing through the Court's system.

*Counsel for Plaintiffs Ramos, Scalia, Suarez, and Lopez:*

| | |
|---|---|
| Mary Jane Fait | fait@whafh.com |
| Adam J. Levitt | alevitt@whafh.com |
| Theodore B. Bell | tbell@whafh.com |

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC
55 West Monroe Street, Suite 1111
Chicago, IL 60603

*Counsel for Plaintiff Smith:*

| | |
|---|---|
| Elizabeth A. Fegan | beth@hbsslaw.com |
| Timothy P. Mahoney | timm@hbsslaw.com |
| Daniel J. Kurowski | dank@hbsslaw.com |

HAGENS BERMAN SOBOL SHAPIRO LLP
820 North Blvd., Suite B
Oak Park, IL 60301

*Counsel for Defendants RC2 Corporation and Learning Curve Brands, Inc.:*

| | |
|---|---|
| Bart T. Murphy | bart.murphy@icemiller.com |
| Thomas J. Hayes | Thomas.hayes@icemiller.com |
| Jenee M. Straub | Jenee.straub@icemiller.com |

ICE MILLER LLP
2300 Cabot Drive, Suite 455
Lisle, IL 60532

*Counsel for Defendant Medela Inc.:*

| | |
|---|---|
| Susan M. Benton | sbenton@winston.com |
| Alexis T. MacDowall | amacdowall@winston.com |
| Kevin A. Banasik | kbanasik@winston.com |
| Charles W. Kierpiec | ckierpiec@winston.com |

WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601

/s/ Andrew Rothschild