IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GRISSELLE RAMOS, on behalf of herself and all others similarly situated, ) ) ) | No. 08 CV 2703 |
| Plaintiff, ) ) | Judge Lefkow |
| v. ) ) | Magistrate Judge Schenkier |
| PLAYTEX PRODUCTS, INC., RC2 CORPORATION, LEARNING CURVE BRANDS, INC., and MEDELA, INC., ) ) ) ) | |
| Defendants. ) | |

| | |
|---|---|
| DINA SCALIA, JENNIFER SUAREZ and MARRISA LOPEZ, on behalf of herself and all others similarly situated, ) ) ) ) | No. 08 CV 2828 |
| Plaintiff, ) ) | (Consolidated with 08 CV 2703) Judge Lefkow |
| v. ) ) | Magistrate Judge Schenkier |
| PLAYTEX PRODUCTS, INC., RC2 CORPORATION, LEARNING CURVE BRANDS, INC., and MEDELA, INC., ) ) ) ) | |
| Defendants. ) | |

**RC2 CORPORATION AND LEARNING CURVE BRANDS, INC.'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINTS**

Defendants Learning Curve Brands, Inc. and RC2 Corporation (collectively "RC2"), by their counsel, Ice Miller LLP, hereby submit the following memorandum in support of their Motion To Dismiss Plaintiffs' Complaints.

1

## **INTRODUCTION**

Three separate complaints have been brought by two different law firms on behalf of five named plaintiffs, alleging identical allegations against the same four defendants. The only difference between the three complaints are the paragraphs identifying the named plaintiffs in each case. The complaints are brought on a behalf of the five named plaintiffs and putative nationwide classes[1] of all persons who purchased what Plaintiffs have characterized as "vinyl plastic baby products" ("VPBPs") which allegedly contain lead. (Compl. ¶49)[2]. Plaintiffs identify three separate and distinct products as the VPBPs, each of which are allegedly sold by three distinct defendants. Defendant Medela is alleged to distribute or sell a vinyl cooler for storing breast milk. (Comp. ¶1). Defendant Playtex is alleged to distribute or sell a "Fridge to Go" vinyl baby bottle cooler. (Comp. ¶1). And Defendant RC2 Corporation, (which is the parent corporation of Defendant Learning Curve Brands, Inc.), is alleged to distribute or sell a carrying case for a First Years brand Natural Transitions breast pump. (Comp. ¶1). Plaintiffs fail to allege which, if any, of the three VPBPs they purchased.

Plaintiffs purport to allege claims for: 1) violation of consumer protection and unfair and deceptive trade practice statutes of 43 jurisdictions; 2) breach of implied warranty; 3) negligence and 4) unjust enrichment. The claims all arise from unspecified alleged test results by a California environmental advocacy group, the Center for Environmental Health ("CEH"), which supposedly found "High levels of lead in Defendants' VPBPs." (Compl. ¶4). Notably, the Complaints do not provide the test results. Rather, based on a conversation defense counsel had with counsel for Plaintiffs in the Ramos and Scalia Actions, Wolf, Haldenstein, Adler, Freeman & Herz, LLC ("Wolf Haldenstein"), the firm which filed these two complaints, apparently did so

---

[1] Count II is apparently brought on behalf of a putative subclass (the "Implied Warranty Subclass") consisting of residents of 23 states. (Compl. at ¶68).

based on CEH's press release without reviewing the actual test results of CEH or conducting its own testing.[3]

The first complaint was filed on May 9, 2008, by Wolf Haldenstein on behalf of Grisselle Ramos and a putative class, *Grisselle Ramos v. Playtex Products, Inc., RC2 Corporation, Learning Curve Brands, Inc. and Medela, Inc.*, No. 08 CV 2703 (the "Ramos Action"). Six days later on, May 15, 2008, Wolf Haldenstein filed an identical second complaint on behalf of three other plaintiffs and the same identical putative class, *Dina Scalia, Jennifer Suarez and Marissa Lopez v. Playtex Products, Inc., RC2 Corporation, Learning Curve Brands, Inc. and Medela, Inc.*, No. 08 CV 2703 (the "Scalia Action"). The Scalia Action was assigned to Judge Nordberg.

Wolf Haldenstein filed a motion on June 5, 2008 to have the Scalia Action reassigned to this Court's calendar as a related action and to consolidate it with the Ramos Action. The motion was not opposed by Defendants and this Court granted the motion on June 10, 2008. On June 11, 2008, an Order of the Executive Committee was issued, reassigning the Scalia Action to be the calendar of this Court.

The third identical complaint was filed by Hagens Berman Sobol Shapiro LLP on June 11, 2008, on behalf of Jessica Smith and the same putative class and subclass alleged in the Ramos and Scalia Actions, *Jessica Smith v. Playtex Products, Inc., RC2 Corporation, Learning Curve Brands, Inc. and Medela, Inc.*, No. 08 CV 3352, (the "Smith Action"). The Smith Action was assigned to Judge Kendall. On June 26, 2008, Defendant Learning Curve Brands, Inc.[4] filed a motion to have the Smith Action reassigned to this Court as a related case and to consolidate it

---

[2]     "Compl." refers to the Complaint in the first filed case, the Ramos Action (08 CV 2703).
[3]     After the Ramos case was filed, Bart Murphy, counsel for RC2 spoke with John Tangren, Plaintiff's counsel in the Ramos and Scalia Actions, and requested Mr. Tangren to provide him with CEH's test results. Mr. Tangren advised Mr. Murphy that Wolf Haldenstein did not have the CEH test results nor did the firm conduct any testing of its own.
[4]     As of June 30, 2008, Learning Curve Brands, Inc. was the only defendant served in the Smith Action.

3

with the Ramos Action. On June 27, 2008, this Court granted Learning Curve's motion to transfer the case for relatedness. The Executive Committee has recently ordered the reassignment of the Smith Action to this Court's calendar; however, the cases have not yet been consolidated. Therefore, Learning Curve has filed a separate motion to dismiss the Smith Action.

On June 2, 2008, Defendant Medela filed a motion in the Ramos Action requesting the Court to sever Plaintiffs' claims against it from the claims of Plaintiffs against RC2 and Learning Curve and Playtex. On June 23, 2008, RC2 and Learning Curve filed a response in support of Medela's motion and requested the Court to sever the claims against RC2 and Learning Curve from Plaintiffs' claims against the other Defendants.

## ARGUMENT

The Plaintiffs in the two Complaints at issue in this motion, are residents of four different states.[5] Neither Complaint alleges that any of the four Plaintiffs purchased, owned, or even used a First Years "Natural Transitions" breast pump carrying case ("Natural Transitions Carrying Case"), the only VPBP which Plaintiffs allege RC2 or Learning Curve sold or distributed. Instead, Plaintiffs simply allege that they "purchased one or more VPBPs." (*See* Compl. ¶8; Scalia Compl. ¶ 11.) The purchase, ownership, or use of the Natural Transitions Carrying Case is a fundamental prerequisite for standing to bring these cases, as well as a prima facie element of every claim asserted by Plaintiffs. Without an allegation that Plaintiff purchased the Natural Transitions Carrying Case, Plaintiffs lack standing and, further, cannot state a claim against RC2. Therefore the Complaints should be dismissed in their entirety.

---

[5] Plaintiffs allege the following states of residences: California, Massachusetts, New Jersey, and New York.

As the United States Supreme Court recently clarified in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." *Id.* at 1964-65 (citations omitted).[6] "[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 1965 (quoting 5 Wright & Miller, *Federal Practice and Procedure* § 1216, pp. 235-36 (3d. ed. 2004)). Plaintiffs have failed to meet this burden.

Plaintiffs' claims are apparently based exclusively on the news release of CEH, a private, non-governmental environmental group. According to the Complaints, CEH tested a variety of products, determined that some of the products contained lead, and recommended that consumers throw those products away. The Complaints then focus on allegations of the effect of lead on children and society, and cite regulations applicable to other types of products and bills being considered by various legislatures in an attempt to raise an inference of illegality and defects regarding the VPBPs. Plaintiffs apparently hope that by keeping the Court's attention focused on their allegations that "lead is bad," they can obscure the fact that they have not alleged that any Plaintiff purchased, owned, or used the Natural Transitions Carrying Case or whether they were injured by or even exposed to any lead allegedly in the Natural Transitions Carrying Case. The Complaints do not even allege that any Plaintiff actually has lead poisoning or an elevated blood lead level. Nor do they contain allegations from which it could be reasonably inferred that any alleged injury was even related to the Natural Transitions Carrying Case. In fact, the Complaints are entirely devoid of any allegations regarding how much lead is supposedly in the

---

[6]  In *Bell Atlantic*, the Supreme Court abandoned the frequently-quoted language which permitted a court to dismiss a complaint only where it appeared "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 1968 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Natural Transitions Carrying Case, what part of the product, if any, contains lead, or whether Plaintiffs' children have in fact, had any exposure whatsoever to any alleged lead containing component of the Natural Transitions Carrying Case. The lack of these fundamental allegations highlights the fatal flaw in these cases.

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 127 S. Ct. at 1965. As discussed below, having failed to assert the key allegations needed to pursue claims, Plaintiffs have failed to allege facts sufficient to demonstrate standing and, also, to raise their right to relief above the speculative level for any of the asserted claims. Thus, the Complaints should be dismissed in their entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

I. **Plaintiffs' Statutory Consumer Fraud Claims (Count I) Should Be Dismissed.**

   A. **Plaintiffs Who Have Not Purchased, Owned or Used the Product Lack Standing to Bring a Consumer Fraud Claim and, Further, Fail to State a Claim**

None of the Plaintiffs have adequately pled a consumer fraud claim against RC2 or Learning Curve. To state a claim for consumer fraud, a plaintiff must, at a minimum, allege that they are a purchaser or consumer who has been damaged due to unlawful conduct under the act.[7]

For example, under California's Consumer Legal Remedies Act (the "CLRA"), Cal. Civ. Code § 1770, *et seq*., a "violation of the CLRA may only be alleged by a consumer." *Von Grabe v. Sprint PCS*, 312 F. Supp.2d 1285, 1303 (S.D. Cal. 2003). "A 'consumer' is defined as 'an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes.'" *Id*. (quoting Cal. Civ. Code § 1761(d)). Actions under the CLRA may only be brought by a consumer "who suffers damage as a result of the use or

6

employment by any person of a method, act, or practice declared to be unlawful by Section 1770." Cal. Civ. Code § 1780(a).  If a plaintiff fails to plead these requirements, her claim must be dismissed.  *See Buckland v. Threshold Enterprises, Ltd*., 155 Cal.App.4th 798, 809-11, 66 Cal.Rptr.3d 543, 550-52 (Cal. Ct. App. 2007).

Similar requirements exist under the consumer fraud statutes of each of the states relevant to this motion to dismiss.  *See Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc.*, 840 N.E.2d 526, 529 (Mass 2006) ("a causal connection between a deceptive act and a loss to the consumer is an essential predicate for recovery under our consumer protection statute"); *New Jersey Citizen Action v. Schering-Plough Corp*., 842 A.2d 174, 176 (N.J. Super. Ct. App. Div. 2003) (to recover under New Jersey's consumer fraud statute, "a plaintiff must allege . . . an ascertainable loss on the part of the plaintiff."); *Small v. Lorillard Tobacco Co*., 720 N.E.2d 892, 898 (N.Y. 1999) (allegation that a deceptive practice caused the plaintiff to purchase a product she would not have otherwise purchased is insufficient to meet the injury requirement); *Oliveira v. Amoco Oil Co*., 776 N.E.2d 151, 160 (Ill. 2002) (plaintiff must allege "actual damage to the plaintiff . . . proximately caused by the deception").

Without any allegation that Plaintiffs purchased, owned, or even used the Natural Transitions Carrying Case, Plaintiffs have failed to meet the most basic threshold requirements of a consumer fraud claim under the laws of the states at issue.  Thus, they have failed to state a claim upon which relief may be granted against RC2 and Learning Curve, and Count I must be dismissed in its entirety as to RC2 and Learning Curve.

**B.      Plaintiffs' Statutory Consumer Fraud Claims Should Be Dismissed For Failure To Comply With The Pleading Requirements Of Fed. R. Civ. P. 9(b).**

---

[7]      The Court need not engage in a choice-of-law analysis in order to address the pending issue because this is a threshold requirement for the consumer fraud acts of each of the named plaintiffs' state of residence as well as the forum state.  If this case progresses, then such an analysis will be necessary.

7

Plaintiffs' consumer fraud claims should also be dismissed because the Plaintiffs have failed to comply with the stringent pleading requirements of Federal Rule of Civil Procedure 9(b) applicable to such claims.[8] Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." To satisfy the heightened pleading requirements of Rule 9(b), the plaintiff must specify "the who, what, when, where, and how" of the alleged fraud. *Di Leo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Plaintiff must state "'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated.'" *Miller v. Showcase Homes, Inc.*, No. 98-C-2009, 1999 WL 199605 at *2 (N.D. Ill. March 31, 1999) (quoting *Schiffels v. Kemper Fin. Services, Inc.*, 978 F.2d 344, 352 (7th Cir. 1992) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)). Plaintiffs have completely failed to satisfy this burden.

The Complaints do not identify the content of any representation allegedly relied upon by the Plaintiffs, the identity of the person making the misrepresentation, the time and place of the alleged misrepresentation or the method by which the alleged misrepresentation was communicated. *See Miller*, No. 98-C-2009, 1999 WL 199605 at *2. The Complaints merely vaguely allege that the Plaintiffs purchased one or more VPBPs "based on the Defendants representations that the products are safe for children and are intended to be used in connection with feeding infants." (Compl. ¶ 8; Scalia Compl. ¶ 11.) However, this general allegation does not specify whether any Plaintiff bought the RC2 product at issue, who made the representations

---

[8] It is well-settled that Rule 9(b) applies not just to common law fraud claims, but also to claims under consumer fraud statutes. *See Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 883 (7th Cir. 2005) (stating ICFA claims "must be pled with the same specificity as that required under common law fraud."); *U.S. v. All Meat and Poultry Products Stored at Lagrou Cold Storage*, 470 F. Supp. 2d 823, 830 (N.D. Ill. 2007); *Melecio v. Kia Motors Corp.*, No. 05-C3599, 2005 WL 3005609 at *2 (N.D. Ill. Nov. 9, 2005).

or what the representations were, much less when, where, and how they were made.

The Complaints also allege that four statements on the Learning Curve website are evidence that RC2's marketing campaign was intended to assure parents that its products are safe for children. (Compl. ¶ 41-42). However, merely alleging the existence of these statements is insufficient to meet the pleading requirements for fraud. First and foremost, none of the Plaintiffs allege that they visited RC2's website or read the alleged representations contained on the website. *See In re Gen. Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*, 966 F. Supp. 1525, 1536 (E.D. Mo. 1997) *aff'd, Briehl v. Gen'l Motors Corp.*, 172 F.3d 623 (8th Cir. 1999) (plaintiffs did not adequately allege reliance where they failed to allege if, when, where or how they heard any of defendant representations) (citing *Weaver v. Chrysler Corp.,* 172 F.R.D. 96, 102 (S.D.N.Y.1997) (dismissing plaintiff's claim for fraudulent omission in part because plaintiff failed to allege when "he read, saw, or heard Chrysler's representations, advertisements and promotional materials that omitted the reference to the defective child seats."). Second, the Natural Transitions Carrying Case at issue is not a toy, pacifier or bottle – it is the carrying case for a breast pump. It is not marketed for or intended to be used by children. Thus, Plaintiffs have failed to allege how they were misled by the alleged statements from RC2's website into the purchase of a Natural Transitions Carrying Case.

Finally, Count I purports to state a cause of action under the consumer fraud statutes of forty-three jurisdictions (Compl. ¶ 61). In addition to failing to describe the particulars of any alleged misrepresentations, Plaintiffs make no attempt to plead the elements of each statutory cause of action. Plaintiffs merely cite the forty-three statutes. As such, Count I must be dismissed for failure to meet the pleading requirements of Federal Rule 9(b). *See In re Gen. Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*, 966 F. Supp. at 1536 (dismissing state

consumer protection statute claims because plaintiffs failed to plead the elements essential to each unique state statute as required by Fed. R. Civ. P. 9(b)). Accordingly, Count I should be dismissed in its entirety with respect to RC2 and Learning Curve.

## II.     Plaintiffs Fail To State A Claim For Breach Of Implied Warranty (Count II)

In Count II of the Complaint, Plaintiffs seek damages for an alleged breach of the implied warranty of merchantability on behalf of residents of twenty-three states. The only states listed for which there are named plaintiffs are Massachusetts and New Jersey. (Compl. ¶ 68). Again, the bare bone allegations in these Complaints fail to meet even the rudimentary requirements of a breach of implied warranty claim.

Not surprisingly, both of these states, as with most if not all states, require evidence that the product "proximately caused injury to the ultimate consumer." *Hollinger v. Shoppers Paradise of New Jersey, Inc.*, 340 A.2d 687, 692 (N.J. Super. Ct. Law Div. 1975). Further, plaintiff must have purchased the product or, in states where privity is no longer needed, at least used or been affected by the product. Massachusetts General Laws 106 § 2-318 (1999).

Neither Scalia, the sole named plaintiff from Massachusetts, nor Ramos, the sole named plaintiff from New Jersey, are close to pleading these fundamental elements. Neither Plaintiff has alleged that she purchased, owned, or even used the Natural Transitions Carrying Case. Further, there are no factual allegations regarding any injury. Instead the plaintiffs attempt to rely on unsubstantiated conclusions in order to meet the pleading requirements and defeat this Motion to Dismiss. Plaintiffs must set forth allegations which provide notice as to how the alleged defect caused an injury, such as a description of how the alleged exposure to lead occurred, including what, if any, part of the Natural Transitions Carrying Case allegedly contained lead; the lead content; and how the plaintiff allegedly became exposed to lead. Without these threshold factual allegations, Plaintiffs have failed to state a claim for breach of

implied warranty claim and therefore, Count II must be dismissed as to RC2 and Learning Curve.

### III. Plaintiffs' Negligence (Count III) Allegations Must be Dismissed Because Plaintiffs Have Failed to Allege Prima Facie Elements Needed for a Compensable Tort Injury

Count III should be dismissed because Plaintiffs have failed to allege a compensable tort injury caused by RC2's product.[9] It is axiomatic that "the tort of negligence is not committed unless and until some damage is done." *White v. Mattera*, 814 A.2d 627, 632 (N.J. 2003) (quoting *Muller Fuel Oil Co. v. Ins. Co. of N. Am.*, 232 A.2d 168 (N.J. Ct. App. 1967). *See also* 65 C.J.S. Negligence § 21 ("The essential elements for an action in negligence are that the defendant was under a duty to protect the plaintiff from injury, that the defendant breached that duty, that the plaintiff suffered actual injury or loss, and that the loss or injury proximately resulted from the defendant's breach of the duty. . . . To maintain an action in negligence, the plaintiff must assert in the complaint . . . that the plaintiff suffered actual injury or loss . . . ."); *Wattenbarger v. Cincinnati Reds, Inc.*, 28 Cal.App.4th 746, 1751, 33 Cal. Rptr.2d 732 (Cal. Ct. App. 1994) (citations and emphasis omitted) ("The essential elements of a cause of action in negligence [include] . . . breach as a proximate or legal cause of the resulting injury."); *Andrade v. General Motors Corp.*, 785 N.E.2d 214 (Ill. Ct. App. 2003); (*Glidden v. Maglio*, 722 N.E.2d 971, 973 (Mass. 2000)).

In order to show this necessary causal connection in a product case, at a bare minimum, each plaintiff must have purchased, owned, used, or at least come into contact with the Natural Transitions Carrying Case. In this case no such allegations are made. Further, as with the claims

---

[9] *See* 65 C.J.S. NEGLIGENCE § 21; 72A C.J.S. PRODUCTS LIABILITY § 8.

11

for implied warranty, the elements of negligence require a causal connection between the alleged negligent act and alleged injury. Here, Plaintiffs have not alleged that any of their children have elevated blood lead levels. No Plaintiff has even alleged that she owns, used or uses a Natural Transitions breast pump, much less allowed her child to play with The Natural Transitions Carrying Case. Also, there are no allegations relating to the alleged exposure to lead. Without these fundamental elements, Plaintiffs have failed to state a claim upon which relief can be granted, and Count III should be dismissed.

**IV.    Plaintiffs' Unjust Enrichment Claim (Count IV) Must Be Dismissed Because Plaintiffs Have Failed To Allege That RC2 Received A Benefit That It Unjustly Retained**

It is axiomatic that for a plaintiff to state a claim for unjust enrichment against a defendant, the plaintiff must allege that the defendant received a benefit from the plaintiff. *See* 26 Williston on Contracts § 68:5 (4th ed.) (The three elements that a plaintiff must establish to succeed in an unjust enrichment claim include "(1) a benefit conferred on the defendant by the plaintiff . . . ."). The Complaints allege generally that Defendants have unjustly retained profits, but none of the Plaintiffs allege that they purchased a product from RC2, thereby conferring a benefit on RC2. As the named Plaintiffs have failed to allege that they conferred any benefit on RC2, they have failed to allege that RC2 has been enriched, unjustly or otherwise. Therefore Count IV of the Complaints must be dismissed for failure to state a claim upon which relief can be granted.

## CONCLUSION

For the reasons stated above, Defendants RC2 Corporation and Learning Curve Brands, Inc. ask this Court to grant their Motion to Dismiss Plaintiffs' Complaints.

                                            Respectfully submitted,
                                            RC2 CORPORATION and
                                            LEARNING CURVE BRANDS, INC.

                                            s/ Bart T. Murphy_____

                                            By one of their attorneys

                                            Bart T. Murphy
                                            Ice Miller LLP
                                            2300 Cabot Dr., Ste. 455
                                            Lisle, IL 60532
                                            630-955-6392

Bart T. Murphy
Jenee Straub
Thomas J. Hayes
Ice Miller LLP
2300 Cabot Dr., Ste. 455
Lisle, IL 60532
630-955-6392

(Of Counsel)
Judith Okenfuss
Juliana Plawecki
Ice Miller LLP
One American Square, Ste. 3100
Indianapolis, IN 46282-0200
317-236-2219

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of July, 2008, I caused a copy of the foregoing document, DEFENDANTS RC2 CORPORATION'S AND LEARNING CURVE BRANDS, INC.'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINTS, to be filed electronically. Notice of this filing will be sent to the following counsel by operation of the Court's ECF system. Parties may access this filing through the Court's system.

> s/Bart T. Murphy_____
> Bart T. Murphy
> Ice Miller LLP
> 2300 Cabot Dr., Ste,. 455
> Lisle, IL 60532
> (630) 955-6392

*Attorneys for Plaintiffs:*
  Mary Jane Fait (fait@whafh.com)
  Theodore B. Bell (tbell@whafh.com)
  WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC
  55 West Monroe St., Suite 1111
  Chicago, IL 60603
  (312) 984-0000

*Attorneys for Playtex Products, Inc.*
  Andrew Rothschild (arothschild@lewisrice.com)
  Richard B. Walsh, Jr. (rwalsh@lewisrice.com)
  LEWIS, RICE & FINGERSH
  500 N. Broadway, Suite 2000
  St. Louis, MO 63102
  (314) 444-7600

  Dexter G. Benoit (dbenoit@ngelaw.com)
  Robert E. Browne (rbrowne@ngelaw.com)
  NEAL, GERBER & EISENBERG
  Two North LaSalle St., Suite 2200
  Chicago, IL 60602
  (312) 269-8000

*Attorneys for Medela, Inc.*
  Susan M. Benton (sbenton@winston.com)
  Alexis MacDowall (amacdowall@winston.com)
  Charles W. Kierpiec (ckierpiec@winston.com)
  Kevin A. Banasik (kbanasik@winston.com)
  WINSTON & STRAWN LLP
  35 W. Wacker Dr.
  Chicago, IL 60601-9703
  (312) 558-5600