**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GRISSELLE RAMOS, on behalf of herself and all others similarly situated, | ) )  ) |
| | ) |
| Plaintiff, | ) **Civil Action No. 08-cv-2703** |
| | ) ) |
| v. | ) |
| | ) |
| PLAYTEX PRODUCTS, INC., RC2 CORPORATION, LEARNING CURVE BRANDS, INC., and MEDELA, INC., | ) Judge Lefkow ) ) Magistrate Judge Schenkier |
| | ) |
| Defendants. | ) ) |

**DEFENDANT MEDELA INC.'S REPLY BRIEF IN SUPPORT**
**OF ITS MOTION TO SEVER CLAIMS AGAINST MEDELA INC.**

The face of the Complaint makes clear that Plaintiff has failed to satisfy *either* of the two requirements for permissive joinder under Rule 20(a). Plaintiff's claims against Medela do not arise out of the same transaction, occurrence, or series of transactions and occurrences, as her claims against the other defendants. Nor are there significant questions of law or fact common to all the parties. It is undisputed -- even at this early stage of the litigation -- that the various defendants manufacture different products, have different marketing, and have different purchasers who have different children who were exposed to lead to varying degrees (if at all) with varying effects (if any).[1] As a result, Plaintiff will be required to supply separate, non-overlapping proof on each issue as to each defendant. Accordingly, joinder of all claims against

---

[1] Medela anticipates that the Court will treat the currently consolidated cases in the same manner, and Medela stands ready to file motions to sever making virtually identical arguments in both Scalia v. Playtex Prods., Inc. (08-cv-2828) and Smith v. Playtex Prods., Inc. (08-cv-3352).

all defendants is improper under Federal Rule 20, and the claims against Medela should be severed pursuant to Rule 21.

I.     **JOINDER OF THE CLAIMS AGAINST MEDELA WITH THE CLAIMS AGAINST THE OTHER DEFENDANTS VIOLATES RULE 20(a).**

Plaintiff admits that she may join multiple defendants in this action *only* if (1) the claims arise out of the same transaction, occurrence or series of transactions, *and* (2) some question of law or fact common to all the parties arises in the action.[2]  (Opp. Br. at 5.)  Plaintiff also acknowledges that this Court has the discretion to grant Medela's motion to sever.  (*Id*. at 6.) Although Plaintiff touts the general policy in favor of joinder, she fails to demonstrate how the instant case satisfies the actual requirements for joinder.

A.     **Plaintiff's claims against Medela do not arise out of the same transactions or occurrences that give rise to her claims against the other defendants.**

Plaintiff recognizes that only "logically related events" giving rise to a cause of action constitute a transaction or occurrence, and that a logical relationship exists when the transactions or occurrences will require overlapping proof and duplication of testimony.  (Opp. Br. at 6-7.)  *See also Direct TV, Inc. v. Delaney*, 03 C 3444, 2003 WL 24232530, at *4 (N.D. Ill. Nov. 20, 2003) (Kocoras, J.).

Medela explained in its opening brief that Plaintiff's claims against Medela do not arise out of the same transactions or occurrences that give rise to her claims against the unrelated defendants because the jury's resolution of fact-specific questions regarding one defendant are "completely independent of its tasks in answering those questions with regard to the other defendants."  *Id.*; *see also DIRECTV v. Loussaert*, 218 F.R.D. 639, 643 (S.D. Iowa 2003)

---

[2]     Plaintiff has not alleged that Medela is jointly and severally liable with the other defendants.  *See* Fed. R. Civ. P. 20(a) (providing that parties may be joined as defendants in a single action only if "there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction,

(transactional requirement of Rule 20 not satisfied by plaintiff's allegations that "it was wronged in the same way be several different" defendants because "[s]uch a reading of Rule 20 would improperly expand the Rule").   (Medela Opening Br. at 2-3, 5-6.)   Here, Plaintiff does not address, much less refute, Medela's numerous examples of key issues that will be specific to each defendant and, therefore, will require separate, non-overlapping proof as to each defendant: different products; different marketing and disclosures; and different purchasers who have different children who were exposed to lead to varying degrees (if at all) with varying effects (if any).   Thus, the face of the Complaint demonstrates that there is no logical relationship between the claims against Medela and the claims against the other defendants.

Plaintiff's only response to those individualized, defendant-specific issues -- that the lack of identical products "does not preclude" a finding that the claims arise out of the same transactions or occurrences (Opp. Br. at 7-8) -- sweeps far too broadly and is based on an inapposite patent infringement case called *MyMail, Ltd. v. America Online, Inc.*, 223 F.R.D. 455 (E.D. Tex. 2004).   In *MyMail*, a federal district court in Texas rejected a *per se* rule that different infringing products required the claims to be severed, but it acknowledged that when sufficiently different products are at issue "severance could be appropriate."   *MyMail*, 223 F.R.D. at 457. Additionally, it was plain in that case that the common patent and infringement defenses supplied a "nucleus of operative facts or law in the claims against all of the defendants."   *Id*. at 456-57 (noting that "[n]either side disputes that questions of law or fact common to all defendants will arise").   In the instant case, by contrast, there is no patent that connects defendants' different products, and Plaintiff does not suggest any other logical connection.   Each product stands alone, particularly on the fundamental issue of lead exposure (if any).

occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action").

Moreover, Plaintiff's own laundry list of allegations, offered to show a logical relationship (*i.e.*, overlapping proof) between the claims against the defendants, actually presents highly differentiated issues with little, if any, overlap in proof.  Plaintiff identifies five categories of allegations, but she fails to identify, or explain how any of these areas will require, any overlapping proof.  (Opp. Br. at 7.)  As the chart below shows, each category of allegations requires separate, non-overlapping proof:

| Allegation | Separate Proof Required |
|---|---|
| • All defendants sold vinyl plastic baby products that contain lead in their vinyl linings. | • Lead content varies by product. |
| • Defendants failed to disclose that their products contained lead. | • Products and marketing/disclosures vary by defendant. |
| • Defendants' non-disclosure of the lead content was a material omission. | • Products and marketing/disclosures vary by defendant, and materiality/reliance/proximate cause varies by plaintiff. |
| • Plaintiff and members of the class have been injured by the exposure or risk of exposure to lead from defendants' products. | • Level and/or risk of exposure (if any) varies by product and by plaintiff/child, and injury (if any) varies by plaintiff/child. |
| • Claims for relief and the remedies requested are the same as to all defendants. | • Entitlement to relief (if any) varies by defendant and by plaintiff. |

Similarly, Plaintiff's list of supposedly "common" issues of law and fact, alleged in support of class certification (Compl. at ¶ 53), presents issues that will not involve overlapping proof.[3]  Nor has Plaintiff cited any case in which a court has held that one or all of these supposed similarities

---

[3]     For example, Plaintiff identifies the following as common questions: "Whether Defendants concealed, suppressed, or omitted any material fact with intent that consumers rely on such concealment, suppression, or omission in connection with the sale or advertisement of any merchandise" (Compl. at ¶ 53(a)); and "Whether, as a result of Defendants' negligent and reckless conduct, children have been significantly exposed to a known hazardous substance" (*id*. at ¶ 53(c)).  Again, these issues will necessitate separate, non-overlapping proof that is specific to each product, defendant, and plaintiff.

satisfied the "transaction or occurrence" requirement in a products liability or consumer fraud context.

In addition to the deficiencies described above, a generic "common" claim of exposure (or risk of exposure) to lead from defendants' (different) products does not establish that legal claims against those manufacturers arose out of the same transactions or occurrences. (Opp. Br. at 7-8.)  Plaintiff's effort to try to explain away Medela's cases is unavailing.  The argument that a number of cases cited by Medela involve severing plaintiffs rather than defendants is a distinction without a difference; they are merely opposite sides of the same coin.

Plaintiff's attempt to distinguish *Graziose v. Am. Home Prods. Corp.*, 202 F.R.D. 638 (D. Nev. 2001), by arguing that "the plaintiffs asserted various and different claims against the defendants," who manufactured various medicines, and that plaintiffs alleged different medical problems resulting from exposure to the active ingredient in those medicines.  (Opp. Br. at 8.)  But those facts miss the point.  *Graziose* held that severing claims was proper because the only thread that connected the plaintiffs' claims against the different manufacturers was the alleged exposure to a common ingredient.  *Graziose*, 202 F.R.D. at 639-40.  As in *Graziose*, the only "connection" between the claims against the defendants here is the generic claim of exposure to a harmful ingredient -- lead.  Here, Plaintiff herself details the various possible effects resulting from exposure to lead (Compl. at ¶ 20), and, like the situation in *Graziose*, it is highly unlikely that every child of every plaintiff will assert that they suffered the same medical problems from exposure to lead.  Just like the situation in *Graziose*, the claims against Medela are unrelated to the claims against the other defendants, and joinder of those claims is improper.

Plaintiff makes a similar argument as to *Adams v. Minnesota Mining and Mfg. Co.*, No. 6:04-521-DCR, 2005 U.S. Dist. LEXIS 27404 (E.D. Ky. Jan. 27, 2005) (attached hereto

as "Exhibit A") (*see* Opp. Br. at 10 n.3), which involved former coal miners' generic claim against various manufacturers and retailers of respirator masks designed to reduce inhalation of coal dust. *Adams*, 2005 U.S. Dist. LEXIS 27404, at *4 (alleging defective respirators allowed coal dust to enter miners' lungs, resulting in black lung disease). Again, Plaintiff's purported distinction is irrelevant. The district court in that case reasoned that the "contours of each Plaintiffs' [sic] claim will vary" depending the same factors that are salient in the instant case: the specific product (*i.e.*, respirator) used, the identity of the manufacturer, the conditions and circumstances surrounding use of the product, and the injury resulting from use of the product. *Id*. at *17; *see also id*. at *19 (stating that "a generic claim against various manufacturers is not necessarily sufficient to find that the plaintiffs claims arose out of the same 'transactions or occurrences'", because "the manufacturers … were different, … the plaintiffs used different masks for varying periods of time and suffered varying degrees of harm, and the safety information conveyed by each company and received by each plaintiff is likely different"). Thus, these cases show that Plaintiff's generic allegation of lead exposure is insufficient for joinder.

Finally, Plaintiff failed to satisfy the "transaction or occurrence" requirement because she has not alleged (and could not allege) any agreement, common policy, joint action, or other connection between Medela and any of the other defendants. (Opp. Br. at 6.) Plaintiff did not even attempt to counter this argument, and the striking absence of such a connection between the defendants demonstrates that there is no logical relationship between the claims against Medela and the claims against the other defendants. Several of the cases cited by Plaintiff confirm this conclusion because those cases found joinder appropriate upon allegations or facts that showed multiple defendants acted jointly or under a common policy. *See Mosley v.*

*General Motors Corp.*, 497 F.2d 1330, 1333-1334 (8ᵗʰ Cir. 1974) (a "company-wide policy purportedly designed to discriminate against blacks in employment … arises out the same series of transactions or occurrences"); *Wilson v. Peslak*, No. 04 C 2345, 2005 WL 1227316, at *2 (N.D. Ill. May 12, 2005) (claims "implicated an alleged general policy of police misconduct"); *Smith v. Northeastern Ill. Univ.*, No. 98 C 3555, 2002 WL 377725, at *3 (N.D. Ill. Feb. 28, 2002) (finding a single transaction existed when "[t]he allegations of a hostile work environment are tantamount to allegations that there was a widely help policy of discrimination"). No joint action or common policy exists here, and joinder of the claims against Medela is improper.

In sum, Plaintiff has failed to satisfy the requirement that the claims against Medela arise from the same transaction, occurrence, or series of transactions and occurrences that give rise to the claims against the other defendants.

**B.     Plaintiff's claims against Medela do not present significant questions of law or fact common to all the parties.**

Medela previously detailed the lack of significant common issues of fact or law in this litigation. (Medela Opening Br. at 8-10.) Key legal and factual issues, such as whether there is exposure, causation, and damages, will be different for each defendant because of the different products, marketing, purchasers, and purchasers' children. In short, commonality is not established when "the questions of law and fact will have to be tailored to the particulars of each individual defendant's actions, rather than being common to all." *Delaney*, 2003 WL 24232530, at *5.[4] Plaintiff's response, which consists of a single paragraph arguing that "there are multiple common issues of fact and law" in this case, fails to pass muster.

---

[4]     Plaintiff asserts that *Delaney* is distinguishable because, "unlike here, '[t]he jury's resolution … of fact-specific questions as to a given defendant [would be] completely independent of its tasks in answering those questions with regard to the other defendants.'" (Opp. Br. at 10.) However, Plaintiff provides no analysis as to why that situation

Plaintiff identifies three factual issues that she believes are common to the defendants: (1) "whether exposure to lead is dangerous to children"; (2) "whether Defendants failed to disclose that their [vinyl plastic baby products] contained lead"; (3) whether Plaintiff and members of the Class have been injured by the risk of, or actual, exposure to lead in [vinyl plastic baby products] purchased from Defendants." (Opp. Br. at 8.) Plaintiff is wrong. The first example is a factual "commonality" at a level that is so general as to be meaningless. If that generic issue satisfies this test, then a motion to sever would rarely be granted, if ever. The *real* issue implicated by all of the claims in this case is the *level of actual lead exposure* (*if any*) to each individual child from use of a defendant's specific product (and then, if so, whether such exposure caused any injury). The second and third examples of supposedly common factual issues are, in actuality, specific to each product, defendant, and plaintiff. (*See* Chart, *supra*, bullet point nos. 2 and 4.)

Plaintiff also asserts that there are common issues of law because "the legal and statutory bases for Plaintiff's claims are identical as against all Defendants." (Opp. Br. at 8.) However, as Medela explained in its opening brief, that is insufficient because claims that merely arise under the same "general theory of law" do not establish commonality under Rule 20(a). *Bailey*, 196 F.R.D. 513, 517 (when factual and legal questions "are based upon wholly separate acts of the defendant with respect to each plaintiff, the second requirement of Rule 20(a) is not met"). Plaintiff cites no authority to the contrary. Accordingly, Medela is misjoined in this case because of a lack of common issues of law and fact between the claims against the defendants.

---

is "unlike" the one here. As shown above and in Medela's opening brief, the factual and legal issues must be tailored to each product, defendant, and plaintiff.

## II. THE MOTION TO SEVER IS TIMELY UNDER THE PLAIN LANGUAGE OF RULE 21, THE STANDARDS OF RULE 20, AND THE FACTS ALLEGED IN THE COMPLAINT.

Plaintiff's other argument -- that the motion to sever supposedly is "premature" (Opp. Br. at 2-5) -- also is unavailing.  First, Plaintiff admits that the express language of Rule 21 authorizes a court to sever claims "at *any* time."  (Fed. R. Civ. P. 21 (emphasis added); Opp. Br. at 2 (Plaintiff quoting the prior Rule 21 ("at any stage of the litigation"))  That alone disposes of Plaintiff's argument.[5]  Indeed, Plaintiff's argument improperly renders that language of the Rule meaningless because, under Plaintiff's analysis, *no* case should be severed until discovery is substantially completed.[6]  *Cf. Holloway v. J.C. Penney Life Ins. Co.*, 190 F.3d 838, 843 (7th Cir. 1999) ("a statute should be construed in such a way that no word, clause or sentence is rendered meaningless or superfluous").

Second, Medela's motion to sever is timely because mis-joinder is clear from the face of Plaintiff's Complaint.  Where courts can determine from the pleadings that the requirements for joinder have not been met, they have granted motions to sever early in the litigation.  *See, e.g.*, *Fonovisa, Inc. v. Does 1-9*, No. 07-1515, 2008 WL 919701, at *6 (W.D. Pa. Apr. 3, 2008) (severing the moving party "given the different factual contexts of the alleged infringement for each Defendant and the absence of any evidence showing joint action by Defendants," where the only discovery at the time of motion to sever a was subpoena to identify Doe defendants and responsive objections); *Loussaert*, 218 F.R.D. at 640, 643-44 (granting

---

[5]   Despite acknowledging that this Court can sever claims "at any stage of the litigation," Plaintiff nonetheless attempts to malign Medela by ascribing an ill motive to Medela based solely on the fact that it filed the motion "[b]arely three weeks after the Complaint was filed and prior to any pretrial proceedings or discovery."  (Opp. Br. at 2, 5.)  There is no place in this litigation for such baseless and unjustified attacks.  As shown above, the face of the Complaint provides ample reason for severing the claims against Medela at this time.

[6]   Plaintiff states that consideration of motions to sever "usually" is more appropriate after pretrial proceedings have been completed (Opp. Br. at 2), but she offers no indication or suggestion as to the circumstances in which a motion to sever could be granted prior to that stage of the litigation.  This is such a case.

motion to sever that was filed the same month defendant was served complaint and filed answer, because although plaintiff argued it was harmed in the same way by all defendants, the court concluded defendants acted separately and independently);[7] *Beaulieu v. Concord Group Ins. Co.*, 208 F.R.D. 478, 479 (D.N.H. 2002) (granting motion to sever only three months after complaint was filed, in case where plaintiff sued own insurance company and driver who aggravated plaintiff's injuries from previous accident, because transactional relatedness requirement for permissive joinder not met).   As demonstrated above (and in Medela's Opening Brief), the Complaint here shows that Plaintiff has not satisfied the joinder requirements of Rule 20.

The cases that Plaintiff relies upon do not support deferral of a ruling on this motion to sever.  Three of the cases were patent infringement cases, and thus, unlike the instant case, the pleadings showed that discovery and legal issues would significantly overlap for all defendants.  *Sprint Communications Co., L.P. v. Theglobe.com, Inc.*, 233 F.R.D. 615, 617 (D. Kan. 2006) (stating that plaintiff alleged each defendant infringed the same seven patents and noting risk of inconsistent claim constructions if separately decided); *MyMail*, 223 F.R.D. at 457) (reasoning that the patent at issue, and many defenses to infringement (*i.e.*, invalidity and unenforceability of the of the patent) were the same for all defendants); *Magnavox Co. v. APF Elecs., Inc.*, 496 F. Supp. 29, 32-33 (N.D. Ill. 1980) (acknowledging questions of patent validity relevant to each defendant and likelihood that document requests and depositions would overlap).

Similarly, the matters in *Allstate Insurance Co. v. Wal-Mart Stores, Inc.*, all involved the same retailer and common evidence about the halogen bulbs or lamps at issue.

---

[7]    Other cases involving pirated broadcasts and unrelated defendants have reached the same result for the sam reasons.  *E.g.*, *Don King Prods., Inc. v. Colon-Rosario*, No. 07-1316, 2008 WL 2488621, at *3 (D. Puerto Rico June 19, 2008) ("In concluding that [plaintiff's] complaint does not meet the 'same transaction' test, we join a great number of District Courts.") (citing various *DIRECTV* cases).

*Allstate*, No. 00-cv-0307, 2000 WL 960736, at *1-2 (N.D. Ill. July 11, 2000) (noting defendant Wal-Mart allegedly sold all halogen bulb lamps at issue and that "there is likely to be much common evidence regarding … the halogen bulbs"). Finally, in *Goodman v. H. Heintz & Co.*, all plaintiffs allegedly were defrauded by the same course of conduct perpetrated by the defendants. *Goodman*, 265 F. Supp. 440, 443 (N.D. Ill. 1967). That stands in stark contrast to the instant case, where Plaintiff has *not* alleged a common course of conduct, any agreement, or other connection between Medela and any of the other defendants.[8]

In sum, the motion to sever is timely under the plain language of Rule 21, the standards of Rule 20, and the facts alleged in the complaint.

## <u>CONCLUSION</u>

For the foregoing reasons, and the reasons set forth in its motion and opening brief, Medela respectfully requests that the Court grant the motion and enter an order severing the claims against Medela for all purposes.

Dated: July 7, 2008

---

[8]     *MyMail*, cited by Plaintiff, also is distinguishable in part on the same ground. *MyMail*, 223 F.R.D. at 457 (noting that the moving defendants "have utilized shared resources" with the defendants who had not moved to sever).

Respectfully submitted,

MEDELA INC.


By:   /s/  Susan M. Benton
        One of Its Attorneys

Susan M. Benton  (sbenton@winston.com)
Alexis T. MacDowall  (amacdowall@winston.com)
Kevin A. Banasik  (kbanasik@winston.com)
Charles W. Kierpiec  (ckierpiec@winston.com)
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600
(312) 558-5700 (fax)

*Attorneys for Defendant,*
  *Medela Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of July 2008, I caused a copy of the foregoing document, DEFENDANT MEDELA INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO SEVER CLAIMS AGAINST MEDELA INC., to be filed electronically. Notice of this filing will be sent to the attorneys listed immediately below by operation of the Court's ECF system, which notice shall constitute service pursuant to Local Rule 5.9. Parties may access this filing through the Court's system.

*Attorneys for Plaintiffs in Ramos and Scalia cases:*

Mary Jane Fait  (fait@whafh.com)
Theodore B. Bell  (tbell@whafh.com)
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC
55 West Monroe Street, Suite 1111
Chicago, Illinois  60603

*Attorneys for RC2 Corporation and Leading Curves Brands, Inc.:*

Bart Thomas Murphy  (bart.murphy@icemiller.com)
Thomas J. Hayes  (thomas.hayes@icemiller.com)
ICE MILLER LLP
2300 Cabot Drive, Suite 455
Lisle, Illinois  60532

*Attorneys for Playtex Products, Inc.:*

Andrew Rothschild  (arothschild@lewisrice.com)
Richard B. Walsh, Jr.  (rwalsh@lewisrice.com)
LEWIS, RICE & FINGERSH
500 North Broadway, Suite 2000
St. Louis, Missouri  63102

Dexter G. Benoit  (dbenoit@ngelaw.com)
Robert Edward Browne  (rbrowne@ngelaw.com)
NEAL, GERBER & EISENBERG
Two North LaSalle Street, Suite 2200
Chicago, Illinois  60602

Furthermore, I hereby certify that on this 7th day of July 2008, I caused a copy of the foregoing document, DEFENDANT MEDELA INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO SEVER CLAIMS AGAINST MEDELA INC., to be served via E-Mail and First Class Mail on the following:

*Attorneys for Plaintiff in <u>Smith</u> case*:

Elizabeth A. Fegan (beth@hbsslaw.com)
Timothy P. Mahoney (timm@hbsslaw.com)
Daniel J. Kurowski (dank@hbsslaw.com)
HAGENS BERMAN SOBOL SHAPIRO LLP
820 North Blvd, Suite B
Oak Park, Illinois 60301
(708) 776-5600
(708) 776-5601 (fax)

   /s/ Kevin A. Banasik

# Exhibit A

FOCUS - 20 of 73 DOCUMENTS

CARLOS ADAMS, et al., Plaintiffs, V. MINNESOTA MINING AND MANUFAC-
TURING CO., et al., Defendants.

Civil Action No. 6: 04-521-DCR

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
KENTUCKY, LONDON DIVISION

*2005 U.S. Dist. LEXIS 27404*

January 27, 2005, Decided

SUBSEQUENT HISTORY: Companion case at *Seward v. 3M, 2005 U.S. Dist. LEXIS 35733 (E.D. Ky., July 22, 2005)*
Motion granted by, in part, Motion denied by, in part, Remanded by, in part *Adams v. 3M, 2005 U.S. Dist. LEXIS 27309 (E.D. Ky., July 22, 2005)*

COUNSEL: [*1] For Earl Gibson, Carlos Hensley, William Hensley, Jr., Dailey Sandlin, Boyd Wagers, Plaintiffs: Edmond Collett, Edmond Collett, P.S.C., Hyden, KY; Kenneth A. Buckle, Law Office of Kenneth A. Buckle, Hyden, KY; Louis L. Plotkin, Rodney P. Vincent, Gertler, Gertler, Vincent & Plotkin, New Orleans, LA.

For Minnesota Mining & Manufacturing Company a foreign corporation, Defendant: Byron N. Miller, Clay M. Stevens, Thompson, Miller & Simpson PLC, Louisville, KY; Kevin M. Murphy, Thompson, Miller & Simpson, PLC - Louisville, Louisville, KY.

For Mine Safety Appliances Company a foreign Corporation, Defendant: Ben T. White, II, John B. Moore, M. Trent Spurlock, Philip M. Longmeyer, Phillips, Parker, Orberson & Moore, PLC, Louisville, KY; Karen K. Maston, Connelly, Baker, Wotring & Jackson, LLP, Houston, TX.

For American Optical Corporation a foreign corporation, Defendant: Carol Dan Browning, Stites & Harbison, Louisville, KY; Julie McDonnell Payne, Robert Michael Connolly, Whitney Frazier Watt, Stites & Harbison, PLLC - Louisville, Louisville, KY.

For Mine Service Company, Inc. a Kentucky corporation, Defendant: Patrick W. Gault, Weber & Rose, P.S.C., Louisville, KY.

For [*2] Kentucky Mine Supply Company a Kentucky Corporation, Defendant: Craig R. Banford, James David Bolen, Jr., Huddleston, Bolen, Beatty, Porter & Copen, Huntington, WV.

For Moldex-Metric, Inc. a foreign corporation, Defendant: John A. Sheffer, Sheffer & Sheffer, Louisville, KY.

JUDGES: Danny C. Reeves, United States District Judge.

OPINION BY: Danny C. Reeves

OPINION

MEMORANDUM OPINION AND ORDER

*** *** *** ***

This matter is pending for consideration of American Optical Corporation's ("American Optical") motion to sever [Record No. 2], Moldex-Metric, Inc.'s motion to join the motion to sever [Record No. 3], the Plaintiffs' motion to hold the motion to sever in abeyance [Record No. 7], and the Plaintiffs' motion to remand this matter to state court [Record No. 8]. There are currently 167 Plaintiffs in this action. The Defendants argue that the claims of these Plaintiffs do not meet the requirements for permissive joinder contained in *Rule 20(a) of the Federal Rules of Civil Procedure.* Some of the Plaintiffs appear to have claims against two non-diverse Defendants from Kentucky, *i.e.,* Mine Service Company, Inc. ("MSC") and Kentucky Mine [*3] Supply Company ("KMSC"; collectively referred to as "the Kentucky Defendants"). It appears that many Plaintiffs, however, do not have claims against these Defendants. Therefore, if their claims were severed, complete diversity would exist for those Plaintiffs who do not have claims against the Ken-

tucky Defendants. Thus, the issue of remand turns first upon the Court's consideration of whether severance is appropriate.

For the reasons discussed herein, the Court will grant American Optical's motion to sever, grant Moldex-Metric's motion to join, deny the Plaintiffs' motion to hold American Optical's motion in abeyance, grant the Plaintiffs' motion to remand with respect to those plaintiffs who have a valid claim against the Kentucky Defendants, permit the Plaintiffs to take limited discovery as to the issue of which Plaintiffs were provided masks by the Kentucky Defendants, require subsequent briefing from the parties' regarding the link between the Kentucky Defendants and the individual Plaintiffs, and hold this Court's ruling regarding severance and remand in abatement until such time as the Court can determine which Plaintiffs have a valid claim against the Kentucky Defendants. [*4] Finally, the Court will grant the Plaintiffs' motion for leave to file a supplemental memorandum in support of their motion to remand [Record No. 18].

## I. BACKGROUND

The Plaintiffs in this case are former coal miners who allegedly suffer from black lung disease. They worked in coal mines in Kentucky and used various respirators designed to reduce harmful coal dust. from entering their lungs. The respirators were manufactured by one of the five "manufacturing" defendants in this case, i.e., Minnesota Mining and Manufacturing Company, Mine Safety Appliances Company, American Optical, Flexo Products, Inc., and Moldex-Metric, Inc. The Plaintiffs claim that the respirators were defective, causing coal dust to enter their lungs. They claim that this defect led to their contraction of black lung disease.

The Kentucky Defendants, MSC and KMSC, were not involved in manufacturing the masks but were simply retailers who sold masks from certain manufacturing defendants. MSC and KMSC were incorporated in Kentucky and have their principal place of business in Kentucky. Thus, if properly joined in this action, their presence would defeat diversity jurisdiction because most of the Plaintiffs [*5] are Kentucky citizens for diversity purposes. American Optical, however, makes essentially three claims: (1) that the Complaint does not sufficiently link the individual plaintiffs to the Kentucky Defendants in a manner which can support legal causation; (2) that the Plaintiffs mis-joined their claims because not all of the Plaintiffs' claims share the requisite commonality to be joined under Rule 20(a); and (3) the Kentucky Defendants were fraudulently joined because they cannot be liable for any tort for their role in the distribution and sale of the respirators.

This is one of numerous lawsuits brought in this state claiming that certain coal respirator masks sold by the Defendants were defective. The Defendants claim that in several other actions, the Plaintiffs have joined non-diverse Kentucky defendants -- typically retailers -- and then failed to pursue their claims against those retailers once the action was remanded by federal district courts for lack of diversity jurisdiction. They argue that the claims brought against the Kentucky Defendants are another attempt to avoid federal jurisdiction. The Plaintiffs, however, contend that they have pursued claims against mask retailers [*6] in other cases and have, in fact, settled with two retailers in another case. In addition, they claim that all of the Plaintiffs have a connection with the Kentucky Defendants.

## II. LEGAL ANALYSIS

### A. Sufficiency of the Complaint

The Plaintiffs' Complaint links their claims to the Kentucky Defendants by stating that the Kentucky Defendants "assisted in dispensing and selling to Plaintiff's [sic] mine employers for use by Plaintiffs, citizens of the State of Kentucky, and, in particular, the citizens of Leslie County, Kentucky, were defective and unreasonably dangerous for use in coal mines." (Compl. at PP 45, 52.) It appears, however, that numerous Plaintiffs are not residents of Leslie County and, in fact, two plaintiffs are not even citizens of Kentucky. [Record No. 1, Ex. A, #3] Thus, the Complaint does not link all of the Plaintiffs to the Kentucky Defendants. Further, the Plaintiffs do not provide the names of the employers of the Plaintiffs, thus preventing the Defendants (or the Court) from tracing the Plaintiffs' masks to the Kentucky Defendants in an effort to determine which Plaintiffs have claims against the Kentucky Defendants. By failing to plead [*7] facts tying the individual Plaintiffs to the Kentucky Defendants, the Plaintiffs fail to establish a causal link between the Kentucky Defendants and their alleged injuries. Salisbury v. Purdue Pharma, 166 F. Supp. 2d 546, 549-50 (E.D. Ky. 2001).

In addition, some of Plaintiffs' claims against the Kentucky Defendants are essentially claims of fraud, i.e., they claim that these Defendants "engaged in concerted action pursuant to a common scheme or plan to protect their industry by hiding the limitations and defects of their respiratory protective devices from the purchasers and users . . . ." (Compl. at P 16.) Such claims must meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. In re: Rezulin Prods. Liability Litig. (hereafter, "Rezulin I"), 133 F. Supp. 2d 272, 285 (S.D.N.Y. 2001). The Plaintiffs' complaint does not sufficiently identify the causal link between each Plaintiffs' injury and the Kentucky Defendants.

Thus, the Plaintiffs have failed to sufficiently plead facts causally connecting their individual claims to the Kentucky Defendants and have failed [*8] to plead facts sufficient to support a claim of fraud. Although the Defendants argue that this necessitates dismissal of these claims, the Court believes that a more appropriate solution would be to file a motion for a more definite statement pursuant to *Rule 12(e) of the Federal Rules of Civil Procedure. See Azar v. Conley, 480 F.2d 220, 222 n.4 (6th Cir. 1973)* ("We note the other avenues available in the future to narrow the issues in this case short of the more drastic step of dismissal. Although pure pleading cannot be condoned, *Rules 12(e)* and *(f)* of the Federal Rules of Civil Procedure contemplate an expeditious method of removing extraneous matters to more clearly define the issues. Also pretrial conferences and the various discovery techniques may limit the issues."). And because the Court believes that discovery will be necessary to resolve the severance issue, as discussed *infra,* the Plaintiffs should be able to cure any pleading defects against the Kentucky Defendants from information uncovered during this limited discovery.

## B. *Motion to Sever*

Moving pursuant to *Rule 21 of the Federal Rules of Civil Procedure* [*9] , American Optical claims that not all of the Plaintiffs share sufficient commonality to qualify for joinder of claims pursuant to *Rule 20(a).* Thus, the Defendants claim that the Plaintiffs have engaged in "misjoinder." *In re: Rezulin Prods. Liability Litig.,* (hereafter "*Rezulin II*") *168 F. Supp. 2d 136, 144 (S.D.N.Y. 2001).* Misjoinder occurs when plaintiffs, some with claims against a diverse party and some without, join together in one action to defeat diversity jurisdiction, even though their claims do not satisfy *Rule 20(a)'s* requirements for permissive joinder. Misjoinder must not be confused with fraudulent joinder, discussed *infra,* in which the defendants claim that the plaintiff has made allegations against a defendant simply to defeat diversity jurisdiction, without a legal or factual basis to proceed against the non-diverse defendant.

*Rule 20(a) of the Federal Rules of Civil Procedure* is similar to *Kentucky Rule of Civil Procedure 20.01* and provides in relevant part that:

> **(a) Permissive Joinder.** All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of [*10] or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. . . .

*Rule 20 (a), Fed. R. Civ. P.* As commentators have observed, this rule emphasizes "pragmatism" with joinder being based on common sense, fact-based considerations -- not upon arcane historic formulations. 4 *Moore's Federal Practice, § 20.02[1][a]* (Matthew Bender 3d ed. 2004).

The rule serves several related purposes. First, it is intended to promote efficiency because all interested parties may be joined in a single proceeding, thereby encouraging a comprehensive resolution of the dispute. Second, because all interested parties are bound by a single judgment, inconsistent outcomes are avoided. *Id.; see also Ohio ex rel., Fisher v. Louis Trauth Dairy, 856 F. Supp. 1229, 1239 (S.D. Ohio 1994)* (permissive joinder promotes judicial economy by making final determination of all claims in a single action). Further, in an effort to achieve these goals, the permissive joinder rule is to be liberally construed. *Independent Liberty Life Ins. Co. v. Fiduciary and Gen. Corp., 91 F.R.D. 535, 537-38 (W.D. Mich. 1981).* [*11] Notwithstanding the liberal rules of construction, it is clear that both requirements contained in the rule -- transactional relatedness and commonality -- are required. 4 *Moore's Fed. Practice, supra,* at 20-19, 20-20; *see also Michaels Bldg. Co. v. Ameritrust Co., 848 F.2d 674, 682 (6th Cir. 1988).* In addition, courts evaluate joinder and severance on a case-by-case basis, taking into account such considerations as efficiency, convenience, consistency, and fundamental fairness. *Insolia v. Philip Morris, Inc., 186 F.R.D. 547, 549 (W.D. Wis. 1999).* The trial judge has significant discretion in determining whether to join or sever claims. *Id. at 548-49.*

Despite being given approximately two additional weeks to respond to the motion to sever [Record No. 4], the Plaintiffs did not file a response to this motion, instead filing a motion to hold ruling on this motion in abeyance until this Court's ruling on the motion to remand [Record No. 7]. This motion, however, was filed after the response deadline (which was extended by the Court for approximately two additional weeks [Record No. 4]) for the Defendants' motion to sever had [*12] passed.

The Plaintiffs contend that the Court should simply remand this matter and allow the state court to consider the issue of severance. This Court, however, has a duty to rule on matters properly before it. As American Optical notes, the issue of joinder is independent of the issue of remand. If some of the Plaintiffs claims should be severed, such a decision may impact which claims, if any, are remanded. Thus, it is imperative for the Court to consider American Optical's motion to sever the claims before ruling on the motion to remand. *See In re: Benja-*

*min Moore and Co., 309 F.3d 296 (5th Cir. 2002)* (in a case in which not all plaintiffs had claims against non-diverse defendant, appellate court ordered district court to determine, before ruling on motion to remand, whether plaintiffs' claims were different enough to warrant severance); *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC, 261 F. Supp. 2d 483, 490 (E.D. Va. 2003)* (after removal to federal court, district court severed diversity-defeating plaintiff as a misjoined plaintiff pursuant to *Rules 20 and 21* and thus denied motion to remand); *Rezulin II, 168 F. Supp. 2d 136* [*13] (severing claims of misjoined parties, remanding those that were not diverse and retaining jurisdiction over claims of diverse plaintiffs); *but see Osborn v. Metropolitan Life Ins. Co., 341 F. Supp. 2d 1123, 1127 (E.D. Cal. 2004)* (noting that other federal courts have considered misjoinder before considering remand and stating that "my own judgment is that the last thing the federal courts need is more procedural complexity. I thus conclude that the better rule would require Met Life to resolve the claimed misjoinder in state court, and then, if that court severed the case and diversity then existed, it could seek removal of the cause to federal court.")

The Court is not persuaded by the Plaintiffs' citation in their supplemental memorandum to a five-line Order filed by a Magistrate Judge in the Western District of Kentucky which indicated that the Court was holding a similar motion to sever in abeyance pending a ruling on the motion to remand. This brief Order does not provide any insight to the Court, nor is it binding. The Court is more persuaded by the numerous published decisions discussed *supra* which have found that district courts should consider severing [*14] mis-joined claims prior to considering remand, given that it would be unfair for plaintiffs to mis-join parties in state court and then, following remand, have the plaintiffs prevent a federal court from considering a claim of misjoinder by arguing that the federal court lacked jurisdiction to hear the argument. Thus, the Court will address the motion to sever before addressing the motion to remand.

There are two requirements for establishing joinder of claims pursuant to *Rule 20(a)*: (1) there must be a common question of law or fact, and (2) the case must arise out of the same transaction, occurrence, or series of transactions or occurrences. *James v. Gilmore, 389 U.S. 572, 88 S. Ct. 695, 19 L. Ed. 2d 783 (1968).* The most troubling aspect of joinder in this case is the second requirement, *i.e.*, transactional relatedness.

While the concept of transactional relatedness is flexible, in determining whether "transactional relatedness" has been established, the ultimate determination is whether there are enough factual occurrences to ensure that joinder is fair. *Hall v. E. I. Du Pont De Nemours & Co., 345 F. Supp. 353, 381 (E.D.N.Y. 1972); see also*

*Abdullah v. Acands, Inc., 30 F.3d 264, 269 n.5 (1st Cir. 1994)* [*15] (joinder rejected in action by sailors alleging asbestos exposure but not alleging that plaintiffs served on same vessel during same time period, or were exposed by same machinery); *Saval v. BL Ltd., 710 F.2d 1027, 1031 (4th Cir. 1983)* (in action alleging breach of warranty regarding automobiles, fact that plaintiffs alleged similar problems did not mean that the claims were transactionally related). Indeed, "mere factual similarity is not sufficient to compel joinder." *McCormick v. Mays, 124 F.R.D. 164, 167 (S.D. Ohio 1988).*

American Optical cites several cases holding that joinder is improper when different manufacturers and distributors are involved and the only similarity between the plaintiffs' claims is that the plaintiffs were injured by the same generic product. *Rezulin II, 168 F. Supp. 2d 136; Graziose v. Am. Home Prods. Corp., 202 F.R.D. 638 (D. Nev. 2001); Insolia, 186 F.R.D. 547.* The *Graziose* Court dealt with a claim brought by various plaintiffs against numerous distributors and manufacturers of medications that contained phenylpropanolamine, a supposedly harmful substance. In refusing [*16] to allow the joinder of the plaintiffs in the same action, the district court noted that:

> the purchases/ingestions of the medications in question clearly did not arise out of the same transaction or a series of transactions. They occurred at different times. The medicines were different. The retailers were different. The manufacturers are different. The questions of law and fact involved in each claim is also different. The damages involve different people with different sets of facts. The purchases, the use, the need, the motivation, the knowledge of the parties, the alleged reliance, apparently the exact nature of the injuries or damages, the potential for contributing factors . . . are all questions peculiar to each claim.

*Graziose, 202 F.R.D. at 640.* Similarly, in *Rezulin II,* the court noted that:

> the plaintiffs . . . allege a defect (or defects) the precise contours of which are unknown and which may have caused different results -- not merely different injuries -- in patients depending on such variables as exposure to the drug, the patient's physical state at the time of taking the drug, and a host of other known and unknown factors [*17] that must be considered at trial with respect to each individ-

ual plaintiff. They do not allege that they received Rezulin from the same source or that they were exposed to Rezulin for similar periods of time. . . . They do not allege injuries specific to each of them so as to allow the Court to determine how many plaintiffs, if any, share injuries in common. Joinder "of several plaintiffs who have no connection to each other in no way promotes trial convenience or expedites the adjudication of asserted claims."

*Rezulin II, 168 F. Supp. 2d at 146* (citation omitted). In this case, the contours of each Plaintiffs' claim will vary depending upon such factors as: the type of mask used and the identity of the manufacturer, the length of use of the mask, the mine in which the mask was used, the physical ailments attributable to the mask, and the identity of the retailer.

To counter these authorities, the Plaintiffs cite *In re Norplant Contraceptive Prods., 168 F.R.D. 579, 581 (E.D. Tex. 1996)*. In *Norplant,* a group of plaintiffs sued the manufacturers of Norplant, a surgically inserted form of the birth-control drug progestin, as well as the doctors [*18] who inserted Norplant into their arms. The Defendants sought to sever the plaintiffs claims into groups based upon the identity of the doctor who installed the contraceptive. The district court, however, held that common facts and questions of law pervaded, including whether Norplant was harmful. *Id.* As the Defendants point out, *Norplant* involved a single manufacturer and a single product, unlike the present case.

The Plaintiffs also cite *Leverence v. PFS Corp., 462 N.W.2d 218, 158 Wis. 2d 64 (Wis. Ct. App. 1990)*. This case, however, is of limited precedential value, as it discusses Wisconsin's interpretation of its joinder rule. Moreover, the defective product in *Leverence* was manufactured by a single manufacturer. Further, the court noted that, while the trial court had the discretion to deny severance, a later severance might become necessary as the case developed. *Id. at 232.*

The Court agrees with the holdings in *Rezulin II, Graziose,* and *Insolia:* a generic claim against various manufacturers is not necessarily sufficient to find that the plaintiffs claims arose out of the same "transactions or occurrences" when the plaintiffs make claims [*19] against various retailers and manufacturers. In this case, the manufacturers of the masks were different, the retailers were different, the plaintiffs used different masks for varying periods of time and suffered varying degrees of harm, and the safety information conveyed by each company and received by each plaintiff is likely different.

Further, the claims brought against the retailers are entirely different from the claims brought against the manufacturers, involving different legal theories and different types of proof. The assurances provided by the retailers is likely different, as is the amount of information the retailers had about their products. The Court does not believe that each plaintiffs' injury arose from the same transaction or occurrence as the others. As discussed *supra,* the facts of each Plaintiffs' case will turn on numerous independent variables.

The Plaintiffs claim that judicial economy would be harmed by severing any of their claims. It should be noted, however, that "joinder of several plaintiffs who have no connection to each other in no way promotes trial convenience or expedites the adjudication of asserted claims." *Rezulin II, 168 F. Supp. 2d at 146.* [*20] The Court must also consider whether it is fair to the individual Defendants to defend an action from 167 different Plaintiffs, who used masks by different manufacturers and purchased the masks from different retailers. In the *Insolia* case, numerous cigarette users sued various tobacco companies, claiming they had conspired to hide the dangers of tobacco smoke. In granting the defendants' motion to sever the claims, the court noted that:

> this case involves five tobacco companies who have manufactured hundreds of brands of cigarettes. It is unlikely that a jury could keep track of which plaintiff smoked which brand and for how long while also retaining a coherent grasp of the minutiae associated with addiction, medical causation and legal causation. But this is not simply a matter of jury confusion. Judicial resources are wasted, not conserved, when a jury is subjected to a welter of evidence relevant to some parties but not others. Confusion can lead to prejudice when there are inadequate assurances that evidence will be weighed against the appropriate party and in the proper context.

*Insolia, 186 F.R.D. at 551.* In this case, jury confusion would [*21] likely result in co-mingling Plaintiffs who allege claims against various retailer defendants in the same action with Plaintiffs who have no claim against the retailers. Such confusion will waste judicial resources and prejudice the Defendants.

The Plaintiffs, however, boldly state that "not all plaintiffs will have their cases tried together. A trial group will be created under *Rule 20(b)*." [Record No. 14, p. 11] Ignoring for the moment the Plaintiffs' presupposi-

tion that this Court or a state court would create separate trial groups, it is equally clear that confusion can be avoided by severing the Plaintiffs' claims pursuant to *Rule 20(a)*. Further, if severance is not granted, the case will be remanded and it is unclear whether the state court would order separate trials pursuant to *Rule 20.02* of the Kentucky Rules of Civil Procedure. The Court must also bear in mind a foreign defendant's right to remove a case, properly subject to federal jurisdiction, to avoid local bias. *Gafford v. General Elec. Co., 997 F.2d 150, 158-59 (6th Cir. 1993)*. Weighing all of these factors, the Court believes that a limited severance is appropriate.

Finally, the Plaintiffs claim [*22] that this Court should not find misjoinder because there is no proof of fraud or "egregious conduct," citing *Tapscott v. MS Dealer Service Corp., 77 F.3d 1353 (11th Cir. 1996)*. The *Tapscott* case is credited with first having established the "fraudulent misjoinder" theory. 14B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3723 (3d ed. 1998). The *Tapscott* Court noted that it did "not hold that mere misjoinder is fraudulent joinder," instead holding misjoinder coupled with "egregious conduct" constitutes fraudulent misjoinder. *Tapscott, 77 F.3d at 1360*. Relying on this language, Plaintiffs claim that they have not acted fraudulently or egregiously and thus claim that there is no evidence of fraudulent joinder. Regardless of whether the record demonstrates bad faith on the part of the Plaintiffs, this Court agrees with the *Rezulin* and *Bay Tobacco* Courts which did not require a finding of egregious conduct in order to sever the unrelated claims. *See Rezulin, 168 F. Supp. 2d at 147-48* (finding it unnecessary to apply *Tapscott's* "egregious conduct" requirement).

Because it is unclear based [*23] on the Complaint which Defendants have a link between their alleged injuries and the Kentucky Defendants, the Court will give the parties a *limited* amount of time in which to take discovery on this issue. After this discovery, the Court will sever those Plaintiffs with viable claims against the Kentucky Defendants from those Plaintiffs who do not have such claims. If, as the Plaintiffs contend, each individual Plaintiff has a viable claim against a Kentucky Defendant, the Court will not sever this action. And, while further severance may be necessary, based both upon the manufacturers' and the retailers' relationships with the individual Plaintiffs, such additional severance can be taken up at a later date. [1] Discovery may aid the Court in determining whether additional severance is necessary. At this point, however, it is only necessary for the Court to determine which Plaintiffs have claims against the Kentucky Defendants and sever those claims, in order to resolve the remand issue properly before the Court.

1  Any future severance could be based upon either *Rule 20(a)* or *Rule 20(b)*.

[*24] C. *Motion to Remand & Fraudulent Joinder*

Having concluded that the Plaintiffs with valid causes of action against the Kentucky Defendants should be severed from those who do not, the Court must next consider the Defendants' claim that the Kentucky Defendants were fraudulently joined, alleging that the Plaintiffs have not pled a viable cause of action against them. Thus, this analysis applies only to the claims of Plaintiffs who can satisfy the Court that they received dust masks from a Kentucky Defendant, an issue to be established during the parties' limited discovery on that issue. If the Kentucky Defendants were not fraudulently joinder, these Plaintiffs' claims must be remanded.

The burden of establishing jurisdiction is upon the defendant as the removing party. *Gafford v. Gen. Elec. Co., 997 F.2d 150, 155 (6th Cir. 1993); Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit, 874 F.2d 332, 339 (6th Cir. 1989)*. In *Coyne v. The Am. Tobacco Co., 183 F.3d 488, 493 (6th Cir. 1999)*, the Sixth Circuit explained the relevant considerations in analyzing a claim of fraudulent joinder, noting that:

> the [*25] removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law. However, if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, this Court must remand the action to state court. The district court must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the non removing party. All doubts as to the propriety of removal are resolved in favor of remand.

It should be further noted that:

> this court has a responsibility to accept jurisdiction in all proper cases. [However,] it has a greater obligation to protect the jurisdiction of the State court, both by reason of comity to that court and fairness to litigants who have chosen it as a forum. Where there is doubt as to federal jurisdiction, the doubt should be construed in favor of remanding the case to the State court where there is no doubt as to its jurisdiction.

*Walsh v. Am. Airlines, Inc., 264 F. Supp. 514, 515 (E.D. Ky. 1967).* Thus, this Court must remand the case if there is any doubt regarding this Court's [*26] ability to retain jurisdiction.

The Defendants assert that the Kentucky Middleman Statute, *K.R.S. § 411.340*, forecloses any liability against the Kentucky Defendants. That statute provides that:

> In any product liability action, if the manufacturer is identified and subject to the jurisdiction of the court, a wholesaler, distributor, or retailer who distributes or sells a product, upon his showing by a preponderance of the evidence that said product was sold by him in its original manufactured condition or package, or in the same condition such product was in when received by said wholesaler, distributor or retailer, shall not be liable to the plaintiff for damages arising solely from the distribution or sale of such product, unless such wholesaler, distributor or retailer, breached an express warranty or knew or should have known at the time of distribution or sale of such product that the product was in a defective condition, unreasonably dangerous to the user or consumer.

*K.R.S. § 411.340.*

The Defendants claim that the respirators and dust masks were sold in their original condition, thus precluding liability [*27] for the Kentucky Defendants. They cite an affidavit from Wallace Cornett, President of MSC, which stated that the masks were sold in their original condition, without any modifications. (9/4/03 Cornett Aff. P 4.) He further states that: MSC made no warranties as to the quality of the respirators or as to their fitness for any particular use (*Id.* P 5); MSC had no reason to know of the alleged defects (*Id.* P 6); and MSC acted as a "mere conduit" between the manufacturers of the respirators and the coal companies (10/31/03 Cornett Aff. P 9). The Defendants state that "the affidavits prove that plaintiffs cannot avoid the effect of the middleman statute." [Record No. 1, p. 7]

The Defendants essentially seek to have this Court dismiss the Kentucky Defendants based entirely upon Cornett's self-serving affidavit before any discovery is conducted. The Plaintiffs' Complaint alleges that the Kentucky Defendants were involved in a scheme to hide the limitations and defects of the respirators they sold. (Compl. at P 16.) They also claim that the Kentucky Defendants made false representations about the respirators' safety. (*Id.* at PP 50, 57.) The Court cannot find Cornett's self-serving [*28] affidavit sufficient to defeat the presumption in favor of remand, given that the Plaintiffs' complaint pleads a viable cause of action against the Kentucky Defendants. Further, it does not appear that Cornett has any affiliation with KMSC and thus, his affidavit would not be sufficient to remove KMSC.

The Defendants also point out that the Plaintiffs have not established how the retailers should have known of the alleged defects in the masks. Noting that the Plaintiffs are alleging that the manufacturers deliberately hid the defects in the masks, the Defendants claim that it is inconsistent to simultaneously argue that the retailers should have known of the defects. The information exchanged between manufacturers and retailers, however, is likely much different than the information exchanged between manufacturers and the ultimate users of the masks. As discovery has not yet commenced, it is difficult for the Plaintiffs to demonstrate what knowledge, if any, the retailers had of the defectiveness of the masks. (However, under *Rule 11 of the Federal Rule of Civil Procedure*, the Plaintiffs' counsel should have *some* information or evidence [*29] to support this claim.) It would be improper to remove the retailers as Defendants at this early stage of the proceedings merely because one retailer claims that he was unaware of the dangers of the masks.

The Court additionally notes that it has reviewed opinions from two district judges within this state which concluded that the Kentucky Middleman Statute does not render the distributors and retailers of the allegedly defective respirators "fraudulent" parties to the plaintiffs' suits. *Baker v. Minnesota Mining and Manufacturing Co.*, No. 6:03-CV-470-KKC (E.D. Ky. May 26, 2004); *Adams v. Minnesota Mining and Manufacturing Co.*, No. 4:03CV-182-M (W.D. Ky. March 30, 2004). Judge Caldwell's opinion, in fact, involved one of the same "fraudulent" parties, *i.e.*, MSC. In addition, the Defendants attempted to rely upon the exact same affidavit, *i.e.*, the affidavit of MSC President Wallace Cornett. [6:03-CV-470-KKC, Record No. 32, Exs. 8, 11] Judge Caldwell noted that

> the only evidence produced by American Optical on this issue is an affidavit from Mine Service's president who states that, contrary to the allegations in the Complaints, Mine Service "had no reason [*30] to know at the time of the sale of each of the masks/respirator products of any alleged defects" in the products. This Court cannot determine that a distributor had no reason to know about a product's

defects based solely on a conclusory statement made by the defendant distributor to that effect.

[6:03-CV-470-KKC, Record No. 63, p. 7]

Thus, as this Court held in *Baker v. Minnesota Mining and Manufacturing Co.,* No. 6:03-CV-470-KKC (E.D. Ky. May 26, 2004) and as the District Court for the Western District of Kentucky held in *Adams v. Minnesota Mining and Manufacturing Co.,* No. 4:03CV-182-M (W.D. Ky. March 30, 2004), the undersigned concludes that there is a colorable basis for predicting that those Plaintiffs whose masks came from the Kentucky Defendants *may* ultimately prevail against the Kentucky retailers. This conclusion is bolstered by the fact that all doubts are "resolved in favor of remand." *Coyne, 183 F.3d at 493.*

## III. CONCLUSION

Accordingly, for the reasons discussed herein, it is hereby **ORDERED** as follows:

(1) The Plaintiffs' Motion to Remand [Record No. 8] is **GRANTED**, in part, and **DENIED**, in part.

(2) The [*31] Defendants' Motion to Sever [Record No. 2] is **GRANTED**, in part.

(3) Moldex-Metric, Inc.'s Motion to Join the Motion to Sever [Record No. 3] is **GRANTED.**

(4) The Plaintiffs' Motion to Hold the Motion to Sever in Abeyance [Record No. 7] is **DENIED.**

(5) The parties are given a period of thirty (30) days from the entry of this Memorandum Opinion and Order in which to conduct discovery limited solely to the issue of which Plaintiffs received masks from the Kentucky Defendants. *The parties are advised in advance that the Court is not inclined to extend this thirty (30) day period.*

(6) Discovery is limited in the following manner: within ten (10) calendar days of the entry of this Memorandum Opinion and Order, the Plaintiffs may serve upon each Kentucky Defendant: five (5) requests for production of documents, five (5) requests for admission, and five (5) interrogatories. The Defendants are directed to respond to this limited discovery within fifteen (15) calendar days. The Defendants may serve similar discovery requests upon each Plaintiff with the same limitations as to time and number being applicable.

(7) Following this discovery period, the parties [*32] shall have fifteen (15) calendar days in which to file a Joint Order severing the Plaintiffs with valid claims against either of the Kentucky Defendants from those who do not have a valid claim against those Defendants and remanding those with valid claims to the Leslie Circuit Court.

(8) If the parties are unable to agree on such an Order, the Plaintiffs will be given twenty (20) days following the discovery period in which to file a brief (with supporting documentation attached) identifying the individual Plaintiffs who purchased or received masks through the Kentucky Defendants. The Defendants shall have fifteen (15) calendar days in which to file a response brief and the Plaintiffs shall have eleven (11) calendar days to file a reply. No time will be given for sur-Responses or sur-Replies.

(9) The portion of the Order granting the motions to sever and remand shall be **HELD IN ABEYANCE** until such time as the Court determines which Plaintiffs have valid claims against the Kentucky Defendants. If the Court determines that all Plaintiff have stated a viable claim against the Kentucky Defendants, the Court will vacate the portion of this Order granting the motion to sever.

[*33] (10) The Plaintiffs' motion for leave to file a supplemental memorandum [Record No. 18] is **GRANTED.** The Clerk shall **FILE** the previously tendered supplemental memorandum.

This 27th day of January, 2005.

**Signed By:**

*Danny C. Reeves*

**United States District Judge**