UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GRISSELLE RAMOS, on behalf of herself and others similarly situated,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>PLAYTEX PRODUCTS, INC., RC2 CORPORATION, LEARNING CURVE BRANDS, INC., and MEDELA, INC.,<br><br>　　　　　Defendants. | Case No. 08-CV-2703<br><br>Judge Lefkow<br><br>Mag. Judge Ashman |
| DINA SCALIA, JENNIFER SUAREZ, and MARISSA LOPEZ, on behalf of herself and others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>PLAYTEX PRODUCTS, INC., RC2 CORPORATION, LEARNING CURVE BRANDS, INC., and MEDELA, INC.,<br><br>　　　　　Defendants. | Case No. 08-CV-2828<br><br>Judge Lefkow<br><br>Mag. Judge Ashman |

### PLAINTIFFS' RESPONSE TO DEFENDANT MEDELA INC.'S MOTION FOR ENTRY OF A CASE MANAGEMENT ORDER PURSUANT TO RULE 16(c)(12)

Medela's motion for a "Lone Pine" order rests on a fundamental misunderstanding of what this case is about. Despite Medela's attempts to distort Plaintiffs' Complaint into a toxic tort case, this is in fact a consumer fraud case. In such a case as this, actual exposure is not a necessary element of Plaintiffs' claims. Moreover, Medela recently has offered to purchasers a

refund or replacement with a lead-free product, which Plaintiffs believe renders Medela's motion moot.

## I.  A "LONE PINE" ORDER IS INAPPROPRIATE FOR THIS CASE.

Courts enter "Lone Pine" Orders in toxic tort cases, in which plaintiffs must prove actual exposure to a hazardous substance and physical injury in order to prevail. This case is not a toxic tort case. It is a consumer fraud case. Plaintiffs allege that Medela wrongfully failed to disclose that its cooler carriers contained lead. The damages that Plaintiffs seek are the monies that have been paid to Medela for the cooler carriers, monies that would not have been paid had Plaintiffs known that the cooler carriers contained lead. Plaintiffs' actual exposure to lead is not a necessary element of their claims. An order requiring Plaintiffs to produce evidence of their actual exposure to lead would therefore be pointless.

The only cases in which "Lone Pine" orders are entered are toxic tort cases in which plaintiffs allege personal injury and property damage resulting from actual exposure to a hazardous substance. The "Lone Pine" cases cited by Medela prove this rule. In *Acuna v. Brown & Root Inc.*, 200 F.3d 335 (5th Cir. 2000), "plaintiffs alleged that they were exposed to and injured by the defendants' mining and processing activities." *Id.* at 337–38. In the *Lone Pine* case itself, the plaintiffs claimed "that their properties were depreciated in value because of polluted waters arising from the Lone Pine Landfill" and "also sued for personal injuries caused by the same pollution, the nature of the injuries being allergies, skin rashes and similar ailments." *Lore v. Lone Pine Corp.*, No. L-33606-85, 1986 WL 637507, at *1 (N.J. Super. Nov. 18, 1986). Medela's remaining authorities are the same. *See Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 599 (5th Cir. 2006) (personal injury claims resulting from exposure to smoke from oil fire); *Abuan v. Gen. Elec. Co.*, 3 F.3d 329, 331 (9th Cir. 1993) ("[Plaintiffs] alleg[ed] that they had been exposed to PCBs, dioxins, and furans as a result of the accident . . . ."); *Burns v.*

*Universal Crop Prot. Alliance*, No. 07-535, 2007 WL 2811533, at *1 (E.D. Ark. Sept. 25, 2007) ("Plaintiffs claim that their 2006 cotton crops suffered damage from exposure to Defendants' herbicides . . . ."); *Baker v. Chevron USA, Inc.*, No. 05-227, 2007 WL 315346, at *1 (S.D. Ohio Jan. 30, 2007) ("claims for personal injury and property damage allegedly resulting from Chevron's operation of a nearby gasoline refinery"); *Bell v. ExxonMobil Corp.*, NO. 01-04-00171, 2005 Tex. App. LEXIS 1680, at *2-3 (Tex. App. Mar. 3, 2005) (personal injury and property damage claims resulting from chemical release from defendant's plant); *Meyer v. Creative Nail Design, Inc.*, 975 P.2d 1264, 1266 (Mont. 1999) ("Their complaint alleged that while at work, Valery was exposed to a variety of toxic substances which made her ill."); *In re Mohawk Rubber Co.*, 982 S.W.2d 494 (Tex. App. 1998) ("[P]laintiffs . . . allege generally that they suffered actual or potential injuries because of their exposure to rubber products manufactured by some defendants and to rubber fumes created by the use of machines built by other defendants."); *In re Love Canal Actions*, 547 N.Y.S.2d 174, 177 (N.Y. Sup. Ct. 1989) (claims for "personal injury" and "property damage").

By contrast, Plaintiffs' claims are consumer fraud claims, not toxic tort claims. The First Count of Plaintiffs' Complaint invokes the consumer fraud statutes of 43 states and alleges that Medela wrongfully failed to disclose that its cooler carriers contained lead. (Class Action Compl., No. 08-2703, ("Ramos Compl.") ¶¶ 61-63; Class Action Compl., No. 08-2828, ("Scalia Compl.") ¶¶ 64-66.) The damages sought under this Count include "the monies paid to purchase" Medela's cooler carriers. (Ramos Compl. ¶ 66; Scalia Compl. ¶ 69.) The Second Count alleges a breach of the implied warranty of merchantability, premised on the presence of lead in Medela's cooler carriers, and seeks damages resulting from this breach. (Ramos Compl. ¶¶ 68-73, 77; Scalia Compl. ¶ 71-76, 79.) The Third Count, sounding in negligence, seeks

3

compensation for Plaintiffs' "economic damages, as well as their children's increased risk of harm." (Ramos Compl. ¶ 84; Scalia Compl. ¶ 87.) Finally, in the Fourth Count, Plaintiffs state a claim of unjust enrichment, for which they seek as damages "full disgorgement and restitution of Defendants' enrichment, benefits, and ill-gotten gains." (Ramos Compl. ¶ 89; Scalia Compl. ¶ 92.) Each of these claims seek damages resulting from the purchase of the product itself; none of them require that Plaintiffs demonstrate actual exposure to lead in Medela's products.

Plaintiffs do not need to allege actual exposure to lead to establish their claims, and they did not allege actual exposure to lead in their Complaint. The claim of the opening sentence of Medela's brief, that "Plaintiffs in these cases have alleged that their children have been exposed to lead from defendants' products" (Medela's Br. at 1) misreads the Complaint to the extent that it equates "exposed to lead" with actual exposure. Medela cites paragraphs 6, 62, 73, 81, and 86-87 of Plaintiff Ramos's Complaint as paragraphs in which it believes Plaintiffs have alleged actual exposure to lead. (Medela's Br. at 2.) But these paragraphs do not so allege. When Plaintiffs allege in paragraph 6 that "Plaintiffs' children and the children of the Class have been significantly exposed to a known hazardous substance" (Ramos Compl. ¶ 6), Plaintiffs use the common, natural meaning of the word "exposed"[1] rather than some technical meaning, alleging that, by virtue of the presence of lead in Medela's product, Plaintiffs' children have been put at risk of actually coming into contact with lead. This is made clear by the following sentence of paragraph 6, which alleges that "[a]s a result of such exposure, the children are at an increased risk of being poisoned by lead." (Ramos Compl. ¶ 6.) If paragraph 6 were alleging actual exposure, then it would make no sense to speak of an "increased risk" of lead poisoning, since

---

[1] Black's Law Dictionary defines "expose" as follows: "To place in a position where the object spoken of is open to danger, or where it is near or accessible to anything which may affect it detrimentally; as, to 'expose' a child, or to expose oneself or another to a contagious disease or to danger or hazard of any kind." Black's Law Dictionary 579 (6th ed. 1990).

4

such poisoning would already have occurred. Medela itself acknowledges that "exposure" can mean something short of actual exposure by clarifying, both in its brief and its proposed order, that by "exposure," Medela means "actual exposure to lead (i.e., human contact with lead in the product)." (Medela's Br. at 2; Medela's Br., Ex. B, [Proposed] Case Management Order #1 ¶1B.)

None of the other paragraphs that Medela identifies allege Plaintiffs' actual exposure to lead. In paragraph 62, Plaintiffs' only reference to lead is their statement that "Defendants failed to disclose that their VPBPs contained lead." (Ramos Compl. ¶ 62.) Similarly, in paragraph 73, Plaintiffs allege only that "the VPBPs are defective and inherently dangerous, as a result of containing lead." (Ramos Compl. ¶ 73.) Paragraph 81 refers only to "the possibility that young children handling or otherwise exposed to the VPBPs could suffer adverse health effects" (Ramos Compl. ¶ 81), not actual exposure itself. Finally, paragraph 86 and 87, which are pled in support of Plaintiffs' unjust enrichment claim, read, in full:

> 86. Defendants have received a benefit from Plaintiff and the other members of the Class in the form of the monies Defendants received from Plaintiffs and other Class members' purchases of their VPBPs during the period of time relevant to this action.
>
> 87. Defendants have knowingly appreciated and accepted this benefit which has resulted and continues to result in an inequity to Plaintiff and the other members of the Class.

(Ramos Compl. ¶ 86-87.) Plaintiffs are at a complete loss to understand how these paragraphs could be read to allege actual exposure to lead. In short, there is no support in Plaintiffs' Complaints for Medela's supposition that Plaintiffs' claims are "premised entirely on allegations of [actual] exposure to lead." (Medela's Br. at 7.)

A "Lone Pine" order has no purpose in a consumer fraud case such as this. Medela cites no instance in which a "Lone Pine" order has been entered in a consumer fraud case such as this,

5

and for good reason: requiring Plaintiffs to produce evidence of the actual exposure to lead that Plaintiffs may have suffered would have no utility in advancing the resolution of their claims and would merely hinder the progress of this case.

## II.     PLAINTIFFS' CLAIMS ARE ALREADY WELL-SUPPORTED.

At certain points in its brief, Medela suggests that Plaintiffs' Complaint "is without any reasonable basis in fact" (Medela's Br. at 1) and even invokes Rule 11 (id. at 1, 10). These extremely serious statements are both inappropriate and wrong. Plaintiffs base their Complaints not only on the Center for Environmental Health's findings of lead content in Medela's products (findings which, to Plaintiffs' knowledge, Medela has not rebutted), but on Medela's own actions. Medela's website contains a page addressing the Center for Environmental Health's investigation and stating to purchasers of its cooler carrier that "if you are concerned or uncomfortable using the cooler carrier, simply send it back." (*See* Exhibit A, http://www.medelabreastfeedingus.com/for-nursing-mothers/response-to-ceh-claims.) Medela also offers such purchasers of its cooler carrier their choice of an $18 refund or a replacement cooler carrier (which presumably will not contain lead). These actions on Medela's part serve as an admission that prior models of cooler carriers did contain lead and that this would make consumers "concerned or uncomfortable."

## III.    A CASE MANAGEMENT ORDER IS UNWARRANTED IN THIS CASE BECAUSE OF MEDELA'S STANDING OFFER TO ITS PURCHASERS.

In addition to the reasons discussed above, a "Lone Pine" order is unwarranted because continued litigation is unlikely with respect to plaintiffs' claims against Medela. In plaintiffs' view, Medela's offer to issue a refund or a replacement product to its purchasers is the type of relief requested by Plaintiffs in this case; thus, there will not be any efficiency gains from adopting a "Lone Pine"-type procedure. Indeed, Medela's offer renders its motion moot.

Medela's willingness to offer a refund or a lead-free replacement product to its purchasers constitutes a significant benefit to the public. Accordingly, plaintiffs' counsel intends to file a motion for attorney's fees and costs shortly.

## IV.  CONCLUSION

For the above stated reasons, Plaintiffs respectfully request that the Court deny Medela Inc.'s Motion for Entry of a Case Management Order Pursuant to Rule 16(c)(12).

Dated: July 10, 2008

                                            **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**

                                            /s/ Mary Jane Fait
Mary Jane Fait
Theodore B. Bell
John Tangren
55 W. Monroe Street, Suite 1111
Chicago, IL  60603
Tel:  (312) 984-0000

*Counsel for Plaintiffs*

# EXHIBIT A



# Response to articles on Medela cooler carrier based on claims by Center for Environmental Health:

Medela is first and foremost concerned with the health and safety of mothers and babies. Reports have questioned the safety of the cooler carrier bags in two of our products by claiming that the cooler bags expose children to lead. We assure you that independent tests for cooler bags from each product indicated no risk of lead exposure or lead ingestion for babies and children. Independent testing has shown that the bottle, nipple and breastshield are lead free.

However if you are concerned or uncomfortable using the cooler carrier, simply send it back. Please keep all of the contents of the cooler carrier and only return the cooler carrier itself in a large envelope. Please provide us with your contact information in the Contact Us form and indicate your preference for one of the two options below.

1. We will replace the cooler carrier *, which we expect to have available in early June.
2. Alternatively, we can offer an $18 refund* if a replacement bag is not preferred.

Please complete all of the fields within the Contact Us form. Click here for the Contact Us page and type "Cooler Bag" in the Comments field, as well as your preference for a refund or a replacement. Please allow 4-6 weeks from the time we receive your cooler carrier to process your request.

Please include your name and address on the outside of the envelope, your preference for Replacement or Refund, and return your cooler carrier to:

Medela Inc.
Cooler Bag Returns
**Replacement (or Refund) – only indicate one or the other**
1101 Corporate Drive
McHenry, IL 60050

NOTE: Please do not include any additional correspondence with your cooler carrier return. Instead, please call Customer Service at 800-435-8316.

* Plus we will pay you $2.50 for First Class US Postal Service shipping expense for returned cooler.