**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GRISSELLE RAMOS, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PLAYTEX PRODUCTS, INC., RC2 CORPORATION, LEARNING CURVE BRANDS, INC., and PLAYTEX, INC.,<br><br>Defendants. | Case No. 08-CV-2703<br><br>Judge Lefkow<br><br>Magistrate Judge Schenkier |
| DINA SCALIA, *et al.*, on behalf of themselves and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PLAYTEX PRODUCTS, INC., RC2 CORPORATION, LEARNING CURVE BRANDS, INC., and PLAYTEX, INC.,<br><br>Defendants. | Case No. 08-CV-2828<br><br>Judge Lefkow<br><br>Magistrate Judge Ashman |
| JESSICA SMITH, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PLAYTEX PRODUCTS, INC., RC2 CORPORATION, LEARNING CURVE BRANDS, INC., and PLAYTEX, INC.,<br><br>Defendants. | Case No. 08-CV-3352<br><br>Judge Lefkow<br><br>Magistrate Judge Brown |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT PLAYTEX PRODUCTS, INC.'S MOTION TO SEVER CLAIMS**

## I.    INTRODUCTION

Shortly after the Complaints were filed and prior to any discovery, Playtex filed a motion to sever Plaintiffs' claims against Playtex from the litigation pursuant to Federal Rule of Civil Procedure 21, contending that Playtex was improperly joined as a defendant under Federal Rule of Civil Procedure 20(a).  The principal basis for Playtex's Motion to Sever is that Plaintiffs' claims against the Defendants do not arise from the same "transactions or occurrence, or series of transactions or occurrences"  and that Plaintiffs have failed to specifically allege that they actually purchased a Playtex "Fridge-to-Go" product.  Playtex Mtn. at 4, 8-14.  Playtex's Motion ignores allegations throughout the Complaint that explain how the claims against the Defendants, including Playtex, arise out of logically related transactions and occurrences.   Playtex's Motion is also moot in light of Plaintiffs' Consolidated Amended Complaint.  As discussed below, Playtex's Motion is both premature and without merit, and therefore should be denied.

## II.    FACTS

Plaintiffs bring this action as a Class Action pursuant to Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all persons who purchased:  (a) a vinyl cooler for storing breast milk made by Medela; (b) a carrying case for a First Years "Natural Transitions" breast pump made by RC2; or (c) a Playtex "Fridge to Go" vinyl baby bottle cooler (collectively vinyl plastic baby products ("VPBPs")).  ¶ 49[1].  Despite marketing VPBPs as safe for young children, Defendants Playtex Products, Inc. ("Playtex"), RC2 Corporation ("RC2"), Learning Curve Brands, Inc. ("Learning Curve"), and Medela, Inc. ("Medela") distributed VPBPs that are intended to hold milk to be ingested by newborns but that contain lead, a chemical poisonous to children, especially if ingested.  ¶¶ 2, 10-12.

This action concerns the consolidation of three materially identical cases.  On May 9, 2008, a complaint was initially filed on behalf of Grisselle Ramos and a putative class, *Grisselle Ramos v. Playtex Prods., Inc., RC2 Corp., Learning Curve Brands, Inc. & Medela Inc.*, No. 08

---

[1] All "¶" references cited herein, unless otherwise specified, are to the Class Action Complaint in the first filed case, *Grisselle Ramos v. Playtex Prods., Inc., RC2 Corp., Learning Curve Brands, Inc. & Medela, Inc*., No. 08 CV 2703 ("*Ramos* Action"), Dkt. No. 1.

2

CV 2703 ("*Ramos* Action"). On May 15, an identical second complaint was filed on behalf of Dina Scalia, Jennifer Suarez, Marissa Lopez and the same identical putative class, *Dina Scalia, Jennifer Suarez, Marissa Lopez v. Playtex Prods., Inc., RC2 Corp., Learning Curve Brands, Inc. & Medela Inc.*, No. 08 CV 2828 ("*Scalia* Action"). On June 10, the Court granted Plaintiffs' unopposed motion to reassign and consolidate the *Ramos* and *Scalia* actions. On June 11, an identical third complaint was filed on behalf of Jessica Smith and an identical putative class, *Jessica Smith v. Playtex Prods., Inc., RC2 Corp., Learning Curve Brands, Inc. & Medela Inc.*, No. 08 CV 3352 ("*Smith* Action"). The only difference between the three complaints is the paragraphs identifying the named Plaintiffs. All are against the same Defendants and contain the same allegations. On June 27, 2008, this Court granted Learning Curve Brand, Inc.'s motion to reassign and consolidate the *Smith* Action with the *Ramos* and *Scalia* Actions.

On June 2, 2008, Medela filed a motion in the *Ramos* Action requesting the Court to sever Plaintiffs' claims against it from Plaintiffs' claims against other Defendants. Dkt. Nos. 26-28. On June 23, RC2 and Learning Curve Brands, Inc. submitted responses in support of Medela's Motion to Sever, claiming that they adopt the arguments and authorities cited by Medela. Dkt. No. 41. Similar to RC2 & Learning Curve, on June 23, Defendant Playtex submitted a response in support of Medela's Motion to Sever. Dkt. No. 42. That same day, Plaintiffs submitted a response to Medela's Motion to Sever. Dkt. No. 49. On July 2, Playtex filed a Motion to Sever in all three Actions that is similar to Medela's June 2nd Motion. Dkt. Nos. 65-67. Plaintiffs now submit their Response to Playtex's Motion to Sever. Plaintiffs' arguments and authorities that oppose severing their identical claims against RC2 and Learning are briefed at length in their Medela Response (Dkt. No. 49) and this Playtex Response.[2]

### III.   ARGUMENT

**A.   Playtex's Motion Is Premature.**

Similar to Medela's Motion to Sever (Dkt. Nos. 26-28), Playtex's Motion to Sever is also premature. Although, Playtex waited to file its Motion to Sever in conjunction with its Motion to

---

[2] Plaintiffs also respectfully direct the Court's attention to their Medela Response. Dkt. No. 49.

Dismiss, the progression of the case has hardly changed from when Medela filed its Motion to Sever, in support of which Playtex filed a Response. Dkt. No. 42. Discovery still has not begun. Yet, Playtex argues that a "Rule 21 motion to drop or add parties may be made 'at any time' under the language of the Rule." Playtex Mtn. at 5. However, while Federal Rule of Civil Procedure 21 provides that severance may be addressed "at any stage of the litigation," and is, as Playtex asserts, an appropriate remedy for misjoinder, courts have recognized that consideration of joinder and severance issues is usually more appropriate after pretrial proceedings have been completed, when the similarities and differences between claims are more developed and the court and the parties are in a better position to assess whether the goals of judicial economy and fairness would be better met by separate trials. This approach is in keeping with "[t]he general philosophy of the joinder provisions of the federal rules … to allow virtually unlimited joinder at the pleading stage but to give the district court discretion to shape the trial to the necessities of the particular case." Wright, Miller & Kane, *Federal Practice and Procedure*, § 1660.

Contrary to Playtex's assertions, courts have accordingly denied as premature motions for severance filed in the early stages of litigation. *See*, *e.g.*, *MyMail, Ltd. v. America Online, Inc.*, 223 F.R.D. 455, 457-58 (E.D. Tex. 2004) (deferring consideration of a Rule 21 motion until after completion of discovery, noting that "the Court is not in a position to determine whether the UOL Defendants' products or methods are substantially similar or dissimilar to the other defendants" and that to sever the defendants "would decrease judicial efficiency by requiring duplicitous claim constructions, discovery and pretrial motions."); *Allstate Ins. Co. v. Wal-Mart Stores, Inc.*, No. 00 CV 0307, 2000 U.S. Dist. LEXIS 9648, at *6 (N.D. Ill. July 11, 2000) ("Judicial economy strongly favors coordinated discovery for all 15 claims. Further, many of the claims may be resolved short of trial, either on summary judgment or by settlement….It would not be until trial of the case that severance need be resolved. Prior to that time, judicial economy clearly favors continuing these cases in a single proceeding."); *Goodman v. H. Hentz & Co.*, 265 F. Supp. 440, 443 (N.D. Ill. 1967) ("The purpose of [Rule 20 is] is to avoid multiple lawsuits involving similar or identical issues, except where a showing of oppression, prejudice or delay is

made.…After discovery and pre-trial, if a single trial appears prejudicial to the defendants … the court will in its discretion under Rule 20(b) and 21 order separate trials. But the court will not order a severance before the parties are at issue, absent a showing of prejudice, merely on the theory that Rule 20 sets out technical requirements as a condition precedent to allowing joinder of parties.").

Playtex has identified no compelling reason for severing Plaintiffs' claims against it at this early stage of the litigation. Playtex contends that allowing Plaintiffs' claims against it to proceed with those against the other Defendants would mean "there will be extensive manufacturer-specific discovery, requiring participation by counsel for each defendant in discovery proceedings having little if any connection to that counsel's client." Playtex Mtn. at 13. However, as the court noted in denying severance of a defendant in *Sprint Commc'n Co., L.P. v. Theglobe.com, Inc.*, 233 F.R.D. 615, 617-18 (D. Kan. 2006), "[j]oinder permits but does not require participation" in discovery relating to the other defendants, and allowing the claims against all defendants to proceed through the pretrial stage permits "clear economies to be achieved on behalf of all parties." The court in *Sprint* also cited the risk of inconsistent pretrial rulings as another reason to deny severance. *Id*. at 618.

Additionally, Playtex complains that "[c]lass action proceedings will be significantly more complicated as the parties and the court attempt to sort out how to best to deal with three separate classes, – one applicable to each manufacturer – that plaintiffs have attempted to meld into one class by use of an overly-expansive class definition." Playtex Mtn. at 13 (footnote omitted). Although Playtex concedes that whether the claims against a manufacturer are suitable for class treatment is not now before the Court, its complaint of prejudice in terms of class definition and manageability issues has no merit at this early stage in the litigation.

Further, Medela's claim does not need to be severed since Medela's claim may be moot since they have agreed to replace or refund and class counsel intends to seek notice to the class and attorneys' fees and costs – another reason to hold off on severing.

Similarly, while Playtex contends that "if the claims against the defendants were to remained joined for a common trial, further prejudice would result" and that permitting a jury to decide Playtex's liability based on evidence against the other defendants would result in undue prejudice to Playtex, (Playtex Mtn. at 13), these are hypothetical issues that can and should await the completion of pretrial proceedings to be addressed. *See Magnavox Co. v. APF Elecs., Inc.*, 496 F. Supp. 29, 34 (N.D. Ill. 1980) ("any prejudice that could result from improper joinder can be prevented since improperly joined parties can be dropped or added at a later stage of the litigation, Fed. R. Civ. P. 21, and since separate trials on certain claims or issues can be ordered"); *see also* Wright, Miller & Kane, *Federal Practice and Procedure*, § 1653 (noting that "no difficulty is likely to result from the joinder of even marginally related parties at the pleading stage" since "[t]he court always has the discretion to sever those parties whose claims may be tried more conveniently in separate actions"); *cf. In re High Fructose Corn Syrup Antitrust Litig.*, 361 F.3d 439, 441 (7th Cir. 2004) (concluding that the trial court had inherent authority to impanel two juries to sit simultaneously where extraordinary amount of highly prejudicial evidence was admissible against one defendant).

Playtex's motive in seeking severance at the outset of this litigation, prior to any discovery, is transparent – to multiply Plaintiffs' efforts and costs in litigating their claims and those of the Class.[3] The policy goals of judicial economy and fairness would be best met by allowing Plaintiffs' claims against all Defendants to go forward and deferring any issues of joinder and severance until pretrial proceedings are completed. The Court should therefore deny Playtex's Motion as premature.

**B.　Common Question.**

Playtex rejects common factual issues including, *inter alia*, whether exposure to lead is dangerous to children, whether Defendants failed to disclose that their VPBPs contained lead, and whether the nondisclosure that the VPBPs contained lead was a material omission. Playtex

---

[3] Indeed, Playtex filed a separate Motion to Dismiss (Dkt. Nos. 62-64) at the same time it filed its Motion to Sever.

Mtn. at 6-7. However, courts have taken a liberal approach in determining whether the "common question" requirement of Rule 20(a) is satisfied, holding that a single common question of law or fact is sufficient. *See*, *e.g.*, *Intercon Research Assocs., Ltd. v. Dresser Indus., Inc.*, 696 F.2d 53, 57 (7th Cir. 1982) (noting that Rule 20(a) requires only that "some common question of law or fact … be present with respect to all parties in the action (*i.e.*, a common thread)"). Playtex's attempt to discount Plaintiffs' common issues by simply stating they "turn on the circumstances of each defendant's manufacture and marketing of its products and each plaintiff's use of exposure to those products," erroneously and prematurely attacks the merits of Plaintiffs' claims and misconstrues Plaintiffs' basic claim that each Defendant failed to disclose that their VPBPs contained lead. Playtex Mtn. at 7. Additionally, Playtex ignores the common legal bases for Plaintiffs' claims which are described throughout the Complaint and baldly asserts that Plaintiffs have not identified common issues of law. Here, there are multiple common issues of fact and law – numerous "common threads." *See*, *e.g.*, ¶¶ 1-7, 30-34, 40-48, 53, 60-89. Given that the legal and statutory bases for Plaintiffs' claims are identical as against all Defendants, there are numerous common issues of law as well.

**C.** **Transactional Relatedness.**

Even if Playtex's Motion to Sever is not premature, the Court should deny the Motion because Playtex's argument – that Playtex is not properly joined as a defendant under Federal Rule of Civil Procedure 20(a) – is without merit. Rule 20(a) provides for joinder of defendants where "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Contrary to Playtex's assertion, courts have applied Rule 20(a) liberally in order to facilitate joinder of claims. As the court explained in *Smith v. Northeastern Illinois Univ.*, No. 98 C 3555, 2002 U.S. Dist. LEXIS 3883, at *3 (N.D. Ill. Feb. 28, 2002): "Federal policy favors joinder, as the purpose of Rule 20 is 'to promote trial convenience and expedite the final

7

determination of disputes, thereby preventing multiple lawsuits.'" (quoting *Bailey v. N. Trust Co.*, 196 F.R.D. 513, 515 (N.D. Ill. 2000)). *See also Wilson v. Peslak*, No. 04 C 2345, 2005 WL 1227316, at *2 (N.D. Ill. May 12, 2005) ("The Seventh Circuit has noted that the purpose of a liberal Rule 20(a) joinder requirement 'is to enable economies in litigation.'") (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)).

The court in *Smith* further noted that "[u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *Id.* (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)); *see also* Wright, Miller & Kane, *Federal Practice and Procedure*, § 1653 (Rule 20 ensures that "all reasonably related claims for relief by or against different parties" may be joined). Accordingly, district courts have "wide discretion when deciding whether joinder of parties is proper." *Smith*, 2002 U.S. Dist. LEXIS 3883, at *4; *accord, Wilson*, 2005 WL 1227316, at *2.

Both requirements of Rule 20(a) – that the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences" and that "any question of law or fact common to all defendants" will arise – are easily satisfied here. "The transaction and common-question requirements prescribed by Rule 20(a) are not rigid tests. They are flexible concepts used by the courts to implement the purpose of Rule 20 and are therefore to be read as broadly as possible whenever doing so is likely to promote judicial economy." Wright, Miller & Kane, *Federal Practice and Procedure*, § 1653.

Consistent with the policy objectives of Rule 20(a) in facilitating joinder, courts have taken a liberal "case-by-case" approach to determining whether the "transaction or occurrence" requirement is satisfied rather than the strict interpretation of the Rule advocated by Playtex. *Smith*, 2002 U.S. Dist. LEXIS, at *1; *Wilson*, 2005 WL 1227316, at *2. Rule 20 permits "all reasonably related claims for relief by or against different parties to be tried in a single proceeding." *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974); *see also* Wright, Miller & Kane, *Federal Practice and Procedure*, § 1653 ("language in a number of

8

decisions suggests that the courts are inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and to the court" ); *DIRECTV, Inc. v. Barrett*, 220 F.R.D. 630, 631 (D. Kan. 2004) (observing that "'[t]ransaction is a word of flexible meaning. It may comprehend a series of many occurrences depending not so much upon the immediateness of their connection as upon their logical relationship.'" (quoting *Mosley*, 497 F.2d at 1333).

Here, Plaintiffs clearly allege claims against all Defendants, including Playtex, that arise out of logically related transactions and occurrences and will require overlapping proof and duplication of testimony. Plaintiffs allege that all Defendants, including Playtex, sold to Plaintiffs and members of the Class VPBPs tainted with lead; that each of Defendants' VPBPs are carriers for breast milks that contain lead in their vinyl linings; that Defendants, including Playtex, failed to disclose that their VPBPs contained lead; that Defendants', including Playtex's, nondisclosure of the lead content of their VPBPs was a material omission; that the Center for Environmental Health found the VPBPs sold by Defendants, including Playtex, to have lead content; and that Plaintiffs and members of the Class would not have purchased the products if they knew they contained lead. *See*, *e.g.*, ¶¶ 1-8, 30-48, 60-89. The claims for relief and remedies sought by Plaintiffs are also identical as to all Defendants.

Playtex has not shown that it is misjoined or why the goals of judicial economy and fairness require that it be severed from this litigation. Nor do the cases it cites provide any basis for severance here. Nearly all of the cases Playtex relies on involved severance of a plaintiff, not a defendant. In *Graziose v. American Home Prods. Corp.*, 202 F.R.D. 638 (D. Nev. 1999), discussed at length in Playtex's brief, the court held that the Plaintiffs were misjoined, noting that, unlike here, the plaintiffs asserted various and differing claims against the Defendants – some asserted loss of consortium claims; some claimed to have suffered "a stroke and/or other health damages;" another claimed "ventricular tachycardia and/or other health damages." *Id*. at 639.

Similarly, in *Insolia v. Philip Morris Inc.*, 186 F.R.D. 547 (W.D. Wis. 1999), another case Playtex heavily relies on, the court found that plaintiffs, who asserted claims arising out of a thirty year conspiracy among manufacturers of hundreds of brands of cigarettes, were improperly joined.  The court emphasized that "[t]he permissive joinder doctrine is animated by several policies, including the promotion of efficiency, convenience, consistency … and fundamental fairness" and that "[t]hese policies, not a bright-line rule should govern" in deciding whether joinder is appropriate.  *Id*. at 549 (citations omitted).  The court concluded that in light of the duration of the decades-long conspiracy alleged and issues unique to cigarette smoking, "dissimilarities in the claims brought by plaintiffs suggest that these claims are not related logically related to one another." *Id*. at 550.

In another case highlighted by Playtex, *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136 (S.D.N.Y. 2001), the court held that claims against a healthcare provider for negligent administration of a diabetes drug and personal injury claims against prescribing physicians after the drug's withdrawal from the market were misjoined with toxic tort claims against the manufacturer of the drug.  Here, in contrast, Plaintiffs assert the same claims against all Defendants.

Playtex misses the mark in relying upon *Bailey v. Northern Trust Co.*, 196 F.R.D. 513 (N.D. Ill. 2000).  *Bailey* is immediately distinguishable in that it involved numerous plaintiffs suing one defendant, in an employment discrimination case challenging a variety of employment actions and where "[n]one of the plaintiffs challenge a particular standard, policy or procedure." *Id.* at 516.  By contrast, Plaintiffs here challenge solely Defendants', including Playtex's, failure to disclose that there was lead in their respective vinyl baby products.  Additionally, the employees in *Bailey* were employed in a variety of different positions within Defendant's company.  However, in this case, Plaintiffs are all simply consumers of Defendants', including Playtex's, products.

Next, Playtex mistakenly cites *Asher v. 3M*, No. 04-CV-522-KKC, 2005 U.S. Dist. LEXIS 42266 (E.D. Ky. June 30, 2005), in support of its Motion to Sever.  *Asher* involved "one

of many product liability actions … in which current and former coal mine employees assert that certain dust respirators and masks failed to protect them from harmful particles causing them to develop a lung disease known as Coal Workers' Pneumoconiosis ('black lung')." *Id*. at *19. Unlike in *Asher*, the issue of causation is not relevant here because Plaintiffs are not seeking damages for personal injury caused by lead exposure. Moreover, more than one common factual allegation exists since Plaintiffs allege the same problem, the same course of conduct, and the same general representations, *i.e.*, that they failed to disclose their products contained lead.

Along the same lines, Playtex erroneously relies upon *In re Repetitive Stress Injury Litig*., 11 F.3d 368 (2d Cir. 1993). In *In re Repetitive Stress*, the plaintiffs "brought actions alleging injuries resulting from 'repetitive stress' encountered in the use of equipment manufactured or distributed by various defendants." *Id*. at 371. The plaintiffs alleged that a variety of devices manufactured or distributed by the defendants, including keyboards, cash registers, and computer 'mouse' devices, caused his or her injuries. *Id*. Notably, the *Repetitive Stress* court did not consider whether the parties were properly joined under Rule 20. *See generally id*. Instead, the court granted mandamus regarding the district court's consolidation order. In any event, again, that case is limited to the personal injury context, where the court noted that "the sole common fact among these cases is a claim of injury of such generality that it covers a number of different ailments for each of which there are numerous possible causes other than the tortious conduct of one of the defendants." *Id*. at 373. While Plaintiffs in this case take issue with multiple products made by three manufacturer Defendants, all of the products at issue contain lead and therefore, Plaintiffs have been injured in the same manner by purchasing a product they would not have purchased if they knew it contained lead.

Similarly, Playtex relies on the factually distinguishable personal injury cases, *Abdullah v. Acands, Inc.*, 30 F.3d 264 (1st Cir. 1994) and *Norwood v. Raytheon Co.*, No. EP-04-CA-127-RPM, 2007 U.S. Dist. LEXIS 61423 (W.D. Tex. May 17, 2007), regarding asbestos claims and claims for radiation claims respectively. For example, *Abdullah* involved an appeal from the trial court's dismissal of a Spartan, 1,000 plaintiffs' complaint filed against 93 defendants that

"designed, manufactured, or supplied asbestos and asbestos-containing products or machinery for placement on vessels upon which plaintiffs or plaintiffs' decedents served as crew members." *Abdullah*, 30 F.3d at 266. On appeal, the appellate court noted that "[t]he Complaint is bereft of factual allegations indicating why 1,000 plaintiffs and 93 defendants belong in the same action" and gave "no indication of whether plaintiffs were injured while serving on the same vessels or during the same time periods; no indication of whether they were injured by exposure to the same asbestos-containing products or equipment, nor any specification of the products or equipment to which they were exposed." *Id*. at 268-69. Unlike the numerous plaintiffs and defendants in *Abdullah*, the Complaint here identifies the types of product at issue – VPBPs – and explains how all Plaintiffs have suffered the same economic injuries from Defendants' same wrongful conduct.

The Court should also reject Playtex's argument that even if properly joined it should be severed from this litigation. Playtex Mtn. at 14. As discussed above, Playtex's contention that severance will serve judicial economy and is necessary to prevent prejudice to Playtex is baseless, particularly at this early stage of the litigation. Moreover, as the court emphasized in *El Aguila Food Prods., Inc. v. Gruma Corp.*, 167 F. Supp. 2d 955, 960 (S.D. Tex. 2001), "a party is not entitled to a severance when it would prolong the ultimate termination of an action, add to the cost of resolving the lawsuit, create duplicitous litigation or increase the likelihood of inconsistent verdicts." *See also* Wright, Miller & Kane, *Federal Practice and Procedure*, § 1689 ("severance will be refused if the court believes that it will only result in delay, inconvenience, or added expense").

Playtex has not demonstrated in its Motion that it is misjoined under Rule 20(a) or should be severed for any other reason under Rule 21. The Court should therefore deny Playtex's Motion.

## IV.   CONCLUSION

For the foregoing reasons, Playtex's Motion to Sever Plaintiffs' claims against Playtex should be denied.

Dated:  July 29, 2008

**WOLF, HALDENSTEIN, ADLER,
FREEMAN & HERZ, LLC**

By:   /s/ Mary Jane Fait
Mary Jane Fait
Theodore B. Bell
John E. Tangren
55 West Monroe Street, Suite 1111
Chicago, Illinois  60603
Tel:  (312) 984-0000

*Attorneys for Plaintiffs Grisselle Ramos, Dina Scalia, Jennifer Suarez, and Marissa Lopez*

Elizabeth A. Fegan
Timothy P. Mahoney
Daniel J. Kurowski
HAGENS BERMAN SOBOL SHAPIRO LLP
820 North Blvd., Suite B
Oak Park, Illinois  60301
Tel:  (708) 776-5600

*Attorneys for Plaintiff Jessica Smith*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GRISSELLE RAMOS, on behalf of herself and others similarly situated,<br><br>          Plaintiff,<br><br> v.<br><br>PLAYTEX PRODUCTS, INC., RC2 CORPORATION, LEARNING CURVE BRANDS, INC., and PLAYTEX, INC.,<br><br>          Defendants. | Case No. 08-CV-2703<br><br>Judge Lefkow<br><br>Magistrate Judge Schenkier |
| DINA SCALIA, *et al.*, on behalf of themselves and others similarly situated,<br><br>          Plaintiff,<br><br> v.<br><br>PLAYTEX PRODUCTS, INC., RC2 CORPORATION, LEARNING CURVE BRANDS, INC., and PLAYTEX, INC.,<br><br>          Defendants. | Case No. 08-CV-2828<br><br>Judge Lefkow<br><br>Magistrate Judge Ashman |
| JESSICA SMITH, on behalf of herself and all others similarly situated,<br><br>          Plaintiff,<br><br> v.<br><br>PLAYTEX PRODUCTS, INC., RC2 CORPORATION, LEARNING CURVE BRANDS, INC., and PLAYTEX, INC.,<br><br>          Defendants. | Case No. 08-CV-3352<br><br>Judge Lefkow<br><br>Magistrate Judge Brown |

## **NOTICE OF FILING**

**TO:** See Attached Certificate of Service

**PLEASE TAKE NOTICE** that on July 29, 2008, we filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, Illinois 60604, *Plaintiffs' Response in Opposition to Defendant Playtex Products Inc.'s Motion to Sever Claims,* a copy of which is attached and hereby served upon you.

Dated: July 29, 2008

Respectfully submitted,

**WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLC**

  /s/ Mary Jane Fait
Mary Jane Fait
Theodore B. Bell
John Tangren
55 W. Monroe Street, Suite 1111
Chicago, IL  60603
Tel:    (312) 984-0000
Fax:    (312) 984-0001

*Counsel for Plaintiffs*

2

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of July, 2008 copies of **Plaintiffs' Response in Opposition to Defendant Playtex Products Inc.'s Motion to Sever Claims,** was served by causing a true and correct copy of same to be delivered to defense counsel listed below via the Court's ECF system and by electronic transmission from the offices of Wolf Haldenstein Adler Freeman & Herz LLC.

Bart T. Murphy
Thomas J. Hayes
**ICE MILLER LLP**
2300 Cabot Drive, Suite 455
Lisle, IL  60532
bart.murphy@icemiller.com
thomas.hayes@icemiller.com
*Counsel for Defendants RC2 Corporation and Learning Curve Brands, Inc.*

Andrew Rothschild
Richard Walsh, Jr.
**LEWIS, RICE & FINGERSH, L.C.**
500 North Broadway, Suite 2000
St. Louis, Missouri 63102
arothschild@lewisrice.com
rwalsh@lewisrice.com
*Counsel for Defendant Playtex Products, Inc.*

Susan M. Benton
Alexis T. MacDowall
Kevin A. Banasik
Charles W. Kierpiec
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601
sbenton@winston.com
amacdowall@winston.com
kbanasik@winston.com
ckierpiec@winston.com
*Counsel for Defendant Medela, Inc.*

Robert E. Browne
Dexter G. Benoit
**NEAL GERBER & EISENBERG LLP**
Two N. LaSalle Street, Suite 2200
Chicago, Illinois  60602
Rbrowne@ngelaw.com
dbenoit@ngelaw.com
*Counsel for Defendant Playtex Products, Inc.*

Dated: July 29, 2008

Respectfully submitted,

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**

_____/s/ Mary Jane Fait_____
Mary Jane Fait
Theodore B. Bell
John Tangren
55 W. Monroe Street, Suite 1111
Chicago, IL  60603
Tel:    (312) 984-0000

*Counsel for Plaintiffs*

3