**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GRISSELLE RAMOS, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PLAYTEX PRODUCTS, INC., RC2 CORPORATION, LEARNING CURVE BRANDS, INC., and MEDELA, INC.,<br><br>Defendants. | Case No. 08-CV-2703<br><br>Judge Lefkow<br><br>Magistrate Judge Schenkier |
| DINA SCALIA, *et al.*, on behalf of themselves and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PLAYTEX PRODUCTS, INC., RC2 CORPORATION, LEARNING CURVE BRANDS, INC., and MEDELA, INC.,<br><br>Defendants. | Case No. 08-CV-2828<br><br>Judge Lefkow<br><br>Magistrate Judge Ashman |
| JESSICA SMITH, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PLAYTEX PRODUCTS, INC., RC2 CORPORATION, LEARNING CURVE BRANDS, INC., and MEDELA, INC.,<br><br>Defendants. | Case No. 08-CV-3352<br><br>Judge Lefkow<br><br>Magistrate Judge Brown |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS RC2 CORPORATION AND LEARNING CURVE BRANDS, INC.'S MOTIONS TO DISMISS PLAINTIFFS' CLASS ACTIONCOMPLAINTS**

## I. INTRODUCTION

Defendants, including RC2 Corporation and Learning Curve Brands, Inc., put thousands of children at risk of lead poisoning, not through general environmental contamination, but through vinyl plastic baby products ("VPBPs") that contained lead. Yet, Defendants would have this Court find that the parents that bought the VPBPs containing lead have ***no*** right to a refund for the VPBPs. The law does not intend that the victims are left without a remedy while the wrongdoer takes its profit to the bank. Rather, the law provides specific remedies to redress Defendants' misrepresentations and omissions, Defendants' deceptive marketing of the VPBPs, and the fact that Defendants received an unfair benefit.

Plaintiffs bring this action as a Class Action pursuant to Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all persons who purchased: (a) a vinyl cooler for storing breast milk made by Medela; (b) a carrying case for a First Years "Natural Transitions" breast pump made by RC2; or (c) a Playtex "Fridge to Go" vinyl baby bottle cooler. ¶ 49[1]. Despite marketing their VPBPs as safe for young children, Defendants Playtex Products, Inc. ("Playtex"), RC2 Corporation ("RC2"), Learning Curve Brands, Inc. ("Learning Curve"), and Medela, Inc. ("Medela") distributed VPBPs that are intended to hold milk to be ingested by newborns but that contain lead. ¶¶ 2, 10-12.

This action concerns the consolidation of three materially identical cases. On May 9, 2008, a complaint was initially filed on behalf of Grisselle Ramos and a putative class, *Grisselle Ramos v. Playtex Prods., Inc., RC2 Corp., Learning Curve Brands, Inc. & Medela Inc.*, No. 08 CV 2703 ("*Ramos* Action"). On May 15, 2008, an identical second complaint was filed on behalf of Dina Scalia, Jennifer Suarez, Marissa Lopez and the same identical putative class, *Dina Scalia, Jennifer Suarez, Marissa Lopez v. Playtex Prods., Inc., RC2 Corp., Learning Curve Brands, Inc. & Medela Inc.*, No. 08 CV 2828 ("*Scalia* Action"). On June 10, the Court granted Plaintiffs' unopposed motion to reassign and consolidate the *Ramos* and *Scalia* actions. On June

[1] All "¶" references cited herein, unless otherwise specified, are to the Class Action Complaint in the first filed case, *Grisselle Ramos v. Playtex Prods., Inc., RC2 Corp., Learning Curve Brands, Inc.& Medela, Inc.*, No. 08 CV 2703 ("*Ramos* Action"), Dkt. No. 1.

11, an identical third complaint was filed on behalf of Jessica Smith and an identical putative class, *Jessica Smith v. Playtex Prods., Inc., RC2 Corp., Learning Curve Brands, Inc. & Medela Inc.*, No. 08 CV 3352 ("*Smith* Action"). The only difference between the three complaints is the paragraphs identifying the named plaintiffs. All are against the same Defendants and contain the same allegations. On June 27, this Court granted Learning Curve Brand, Inc.'s motion to reassign and consolidate the *Smith* Action with the *Ramo*s and *Scalia* Actions.

On July 2, 2008, Defendants RC2 and Learning Curve Brands filed motions to dismiss in the *Ramos* and *Scalia* Actions. That same day, Learning Curve Brands filed an identical motion to dismiss in the *Smith* Action. Since the arguments in both motions are duplicative, Plaintiffs submit this one cumulative Response.[2]

As set forth below, Plaintiffs have properly alleged claims for consumer fraud, breach of implied warranty, negligence, and unjust enrichment. Accordingly, RC2 Corporation and Learning Curve Brands, Inc.'s (collectively "RC2") 12(b)(6) Motions should be denied.

## II. FACTS

The dangers of lead poisoning, especially to young children, are well-known. ¶¶ 18-29. Products containing lead are already highly regulated and are the target of pending federal and state legislation that would ban the sale of Defendants' products outright. ¶¶ 35-40. Despite this, Defendants have manufactured, marketed and/or distributed VPBPs tainted with lead. ¶¶ 1-

[2] On June 2, 2008, Medela filed a motion in the *Ramos* Action requesting the Court to sever Plaintiffs' claims against it from Plaintiffs' claims against other Defendants. Dkt. Nos. 26-28. On June 23, 2008, RC2 and Learning Curve Brands, Inc. submitted responses in support of Medela's motion to sever, claiming that they adopt the arguments and authorities cited by Medela. Dkt. No. 41. RC2 and Learning Curve further requested, without providing a supporting motion or memorandum, that the Court sever the claims against them from Plaintiffs' claims against the other Defendants. RC2 and Learning Curve simply reference their response to Medela's motion in their Motion to Dismiss, without providing any discussion. Similar to RC2 & Learning Curve, on June 23, Defendant Playtex submitted a response in support of Medela's Motion to Sever. Dkt. No. 42. That same day, Plaintiffs submitted a response to Medela's Motion to Sever. Dkt. No. 49. On July 2, Playtex filed a Motion to Sever in all three Actions, that is similar to Medela's June 2nd Motion. Dkt. Nos. 65-67. On July 29, Plaintiffs submitted their response to Playtex's Motion to Sever. Plaintiffs' arguments and authorities that oppose severing their identical claims against RC2 and Learning are briefed at length in both their Medela Response Dkt. No. 49 and their Playtex Response filed the same day as this Opposition. For purposes of efficiency and in light of the fact that neither RC2 nor Learning Curve filed a motion to sever, Plaintiffs respectfully direct the Court's attention to their Medela and Playtex Responses.

3, 30-32. Defendants, including RC2, did so despite clear regulatory prohibitions on the use of lead in children's products, their knowledge that the ingestion of lead by children can cause serious long-term injury, their prior experiences with the marketing and sale of children's products tainted with lead, and their representations that VPBPs are safe for children. ¶¶ 2-3.

**A. Plaintiffs and the Class Were Deceived by RC2's Uniform Representations.**

RC2 marketed the VPBPs as "safe and quality playthings" despite the fact they are tainted with lead. RC2's marketing campaign is built around assuring parents that their products are safe for children. For example, on their website, RC2 states:

> a. "***We understand that what matters most to parents is keeping their children healthy, happy and safe.*** What matters most to us is helping parents do just that by offering products for every stage of your child's development. . . ."
>
> b. "Learning Curve offers developmental toys that engage children, and provide parents with peace of mind, knowing their children are being inspired and enlightened by ***safe and quality playthings***."
>
> c. "From breast pumps to pacifiers and sippy cups, The First Years by Learning Curve provides ***high-value*** feeding items to nurture your child."
>
> d. "***Nothing is more important to us than ensuring that children's products are safe***. We take our product safety responsibilities very seriously, and the measure of our success is the trust parents are able to place in our products, knowing that we're taking the right steps to protect children." [¶ 42 (emphasis in original).]

Plaintiffs and the Class were deceived by Defendants', including RC2's, representations and purchased without knowing that the VPBPs contained lead. ¶¶ 2, 8. Indeed, not one of RC2's statements would lead any person to believe that RC2 was utilizing lead in their products. However, despite RC2's and other Defendants' clear, uniform representations that its VPBPs were safe for children, the VPBPs were tainted with lead. ¶ 45.

**B. Lead Is a Hazardous Substance.**

Lead is a substance known to be very dangerous to human beings. Essentially, lead lodges in the bone or skeletal structure of the body and certain events can cause it to latently

move into the blood stream and cause significant difficulties. ¶ 18. The U.S. Center for Disease Control has set a blood lead "level of concern" of a mere 10 micrograms per deciliter of blood (a microgram is 1/1,000,000th of a gram and a deciliter is 1/10th of a liter or about 1/10 of a quart), and new research suggests that serious health effects may begin to set in with blood levels as low as 5 micrograms per deciliter. ¶ 19.

On average, children under six will absorb and/or retain about 50% of the lead they ingest. ¶ 20. Children can be exposed to lead through such things as contaminated dust, paint chips, or lead-based products. ¶ 24. Children may be exposed to lead from consumer products through normal hand-to-mouth activity, which is part of their development. *Id*. According to the National Safety Council, it only takes the lead dust equivalent of a single grain of salt for a child to register an elevated blood lead level. ¶ 25. Children under the age of six are the most vulnerable to poisoning by lead, due in large part to the fact that their brains and nervous systems have yet to fully form. The direct effects of pediatric lead poisoning can include reading disabilities, attention deficit, hyperactivity, behavioral problems, stunted growth, hearing impairment and damage to the kidneys and greater demand for medical care generally to treat those problems. If exposed to higher levels, young children may suffer from mental retardation, fall into a coma, or die. ¶ 20.

Thus, Defendants, including RC2, marketing their products as safe, sold VPBPs containing poisonous lead that can cause serious long term injury. Defendants' failure to disclose that the VPBPs contained lead was a material omission. *See, e.g*., ¶¶ 51, 68-73.

## III. STANDARD OF REVIEW

A court must accept a complaint's well-pleaded allegations as true while drawing all favorable inferences for the plaintiff. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006)). Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This "short and plain statement" must be enough "'to give the defendant fair notice of what the . . . claim is and the grounds upon

which it rests.'" *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).

While RC2 half-heartedly claims the *Twombly* standard requires dismissal, *Twombly* does "not require heightened fact pleading of specifics," but rather that the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*, 127 S. Ct. at 1974; *see also St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007), *cert. denied*, ___ U.S. ___, 128 S. Ct. 2431 (2008). Thus, the Seventh Circuit observed that, under *Twombly* and the subsequent decision in *Erickson v. Pardus*, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007), a complaint should be dismissed only when "the factual detail in a complaint [is] so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). Here, as will be more fully explained below, the facts and entitlement to relief are far from sketchy. Thus, under *Twombly* and Rules 8(a), 9(b), and 12(b)(6), RC2's Motions should be denied.

## IV. ARGUMENT

### A. Plaintiffs Have Standing to Prosecute Their Claims.

RC2's contention that Plaintiffs lack standing to prosecute this action is meritless. First, RC2 primarily argues that Plaintiffs do not have standing because the Complaint does not specifically allege that any of the Plaintiffs purchased a First Years "Natural Transitions" breast pump carrying case ("Natural Transitions Carrying Case"). RC2 *Ramos* Mtn. at 2, 4-7; RC2 *Smith* Mtn. at 2, 4-6. Plaintiffs' Amended Consolidated Complaint filed in conjunction with this Response moots RC2's principal standing argument. Regardless, RC2 incorrectly conflates the law on standing to bring suit and only references, in short, *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007), which pertains to pleading standards for a motion to dismiss. RC2 ignores the relevant legal standard for standing.

To meet the Article III, § 2 of the United States Constitution standing requirement, a plaintiff must demonstrate: (1) he or she has suffered an "injury in fact" that is (a) concrete and

particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). RC2 contests the first and second standing elements. RC2 *Ramos* Mtn. at 4-6; RC2 *Smith* Mtn. at 3-5. In analyzing standing, courts "must accept all material allegations of the complaint and must construe the complaint in favor of the complaining party" (*i.e.*, the class members). *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

**1. Plaintiffs have suffered injury-in-fact.**

First, a plaintiff must have suffered an "injury in fact" that is "distinct and palpable" and "fairly traceable to the challenged action." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Here, Plaintiffs have alleged the loss of use of a defective product (and thus seek a refund for the costs of that product).

RC2 construes the meaning of injury-in-fact too restrictively. RC2 contests that the Complaints fail to allege that any Plaintiff has lead poisoning or an elevated blood lead level. RC2 *Ramos* Mtn. at 5; RC2 *Smith* Mtn. at 5. But the purchase of a product based on a material omission constitutes injury-in-fact to give plaintiff standing to sue in federal court. *See, e.g., Zapka v. The Coca-Cola Co.*, No. 99 C 8238, 2000 U.S. Dist. LEXIS 8733, at *4-6 (N.D. Ill. June 21, 2000) (denying defendant's motion to dismiss plaintiff's consumer fraud claim). The plaintiff in *Zapka* sued Coca-Cola on behalf of a putative class, alleging that Coca-Cola violated the Illinois Consumer Fraud and Deceptive Business Practices Act by advertising the diet Coke brand name while using aspartame as sweetener. *Id.* at *1-2. In that case, the court rejected defendant's claim that plaintiff's consumer fraud claim fails because she failed to allege she suffered any injury from drinking the diet Coke. Rather, the court in *Zapka* found that plaintiff's allegations that "she would not have purchased Defendant's product absent the alleged deceptive conduct" was sufficient to survive the motion to dismiss. *Id.* at *5-6. Similarly, Plaintiffs here adequately allege that they would not have purchased the products if they knew the VPBPs

contained lead. ¶¶ 8, 60-67. Thus, Plaintiffs are not relying on speculative future harm, but on their present economic injury. Plaintiffs have been economically damaged by Defendants', including RC2's, conduct whether or not they ever develop a serious medical condition.

**2. Plaintiffs have shown a causal connection between the injury and Defendants' conduct.**

Second, RC2 argues that the Complaint fails to contain "allegations from which it could be reasonably inferred that any alleged injury was even related to the Natural Transitions carrying case." RC2 *Ramos* Mtn. at 5-6; RC2 *Smith* Mtn. at 5. Plaintiffs here have sufficiently alleged that they purchased one or more of Defendants' VPBPs products, which includes RC2's "Natural Transitions" carrying case. *See, e.g.*, ¶¶ 1, 8. Plaintiffs' Consolidated Amended Complaint provides additional information concerning Plaintiffs' VPBPs. Such information is also available to Playtex and the other Defendants via discovery. Further, the Complaint describes in detail RC2's wrongful conduct. *See, e.g.*, ¶¶ 1-7, 30-48, 62-63, 65-66, 73-77, 80-84, 87-89. Thus, Plaintiffs have met their burden of establishing that the alleged injury is fairly traceable to Playtex's alleged wrongful acts.

**B. Plaintiffs Have Adequately Stated Claims for Consumer Fraud (Count I).**

RC2 erroneously moves to dismiss the consumer fraud claims brought by Plaintiffs. RC2 claims Plaintiffs have not alleged that "they are a purchaser or consumer who has been damaged due to unlawful conduct under the act." RC2 *Ramos* Mtn. at 6-7; RC2 *Smith* Mtn. at 6. In support of that proposition, RC2 argues that: (1) Plaintiffs are not consumers, without any allegation they purchased the "Natural Transitions" carrying case; and/or (2) Plaintiffs failed to allege a cognizable injury.[3] *Id*. Next, RC2 contests that Plaintiffs' consumer fraud claims should be dismissed for failure to comply with the pleading requirements of Rule 9(b). RC2 *Ramos* Mtn. at 7-10; RC2 *Smith* Mtn. at 7-9.

RC2's arguments miss the mark. In every instance, RC2 is forced to either ignore the allegations in the Complaint or discount relevant case law. Rather, RC2 merely cites some

[3] RC2's remaining arguments are addressed below.

California law by way of example. The Court must not allow RC2 to cherry-pick both the facts and law to fit its argument, and for the following reasons RC2's Motions must be denied.

**1. Plaintiffs are consumers who suffered a cognizable injury.**

RC2 argues that "[w]ithout any allegation that Plaintiffs purchased, owned, or even used the Natural Transitions Carrying Case, Plaintiffs have failed to meet the most basic threshold requirements of a consumer fraud claim under the laws of the states at issue"; however, their analysis stops there. *See*, *e.g.*, RC2 *Ramos* Mtn. at 7; RC2 *Smith* Mtn. at 6. RC2 artificially limits its analysis to what is alleged regarding each individual Plaintiff, rather than what is alleged throughout the Complaint. *See*, *e.g.*, *id*. RC2 ignores that Plaintiffs' consumer fraud claims expressly incorporated every allegation found in the Complaint. ¶ 60. Moreover, RC2's argument is moot in light of Plaintiffs' Amended Consolidated Complaint, which indicates the products purchased by Plaintiffs.

It is no wonder RC2 ignores the remainder of the Complaint, considering that Plaintiffs clearly alleged that they are consumers who suffered a cognizable injury. *See, e.g*., ¶¶ 1, 5-8, 45-48, 62. Plaintiffs uniformly state that had they known that the VPBPs were contaminated with lead, they would not have purchased the VPBPs. *See, e.g*., ¶ 8. Plaintiffs bargained for lead-free VPBPs; yet they received VPBPs with lead, and as a result, suffered a cognizable injury – the purchase price of the VPBPs.

RC2 erroneously asserts, by way of example, that Plaintiffs have not met the threshold requirements of a consumer fraud claim under California law in failing to allege that they are a "purchaser or consumer who has been damaged due to unlawful conduct under the act." RC2 *Ramos* Mtn. at 6; RC2 *Smith* Mtn. at 6. The plain language of the CLRA defines a consumer as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." § 1761(d). And, under the CLRA, Plaintiffs must allege that they suffered damage "as a result of the use or employment by any person of a method, act, or practice declared to be unlawful." § 1780. Accordingly, Plaintiffs have adequately alleged that they are consumers. *See, e.g*., ¶¶ 1, 5-8, 45-48. Additionally, Plaintiffs allege that:

- Despite marketing their VPBPs as safe for young children, Defendants distributed VPBPs that are intended to hold milk to be ingested by newborns but that contain lead which is poisonous to children, especially if ingested. ¶ 2.
- Defendants did so despite clear regulatory prohibitions on the use of lead in other children's products, their knowledge that the ingestion of lead by children can cause serious long-term injury, their prior experiences with the marketing and sale of children's toys tainted with lead paint, and their representations that the VPBPs are safe for children. ¶ 3.
- However, despite their clear representations that the VPBPs were safe for children, Defendants distributed VPBPs tainted with lead. ¶ 45.
- As alleged above, Defendants' course of conduct is deceptive, because Defendants failed to disclose that their VPBPs contained lead, which is likely to mislead or has the capacity to mislead consumers, including Plaintiff and the other members of the Class. ¶ 62.

RC2's reliance on *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 809-11, 66 Cal. Rptr. 3d 543, 550-52 (Cal. App. Ct. 2007), is misplaced. While the *Buckland* plaintiff was found not to have complied with the CLRA, the circumstances were entirely different – the *Buckland* plaintiff's declaration conceded that she suspected defendants' packaging and marketing was false or misleading and that she bought defendants' products solely to pursue litigation. Thus, the court in *Buckland* concluded that plaintiff could not establish that defendant's conduct caused her damages because she did not show that she actually relied on the relevant representations or omissions. 155 Cal. App. 4th at 809-11. In contrast, Plaintiffs in this case, expressly indicated in their Complaint how they actually relied on RC2's misrepresentations. *See*, *e.g.*, ¶¶ 8, 45-48. Plaintiffs here have never conceded, nor was it their intent, to purchase Defendants' VPBPs solely to pursue litigation. This case is simply not comparable to *Buckland*, where plaintiff was not arguably deceived by defendants' representations. Rather than address the Complaint Plaintiffs filed, RC2 chooses to address the Complaint they ***wished*** Plaintiffs had filed. RC2's tactic avails itself nothing, and its Motions must be denied.

**2. RC2's argument that Plaintiffs' statutory consumer fraud claims should be dismissed under Rule 9(b) ignores Supreme Court precedent and mischaracterizes Plaintiffs' Complaint.**

RC2 argues that Plaintiffs fail to allege their claims under state consumer protection statutes with the required specificity under FED. R. CIV. P. 9(b). *See* RC2 *Ramos* Mtn. at 7-10;

RC2 *Smith* Mtn. at 7-9. Additionally, RC2 erroneously claims that Plaintiffs "make no attempt to plead the elements of each statutory cause of action" under the consumer fraud statutes of forty-three states. RC2 *Ramos* Mtn. at 9-10; RC2 *Smith* Mtn. at 8-9. Plaintiffs disagree.

First, Plaintiffs maintain that the guidance set forth in the Supreme Court's opinion in *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002), does not require Plaintiffs to meet Rule 9(b)'s standards for claims that merely sound in fraud, such as state consumer protection statutes. Rule 8(a) "provides that a complaint must include 'a short and plain statement of the claim showing that the pleader is entitled to relief'" such as to "simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema N.A.,* 534 U.S. at 512 (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41 (1957)). "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions" such as Rule 9(b), which "provides for greater particularity in all averments of fraud or mistake." *Id.* at 513. Thus, because state consumer protection statutes are not specifically mentioned in Rule 9(b), they are not subject to its heightened pleading standard. *See, e.g., Lawson v. Affirmative Equities Co., L.P.*, 341 F. Supp. 2d 51, 67 (D. Mass. 2004) (relying on *Swierkiewicz* to reject defendant's argument that plaintiff's Massachusetts "Consumer Protection Act count must conform to Rule 9(b)'s heightened pleading standard[s]").[4]

Second, notwithstanding the above precedent, even if Plaintiffs were required to plead under Rule 9(b), Plaintiffs have provided the who, what, where, when, why and how in their complaint sufficient to put RC2 on notice of their claims. The Complaint provides that RC2 has marketed their products as "safe and quality playthings." ¶ 42. Plaintiffs allege that RC2 sold the VPBPs despite the existence of lead and attempted to conceal the danger of lead by continuing to market their products as "safe." ¶¶ 2-3, 35-41-42, 45. Each Plaintiff alleges that

[4] Even though "[f]ederal judges are forbidden to supplement the federal rules by requiring 'heightened' pleading of claims not listed in Rule 9," a defendant is not left without protections as "[i]f the defendant needs more information, he can serve a contention interrogatory" or move under Rule 12(e) for a more definite statement. *Thomson v. Washington*, 362 F.3d 969, 971 (7th Cir. 2004) (citing *Swierkiewicz*, 534 U.S. at 513; *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002)); *Swierkiewicz*, 534 U.S. at 514.

he or she purchased VPBPs from Defendants, including RC2. *See*, *e.g*., ¶ 8. Plaintiffs allege that their children are at an increased risk of lead poisoning. ¶¶ 6, 48. Thus, even in light of Rule 9(b)'s heightened standard, Plaintiffs' Complaint nevertheless provides RC2 with sufficient notice of the claims it is expected to defend.

Finally, even if this Court were inclined to agree with RC2's Rule 9(b) argument, courts (including this Court) commonly grant plaintiffs leave to amend to remedy any specificity issues. *See Rogers v. Baxter Int'l Inc*., 417 F. Supp. 2d 974, 985 (N.D. Ill. 2006) (Nolan, M.J.) (dismissing complaint pursuant to Rule 9(b), but granting leave to amend complaint), *aff'd*, 521 F.3d 702 (7th Cir. 2008); *Pressalite Corp. v. Matsushita Elec. Corp. of Am*., No. 02 C 7086, 2003 U.S. Dist. LEXIS 5600, at *27 (N.D. Ill. April 3, 2003) ("When an unamended complaint fails to comply with Rule 9(b), dismissal of the complaint with leave to refile is the appropriate remedy.") (citing FED. R. CIV. P. 15(a)); *Khalid Bin Talal Bin Abdul Azaiz Seoud v. E.F. Hutton & Co*., 720 F. Supp. 671, 676 (N.D. Ill. 1989) (recognizing that "dismissals under Rule 9(b) can be easily cured"). Accordingly, for any alleged pleading deficiencies under Rule 9(b) the only appropriate dismissal is one without prejudice.

**C. Plaintiffs Sufficiently Allege a Claim for Breach of Implied Warranty (Count II).**

**1. The only relevant issue at this pleading stage is Article III standing.**

RC2 urges dismissal of the breach of implied warranty claims alleged under Massachusetts, New Jersey and California law. RC2 *Ramos* Mtn. at 10-11; RC2 *Smith* Mtn. at 9. Essentially, RC2 asserts that the named Plaintiffs have no standing to assert claims on behalf of residents of other states, other than their own. "This is a 'standing' argument, but it is an argument that pertains to standing under Fed. R. Civ. P. 23, not standing in the Article III sense." *Siegel v. Shell Oil Co*., 480 F. Supp. 2d 1034, 1044 (N.D. Ill. 2007) (citing 1 NEWBERG ON CLASS ACTIONS § 1:2 n.11 ("Individual case or controversy standing is distinct from and narrower than common issues and typicality of claims tests under Rule 23.")). This issue should be addressed at the class certification stage, and not on this motion to dismiss. *Siegel*, 480

F. Supp. 2d at 1044 (the only relevant issue at the pleadings stage is Article III standing, not whether plaintiffs are proper class representatives under Rule 23).

Next, RC2 again alleges that Plaintiffs have no standing, or in the case of California law privity of contract, because there are no allegations that they "purchased, owned, or even used the Natural Transitions Carrying Case." RC2 *Ramos* Mtn. at 10-11; RC2 *Smith* Mtn. at 9. As previously discussed, this argument has no merit. *See supra* 6-8.

**2. Defendants had notice of the alleged defect.**

Next, RC2 complains, without legal support, that Plaintiffs' allegations failed to "provide notice as to how the alleged defect caused an injury. RC2 *Ramos* Mtn. at 10-11. Defendants, including RC2, were notified of the breach by virtue of the CEH announcements and direct contact by the CEH, federal and state legislation aimed at preventing children from being exposed to lead, and by the numerous inquiries that they received concerning the defects. ¶¶ 30-40, 75-76. Defendants, including RC2, were on notice of the defect in their VPBPs, at minimum, from the CEH report. ¶¶ 30-40. Thus, there is no basis for dismissal.

**3. At this pleading stage, Plaintiffs have adequately alleged breach of the implied warranty.**

RC2 seeks to dismiss Plaintiffs' breach of implied warranty claims for failure to provide "evidence" that the "product 'proximately caused injury to the ultimate consumer.'" RC2 *Ramos* Mtn. at 10-11 (citing *Hollinger v. Shoppers Paradise of New Jersey, Inc*., 340 A.2d 687, 692 (N.J. Super. Ct. Law Div. 1975)). Again, at this early pleading stage, the Complaint sufficiently alleges how the VPBPs caused injury to Plaintiff consumers and thus, adequately pleads breach of implied warranty claims. The Complaint alleges: Defendants are merchants, and the VPBPs are goods, within the meaning of the applicable states' commercial codes (¶¶ 70-71); implied in the sale of the VPBPs was an implied warranty that the VPBPs are of merchantable quality and are safe and fit for use by young children (¶ 72); the VPBPs are inherently dangerous and defective in that they contain lead (¶ 73); notice (¶¶ 75-76); and as a direct and proximate result

of the breach of warranties, Plaintiffs and the members of the Class suffered damages. ¶ 77; *see also* ¶¶ 68-76.

**D. Plaintiffs' Negligence Claim (Count III) Properly Alleges a Compensable Tort Injury.**

RC2 mistakenly argues that Plaintiffs' negligence fails because they did not allege a compensable tort injury caused by RC2's conduct. RC2 *Ramos* Mtn. at 11-12; RC2 *Smith* Mtn. at 10-11. As discussed *supra*, Plaintiffs have indeed alleged a compensable injury. Moreover, contrary to RC2's bald assertions, the Complaint alleges all of the requisite elements of a negligence claim. *See* ¶¶ 78-84. As alleged in the Complaint, RC2 owed and breached a number of duties in connection with its design, manufacture, sale and/or distribution of the VPBPs into the stream of commerce, including:

- Failing to design and manufacture products so as to avoid aforementioned risks to children;
- Failing to accompany their products with proper warnings regarding all possible adverse effects associated with being exposed to, the relevant products;
- Failing to conduct adequate testing and post-marketing surveillance to determine the safety of the relevant products;
- Failing to warn Plaintiffs and members of the class prior to actively encouraging the sale of the VPBPs either directly or indirectly, orally or in writing, about the following: (1) the possibility that young children exposed to the VPBPs could suffer adverse health effects as described herein, and/or (2) the possibility of affected children requiring hospitalization and/or continuous medical monitoring as a result of exposure to the VPBPs.

¶ 81, *see also* ¶¶ 79-80.

In addition, Plaintiffs have alleged that they have suffered damages as the foreseeable result of Defendants' breaches, noting that Defendants, including RC2, "knew or should have known that the VPBPs could cause unreasonable, adverse health effects to children," and RC2 knew or should have known that consumers such as Plaintiffs and the Class would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care. ¶¶ 82-83. Indeed, Plaintiffs' damages were foreseeable where Defendants, including RC2, continued to market the relevant products to consumers including Plaintiffs despite the fact that these products could be

produced without lead. ¶¶ 82-83. Similarly, the Complaint alleges that "Defendants' negligence was a proximate cause of Plaintiffs' and the Class' economic damages, as well as their children's increased risk of harm." ¶ 84; *see also* ¶ 66.

Thus, despite the fact that the Plaintiffs have sufficiently pled a cause of action for negligence, RC2 again asserts that Plaintiffs have failed to allege that they purchased a Natural Transitions breast pump. RC2 *Ramos* Mtn. at 11-12; RC2 *Smith* Mtn. at 10-11. Again, as discussed *supra*, Plaintiffs have indeed alleged that they purchased Defendants', including RC2's, VPBPs and Plaintiffs' Amended Consolidated Complaint further specifies the VPBPs Plaintiffs purchased. Accordingly, this Court should deny RC2's Motions to Dismiss the Plaintiffs' negligence claims.

**E. Plaintiffs' Unjust Enrichment Claims (Count IV) Properly Allege that RC2 Received a Benefit That It Unjustly Retained.**

Finally, RC2 erroneously argues, without citing any caselaw, that Plaintiffs' unjust enrichment claim fails by not alleging that they have conferred any benefit on RC2. RC2 *Ramos* Mtn. at 12; RC2 *Smith* Mtn. at 11. In support of that argument, RC2 again complains that "none of the Plaintiffs allege that they purchased a product from RC2, thereby conferring a benefit on RC2." RC2 *Ramos* Mtn. at 12; *see also* RC2 *Smith* Mtn. at 11. To establish unjust enrichment, Plaintiffs must show that Defendants have unjustly retained a benefit to Plaintiffs' detriment and that Defendants' retention of that benefit violates fundamental principles of justice, equity, and good conscience. *See Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*, No. 02 C 8800, 2005 U.S. Dist. LEXIS 28988, at *48-49 (N.D. Ill. Apr. 6, 2005); *HPI Health Care Servs., Inc. v. Mount Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160 (1989).

Defendants, including RC2, sold Plaintiffs VPBPs containing lead. *See*, *e.g.*, ¶¶ 1-3, 45-46. As a result, Defendants, including RC2, have received a benefit from Plaintiffs and other members of the Class in the form of monies Defendants received from Plaintiffs' and other members of the Class' purchases of their VPBPs. ¶¶ 85-89. If Defendants agree to refund the purchase price of the VPBPs in question, then Defendants will no longer be retaining the benefit

of these transactions. A claim for unjust enrichment is proper until Defendants return to Plaintiffs that to which Plaintiffs are entitled – which here would be the full purchase price of the VPBPs. Thus, Plaintiffs' unjust enrichment claims should not be dismissed.

## V. CONCLUSION

WHEREFORE, Plaintiffs respectfully request that this Court deny RC2's and Learning Curve Brands' Motions to Dismiss, and grant such other and further relief as this Court deems appropriate.[5]

Dated: July 29, 2008

**WOLF, HALDENSTEIN, ADLER, FREEMAN & HERZ, LLC**

By: /s/ Mary Jane Fait

Mary Jane Fait
Theodore B. Bell
John E. Tangren
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603
Tel: (312) 984-0000

*Attorneys for Plaintiffs Grisselle Ramos, Dina Scalia, Jennifer Suarez, and Marissa Lopez*

Elizabeth A. Fegan
Timothy P. Mahoney
Daniel J. Kurowski
HAGENS BERMAN SOBOL SHAPIRO LLP
820 North Blvd., Suite B
Oak Park, Illinois 60301
Tel: (708) 776-5600

*Attorneys for Plaintiff Jessica Smith*

[5] In the alternative, should the Court hold that Plaintiffs' claims are deficient in some way, Plaintiffs request leave to amend be granted pursuant to Fed. R. Civ. P. 15(a).

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| GRISSELLE RAMOS, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PLAYTEX PRODUCTS, INC., RC2 CORPORATION, LEARNING CURVE BRANDS, INC., and PLAYTEX, INC.,<br><br>Defendants. | Case No. 08-CV-2703<br><br>Judge Lefkow<br><br>Magistrate Judge Schenkier |
| DINA SCALIA, *et al.*, on behalf of themselves and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PLAYTEX PRODUCTS, INC., RC2 CORPORATION, LEARNING CURVE BRANDS, INC., and PLAYTEX, INC.,<br><br>Defendants. | Case No. 08-CV-2828<br><br>Judge Lefkow<br><br>Magistrate Judge Ashman |
| JESSICA SMITH, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PLAYTEX PRODUCTS, INC., RC2 CORPORATION, LEARNING CURVE BRANDS, INC., and PLAYTEX, INC.,<br><br>Defendants. | Case No. 08-CV-3352<br><br>Judge Lefkow<br><br>Magistrate Judge Brown |

**NOTICE OF FILING**

**TO: See Attached Certificate of Service**

**PLEASE TAKE NOTICE** that on July 29, 2008, we filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, Illinois 60604, ***Plaintiffs' Response in Opposition to Defendants RC2 Corporation and Learning Curve Brands, Inc.'s Motions To Dismiss Plaintiffs' Class Action Complaints***, a copy of which is attached and hereby served upon you.

Dated: July 29, 2008

Respectfully submitted,

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**

__/s/ Mary Jane Fait________
Mary Jane Fait
Theodore B. Bell
John Tangren
55 W. Monroe Street, Suite 1111
Chicago, IL 60603
Tel: (312) 984-0000
Fax: (312) 984-0001

***Counsel for Plaintiffs***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of July, 2008 copies of ***Plaintiffs' Response in Opposition to Defendants RC2 Corporation and Learning Curve Brands, Inc.'s Motions To Dismiss Plaintiffs' Class Action Complaints,*** was served by causing a true and correct copy of same to be delivered to defense counsel listed below via the Court's ECF system and by electronic transmission from the offices of Wolf Haldenstein Adler Freeman & Herz LLC.

Bart T. Murphy
Thomas J. Hayes
**ICE MILLER LLP**
2300 Cabot Drive, Suite 455
Lisle, IL 60532
bart.murphy@icemiller.com
thomas.hayes@icemiller.com
*Counsel for Defendants RC2 Corporation and Learning Curve Brands, Inc.*

Andrew Rothschild
Richard Walsh, Jr.
**LEWIS, RICE & FINGERSH, L.C.**
500 North Broadway, Suite 2000
St. Louis, Missouri 63102
arothschild@lewisrice.com
rwalsh@lewisrice.com
*Counsel for Defendant Playtex Products, Inc.*

Susan M. Benton
Alexis T. MacDowall
Kevin A. Banasik
Charles W. Kierpiec
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601
sbenton@winston.com
amacdowall@winston.com
kbanasik@winston.com
ckierpiec@winston.com
*Counsel for Defendant Medela, Inc.*

Robert E. Browne
Dexter G. Benoit
**NEAL GERBER & EISENBERG LLP**
Two N. LaSalle Street, Suite 2200
Chicago, Illinois 60602
Rbrowne@ngelaw.com
dbenoit@ngelaw.com
*Counsel for Defendant Playtex Products, Inc.*

Dated: July 29, 2008

Respectfully submitted,

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**

/s/ Mary Jane Fait
Mary Jane Fait
Theodore B. Bell
John Tangren
55 W. Monroe Street, Suite 1111
Chicago, IL 60603
Tel: (312) 984-0000

***Counsel for Plaintiffs***