IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GRISSELLE RAMOS, on behalf of herself and all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>PLAYTEX PRODUCTS, INC., RC2 CORPORATION, LEARNING CURVE BRANDS, INC., and MEDELA, INC., )<br><br>Defendants. ) | No. 08 CV 2703<br><br>Judge Lefkow<br><br>Magistrate Judge Schenkier |
| DINA SCALIA, JENNIFER SUAREZ and MARISSA LOPEZ, on behalf of herself and all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>PLAYTEX PRODUCTS, INC., RC2 CORPORATION, LEARNING CURVE BRANDS, INC., and MEDELA, INC., )<br><br>Defendants. ) | No. 08 CV 2828<br><br>Judge Lefkow<br><br>Magistrate Judge Schenkier |
| JESSICA SMITH, on behalf of herself and all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>PLAYTEX PRODUCTS, INC., RC2 CORPORATION, LEARNING CURVE BRANDS, INC., and MEDELA, INC., )<br><br>Defendants. ) | No. 08 CV 3352<br><br>Judge Lefkow<br><br>Magistrate Judge Schenkier |

## RC2 CORPORATION AND LEARNING CURVE BRANDS, INC.'S REPLY IN SUPPORT OF THEIR MOTIONS TO DISMISS PLAINTIFFS' COMPLAINTS

Defendants, RC2 Corporation and Learning Curve Brands, Inc. (collectively "RC2")[1] filed Motions to Dismiss the three identical Complaints[2] consolidated in this action.  The Motions (hereinafter "Motion" or "Motion to Dismiss") focused on two omissions that rendered all of the claims against Defendant deficient:  (1) no named Plaintiff alleged that she purchased, owned, or even used the First Years "Natural Transitions" breast pump carrying case ("Natural Transitions Carrying Case") or any other RC2 product; and (2) Plaintiffs' failure to sufficiently allege any injury caused by the alleged defect.  As explained in the Motion to Dismiss, failure to prove either of these elements is a sufficient basis for dismissal of all claims.

Despite the narrow focus of RC2's Motion to Dismiss, Plaintiffs fail to fully address either of these issues.[3]  Rather, Plaintiffs' seek to obscure the fundamental flaws in their Complaints by rebutting arguments and defenses in their Response that RC2 did not raise in its Motion to Dismiss.[4]  RC2 recognizes that there are a host of problems with Plaintiffs' claims and

---

[1] RC2 Corporation has not yet been served in *Jessica Smith v. Playtex Products, Inc., RC2 Corporation, Learning Curve Brands, Inc. and Medela, Inc.*, No. 08 CV 3352, (the "*Smith*" action).  Because the *Smith* Complaint raises the same issues as the other two Complaints and Plaintiffs filed a single joint response, in the interest of efficiency, RC2 Corporation and Learning Curve Brands, Inc. have filed a single joint reply.  However, RC2 Corporation does not waive proper service in the *Smith* action.

[2] References to "Complaint" or "Compl. ¶ __" are to the Class Action Complaint filed by Grisselle Ramos in Case No. 08 CV 2703.  The only difference between the three complaints are the paragraphs identifying the named plaintiffs.

[3] As discussed more fully below, Plaintiffs have now alleged proposed Consolidated Amended Class Action Complaint (the "Amended Complaint") that two of the named Plaintiffs purchased a Natural Transitions Carrying Case; thereby addressing the first issue with respect to two of the five named Plaintiffs.

[4] For example, Plaintiffs presented argument regarding the reliance element of their consumer fraud claim and notice requirements for breach of implied warranty claims.  RC2 agrees with the Plaintiffs that these issues raise questions which need to be addressed; however, RC2 intends to address these issues, as well as many others, if necessary, through other dispositive motions.

that there are a number of issues and defenses that RC2 could have raised in its Motion to Dismiss with respect to Plaintiffs' various claims. However, RC2 has focused on the threshold issues that render Plaintiffs' Complaints deficient and require dismissal.

I.    **Plaintiffs Claims Must Be Dismissed Because They Have Failed To Allege Any Injury Caused By The Alleged Defect And Thus Have Not Pled A Plausible Basis For Relief**

A threshold requirement of all of the claims brought by Plaintiffs is that the alleged defect (lead) either caused an injury to Plaintiffs or renders the product unfit for its intended use. In either scenario, Plaintiffs must prove, at a bare minimum, that the alleged lead in the product has the ability to harm them. Plaintiffs attempt to address these threshold issues by focusing on the dangers of lead if it is ingested and absorbed. However, Plaintiffs fail to allege any facts, much less a plausible basis, from which the Court may infer that any lead allegedly contained in RC2's Natural Transitions Carrying Case was ingested by Plaintiffs' children or even put them at risk of lead poisoning. In fact, in their response to Defendant Medela, Inc.'s Motion for Entry of a Case Management Order Pursuant to Rule 16(c)(12) (Docket No. 83) ("Response to CMO"), Plaintiffs go to great lengths to demonstrate to this Court that they have not alleged exposure to lead as part of their claims. (Response to CMO, pp. 4-5.) Despite the statements made in the Response to Case Management Order, Plaintiffs still rely upon alleged adverse health effects and exposure to lead by young children as the basis for their claims.

As support for these arguments, Plaintiffs make generalized allegations against all Defendants and unsupported inferences to try to create the impression that they might be entitled to relief. For example, Plaintiffs label RC2's Natural Transitions Carrying Case as a "vinyl plastic baby product" and a children's product, in an attempt to argue that any lead in the product,

regardless of its location or form, is unacceptable and a potential hazard.[5]  However, it is evident from the face of the Complaint that these labels are misnomers.  The Natural Transitions Carrying Case is not a children's toy nor is it intended for use by children.  It is intended to carry a breast pump.  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted).  Plaintiffs inappropriate labeling and mischaracterization of RC2's product cannot create grounds entitling Plaintiffs to relief where the underlying facts belie those labels and reveal there is no basis for relief.

Another example of Plaintiffs' repeated attempts to treat the Defendants, which are separate and independent companies that have different products at issue, as a single entity is Plaintiffs' allegation that the Defendants' products were "intended to hold milk to be ingested by newborns."  (Compl. ¶ 2.)  The RC2 product at issue is a carrying case for a breast pump, it was not designed to store breast milk.  Even if this assertion were true, however, it does not create a plausible inference of exposure.  Plaintiffs do not even attempt to speculate how the milk, which would be in a bottle or some other appropriate container and would never have direct contact with the carrying case, could become contaminated with lead.  The Court is required to accept only reasonable inferences from the facts alleged, it need not suspend common sense and accept unreasonable inferences.

Plaintiffs also argue in their response that RC2 is "cherry-picking" the law to fit its arguments, claiming that with respect to their consumer fraud claim, RC2 "discount[ed] relevant case law . . . [and] merely cite[d] some California law by way of example."  (Pl. Resp. at 8-9.)

---

[5]  Although lead regulations limit lead content in children products, other household products used by children, such as computer monitors, contain lead.

To the contrary, RC2 cited law from each potentially relevant jurisdiction, namely the home states of each named plaintiff and the forum state. Further, RC2's citation to California law is particularly appropriate in light of Plaintiffs' proposed Amended Complaint, which indicates that only two of the named plaintiffs purchased RC2's product, and one of them is a resident of California. Thus, the only law potentially relevant to RC2's motion to dismiss is the law of California, Massachusetts (the other plaintiff's state of residence), and Illinois (the forum state).[6]

In the end, Plaintiffs' Response to the Motion to Dismiss has done little to address the fundamental issue of causation. The Response includes general allegations of exposure to lead by young children, without any attempt to explain how such exposure could have occurred in this case with respect to these products and materials. In fact, the allegations heavily relied upon by the Plaintiffs are substantially similar, and in many cases identical, to allegations filed from the Complaint filed by these same lawyers against RC2 in *In Re Thomas Wooden Railway Toys Litigation*, No. 07 C 3514 (N.D. Ill.) (Docket Nos. 31 and 65), a significantly different case involving the lead content of paint used on wooden toys.[7] As such, these Complaints are replete with general assertions and boilerplate allegations regarding lead and its potential effects when

---

[6] Plaintiffs attempt to distinguish *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798 (Cal. App. 2007) because, in that case, the plaintiff admitted that she suspected the defendant's advertising was false and misleading when she purchased the product. However, RC2 cited *Buckland* for the basic proposition that failure to plead the statutory requirements of a consumer fraud claim under the California Consumer Legal Remedies Act (the "CLRA") requires dismissal of the claim. Regardless of why the plaintiff in *Buckland* failed to meet this burden, the principle itself still applies to the Plaintiffs in this case. *See, e.g., Wahl v. American Security Insurance Co.*, No. C08-00555 RS, 2008 U.S. Dist. LEXIS 51033, *11-12 (N.D. Ill. June 16, 2008) (dismissing claim because plaintiff "has not alleged facts sufficient to state a claim within the CLRA" where plaintiff did not allege facts showing she was a "consumer" as defined by the CLRA).

[7] The Hagens Berman Sobol Shapiro LLP law firm, which filed the *Smith* Complaint, also filed several of the class actions in the *In Re Thomas Wooden Railway Toys Litigation*.

ingested, but are barren of any allegations regarding how these particular plaintiffs were or could be allegedly exposed to lead.

On top of these material omissions, Plaintiffs have failed to provide in their Complaints, Amended Complaint, or Response to Motion to Dismiss any information whatsoever regarding the lead allegedly in the Natural Transitions Carry Case.  Instead, the sole basis for their allegations is nothing more than a press release by a private consumer group.  Specifically, there is not one single allegation providing any specific information on the alleged lead in the Natural Transitions Carrying Case, such as the location, amount, and whether it would even be accessible such that exposure is even possible.  As stated in RC2's Motion to Dismiss, without such basic information; Plaintiffs simply cannot state a claim for relief.

Plaintiffs' contention that additional facts will be available to the defendants via discovery does not cure the deficiencies in their pleadings.  The Supreme Court has said that "[i]t is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through 'careful case management.'"  *Twombly,* 127 S. Ct. at 1967 (citations omitted).  The practical significance of the Rule 8 plausible entitlement requirement is that "something beyond the mere possibility of loss causation must be alleged, lest a plaintiff with 'a largely groundless claim' be allowed to 'take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.'" *Id.* at 1966 (citations omitted).   Rule 8 requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.  As in *Twombly,* "[b]ecause the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.*

**II.    Plaintiffs' Unfair and Deceptive Acts and Practices Claims Have Not Been Plead With Particularity As Required By Fed. R. Civ. P. 9(b) And Therefore Should Be Dismissed For Failure To State A Claim Under Fed. R. Civ. P. 12(b)(6).**

Contrary to Plaintiffs' argument raised in their Response to the Motion to Dismiss, Rule 9(b)'s application is not artificially limited to a hypothetical laundry-list of types of fraud enumerated in the Rule.[8]  (Pl. Resp. at 11.)  "Rule 9(b) applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiff's factual allegations.  A claim that 'sounds in fraud' – in other words, one that is premised upon a course of fraudulent conduct – can implicate Rule 9(b)'s heightened pleading requirements."  *Borellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (citation omitted).  Allegations of deceptive acts and practices supporting a claim for consumer fraud "must be plead with the same particularity and specificity as that required under common law fraud."  *Strohmaier v. Yemm Chevrolet*, 211 F. Supp. 2d 1036, 1043 (N.D. Ill. 2001) (quoting *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996)); *see also Tillman v. U.S. Energy Savings Corp.*, No. 08 C 1641, 2008 U.S. Dist. LEXIS  53313, *8 (N.D. Ill. July 14, 2008) (stating that, regardless of which state's statute is at issue, plaintiff's consumer fraud claim must be pleaded with specificity).

Where a state's consumer fraud statute includes recovery for unfair business practices in addition to deceptive acts, the courts examine each challenged claim to determine "the nature of the claim and the applicable pleading requirement."  *Strohmaier*, 211 F. Supp. 2d at 1043. In *Strohmaier*, plaintiffs alleged, among other things, that the car they purchased from the

---

[8] Plaintiffs' reliance on *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002), is misplaced.  In *Swierkiewicz*, the Supreme Court said "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions. Rule 9(b), for example, provides for greater particularity in all averments of fraud or mistake." The Court, noting that Rule 9(b) does not mention employment discrimination, held that claims of employment discrimination are not subject to heightened pleading requirements.  The Court did not, however, limit the types of fraud to which Rule 9(b) applies.

defendant had been in a prior accident and that defendant's failure to disclose that accident was an unfair practice under the Illinois consumer fraud act. The Court determined that plaintiffs were "alleging a deceptive act that sounds in fraud," and that the Rule 9(b) pleading burden therefore applied. Similarly in this case, Plaintiffs allege that they were "deceived because Defendants could not have represented that the VPBP's were safe had they truthfully disclosed that that the products contained lead." (Compl. ¶ 8.) Plaintiffs have thus alleged a deceptive act that sounds in fraud, and the Rule 9(b) pleading standard applies.

As discussed more fully in RC2's Memorandum in Support of Motion to Dismiss, Plaintiffs have utterly failed to meet this burden. Plaintiffs' Complaints do not adequately plead any of the well-established requirements for fraud, *i.e.* the specific representation relied upon, the identity of the person making the representation, the time, place and content of the misrepresentation, and the method by which it was communicated to the plaintiff. *See Tillman*, 2008 U.S. Dist. LEXIS 53313 at *8-9. Even assuming that the Plaintiffs' Amended Complaint is filed and Plaintiffs' most startling deficiency, the failure to identify which Plaintiff(s) allegedly purchased RC2's product, is corrected, Plaintiffs have failed to plead any of the required facts for those plaintiffs. At this point in the proceedings, *i.e.,* pre-class certification, Dina Scalia and Marissa Lopez are the only plaintiffs who have alleged that they have purchased a Natural Transitions Carrying Case, and "to survive a motion to dismiss and proceed forward, [each] must plead fraud with respect to herself and with specificity." *Id*. at *10. Plaintiffs merely make general allegations regarding RC's marketing and statements on RC2's website, neither plaintiff alleges that she actual visited the website and read the statements prior to purchasing the breast pump or any other specifics related to the alleged fraud. Like the plaintiff in *Tillman*, the Plaintiffs make only "general statements about what [unspecified] people were purportedly told,

at unspecified times, at unspecified places, by unspecified people.  This is not enough to support a fraud claim brought by" these plaintiffs.  *Id.*   For this reason, Plaintiffs' Unfair and Deceptive Acts and Practices Claims, Count One, must be dismissed.

### III.    Plaintiffs Ramos, Suarez And Smith Lack Standing To Bring Suit Against RC2, And Thus, Their Claims Must Be Dismissed As To RC2.

RC2's argument as to standing was similarly straightforward—if a Plaintiff had never purchased, owned or used a Natural Transition Carrying Case, then she could not demonstrate an injury in fact which could be fairly traced to the product.[9]   As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing the requisite elements of standing.  *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003) (citing cases).[10]   To demonstrate standing, a plaintiff must show:

> (i) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical; (ii) a causal relationship between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged conduct; and (iii) a likelihood that the injury will be redressed by a favorable decision.

---

[9] In the interests of judicial efficiency, rather than duplicating and re-arguing the standing arguments well-stated by Playtex Products, Inc. in its "Brief In Support Of Defendant Playtex Products, Inc.'s Motion To Dismiss Plaintiffs' Complaints For Lack Of Standing Or, In The Alternative, For More Definite Statement" (Docket No. 63), RC2 adopts and incorporates those arguments herein.

[10] Plaintiffs mischaracterize RC2's argument with regard to whether Plaintiffs have standing to assert breach of implied warranty claims against RC2.  Plaintiffs only assert breach of implied warranty claims on behalf of residents of certain states.  To the extent that named plaintiffs who are not residents of those states purport to assert claims for breach of implied warranty, those claims should be dismissed.  Plaintiffs apparently concede this point as they correct this error in their proposed Amended Complaint, specifying that only Plaintiffs Ramos and Scalia are asserting breach of implied warranty claims.  Because, of these two, only Scalia alleges in the Amended Complaint that she purchased a Natural Transitions Carrying Case, only Scalia arguably has standing to assert a breach of warranty claim against RC2, and Ramos' claim should also be dismissed.

*Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). When a party moves to dismiss for lack of standing pursuant to Federal Rule 12(b)(1), as RC2 is doing here, the Court "must accept as true all material allegations of the complaint" and draw "all reasonable inferences therefrom in the plaintiff's favor." *Id.* at 468 (citing *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996)).

At issue here are the first and second elements of standing – whether Plaintiffs have suffered an injury in fact and whether Plaintiffs' alleged "injury" can be fairly traced to RC2's conduct. Recognizing that their original Complaints were completely deficient as to standing (Plaintiffs alleged only that they purchased "one or more" of three products manufactured by the three Defendants in this case, which made it impossible to establish a causal connection between the alleged injury and *any* of the Defendants), Plaintiffs have moved to amend their Complaints to specify which product each individual Plaintiff purchased from which Defendant. (*See* Am. Compl. ¶¶ 9-13.) According to the proposed Amended Complaint, Plaintiffs Scalia and Lopez each purchased a Natural Transitions Carrying Case. (*See id.* ¶¶ 10, 12.)

However, the Amended Complaint makes it clear that neither Plaintiffs Ramos, Suarez, nor Smith purchased a Natural Transitions Carrying Case or any other product allegedly manufactured or sold by RC2. (Am. Compl. ¶ 9, 11.) Thus, they have not been "injured" by purchasing a Natural Transitions Carrying Case and none of their alleged injuries "can be fairly traced to the challenged action" of RC2. *See Lee,* 330 F.3d at 468. As such, Plaintiffs Ramos, Suarez, and Smith have failed to establish that they have standing to bring suit against RC2 and therefore, pursuant to Federal Rule 12(b)(1), the claims of Plaintiffs Ramos, Suarez, and Smith should be dismissed in their entirety as to RC2.

**Conclusion**

For the reasons set forth above and in Defendants' Memorandum in Support of their Motion to Dismiss, RC2 hereby asks this Court to dismiss in their entirety all claims against RC2.

Respectfully submitted,

RC2 CORPORATION and
LEARNING CURVE BRANDS, INC.


s/ Bart T. Murphy
By one of their attorneys

Bart T. Murphy
Ice Miller LLP
2300 Cabot Dr., Ste. 455
Lisle, IL 60532
630-955-6392

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned, an attorney, states that on August 12, 2008 he caused the foregoing to be filed with the Clerk of the United States District Court for the Northern District of Illinois and a copy of which will be served on the counsel listed below by the Clerk's ECF/CM system:

*Attorneys for Plaintiffs Grisselle Ramos and Dina Scalia, et al.*
　　　Mary Jane Fait (fait@whafh.com)
　　　Theodore B. Bell (tbell@whafh.com)

*Attorneys for Defendant Playtex Products, Inc.*
　　　Andrew Rothschild (arothschild@lewisrice.com)
　　　Richard B. Walsh, Jr. (rwalsh@lewisrice.com)
　　　Dexter G. Benoit (dbenoit@ngelaw.com)
　　　Robert E. Browne (rbrowne@ngelaw.com)

*Attorneys for Defendant Medela, Inc.*
　　　Susan M. Benton (sbenton@winston.com)
　　　Alexis MacDowall (amacdowall@winston.com)
　　　Charles W. Kierpiec (ckierpiec@winston.com)
　　　Kevin A. Banasik (kbanasik@winston.com)

*Attorneys for Plaintiff Jessica Smith*
　　　Elizabeth A. Fegan (beth@hbsslaw.com)
　　　Daniel J. Kurowski (dank@hbsslaw.com)
　　　Timothy P. Mahoney (timm@hbsslaw.com)

s/ Bart T. Murphy
Bart T. Murphy
Ice Miller LLP
2300 Cabot Dr., Ste,. 455
Lisle, IL 60532
(630) 955-6392

I/2196785.1

12

# EXHIBIT 1

# UNPUBLISHED OPINIONS CITED IN BRIEF

**MICHELLE T. WAHL, Plaintiff, v. AMERICAN SECURITY INSURANCE COMPANY, Defendant.**

**NO. C 08-00555 RS**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

*2008 U.S. Dist. LEXIS 51033*

**June 16, 2008, Decided**
**June 16, 2008, Filed**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff borrower filed suit against defendant insurance company, challenging the company's practices with respect to the so called "forced placed insurance" property insurance policies that the company sold. The borrower sought a refund of all the premiums charged under a forced placed policy that the borrower's lender obtained from the company. The company filed a motion to dismiss under *Fed. R. Civ. P. 12(b)(6)*.

**OVERVIEW:** After the borrower's insurer cancelled her insurance, the company placed a policy on the borrower's home, listing the lender as the primary insured and the borrower as an "additional insured." The borrower alleged that, although her own insurance policy had been cancelled for non-payment, her lender was still protected under a provision of that policy such that the company's policy was unnecessary. The court found that the borrower alleged sufficient facts to give rise to standing at the pleading stage because whether the lender rather than the borrower paid the premiums was a factual question. For example, one exhibit indicated that the premiums were to be paid from an "escrow" account, and money held in escrow was the borrower's money. Dismissal was not appropriate as to claims other than a claim brought under the California Consumer Legal Remedies Act (CLRA) because the company did not show that the legal result of the interaction between the policies at issue could be determined at the current stage of the proceedings. The CLRA claim failed, as the transaction did not fall within the definitions of the CLRA, including the definition of "consumer" under *Cal. Civ. Code § 1761(d)*.

**OUTCOME:** The court denied the company's motion to dismiss except as to the borrower's claim under the CLRA. The court dismissed the CLRA claim. The court granted the borrower leave to amend the CLRA within 20 days of the court's order.

**COUNSEL:** [*1] For Michelle T Wahl, on behalf of herself and all others similarly situated, Plaintiff: James Pietz, LEAD ATTORNEY, PRO HAC VICE, Pietz Law Office, Pittsburgh, PA; Joseph N. Kravec, Jr., LEAD ATTORNEY, Specter Specter Evans & Manogue, P.C., Pittsburgh, PA; Stephen Francis Yunker, LEAD ATTORNEY, Yunker & Schneider, San Diego, CA.

For American Security Insurance Company, Defendant: Anna S. McLean, LEAD ATTORNEY, Heller Ehrman LLP, San Francisco, CA; Dawn B. Williams, Frank G. Burt, LEAD ATTORNEYS, Jorden Burt LLP, Washington DC; Denise A. Fee, LEAD ATTORNEY, PRO HAC VICE, Jorden Burt LLP, Washington DC; Peter S. Hecker, LEAD ATTORNEY, Heller Ehrman White & McAuliffe LLP, San Francisco, CA.

**JUDGES:** RICHARD SEEBORG, United States Magistrate Judge.

**OPINION BY:** RICHARD SEEBORG

**OPINION**

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

I. INTRODUCTION

In this putative class action, named plaintiff Michele T. Wahl complains of the practices of defendant American Security Insurance Company with respect to so-called "forced placed insurance" property insurance policies it sells. Forced placed insurance policies are those ordered by lenders to insure mortgaged residential properties when borrowers fail to obtain or [*2] maintain coverage as required by the terms of their loans. Wahl's basic theory is that although her own insurance policy

had been cancelled for non-payment, her lender was still protected under a provision of that policy, and therefore the policy her lender obtained from ASIC was unnecessary and should be deemed cancelled from the moment of its inception. As a result, Wahl contends, ASIC should refund all the premiums it charged on the policy, which were paid through an escrow account. Because the parties' respective legal arguments are not subject to resolution at the pleading stage, the motion to dismiss will be denied, with the exception of one claim for relief that the Court concludes is not tenable on the facts as alleged.

## II. BACKGROUND

Wahl alleges that all "typical home mortgages" in California [1] require the borrower to obtain property insurance sufficient to protect the lender's interest, including an endorsement with a "'standard mortgage clause' as stated on Form 438 BFU or its equivalent." First Amended Complaint, ("FAC")P 9. That endorsement, the parties agree, is commonly known as the "Lender's Loss Payable Endorsement" ("LLPE") and Wahl alleges it has existed in substantially [*3] the same form since 1942. *Id.*

> 1 Wahl appears to recognize that under typical California practice, borrowers and lenders utilize the device of a deed of trust, rather than a true mortgage. For convenience, the term "mortgage" will be used herein in the colloquial sense it carries in California.

In essence, an LLPE serves to ensure that if a homeowner's insurance policy is cancelled for failure to pay premiums, the *lender's* interest in the property will continue to be insured for a period of time, to permit the lender either to make the premium payments itself, or to arrange for alternate coverage. Thus, for a specified period after cancellation for non-payment, the lender is entitled to indemnification for any loss, even though the homeowner would have no claim against the insurer.

Wahl's claims in this action all arise from her basic contention that when ASIC issues a "forced placed" policy upon the cancellation of a homeowner's policy, but *before* the lender's protections under an LLPE have expired, the ASIC policy "overlaps" the prior coverage and therefore "provides no actual coverage." FAC, P 1. In Wahl's particular case, she "fell behind" on her insurance premium payments in January [*4] of 2006. FAC, P 16. Her insurer, part of the Farmers Insurance Group, notified her that her policy would be cancelled as of the end of that month, unless the premium was paid. *Id.* Wahl did not make the payment, and the policy was cancelled. *Id.*

Wahl's lender, EMC Mortgage Company, notified her that it had purchased a temporary 60-day "binder" of

insurance from ASIC, and that she would be charged for that expense. Wahl's complaint alleges that although the notice was given on EMC letterhead, it actually was prepared by ASIC, under an agency relationship between the two entities. Subsequently, ASIC placed an actual insurance policy on Wahl's home, listing EMC as the primary insured, with Wahl named as an "additional insured." That policy remained in effect for approximately a year and a half, until Wahl replaced it with another policy from Farmers. The parties' disputes as to the dates on which EMC actually obtained the 60 day binder are discussed further below.

## III. STANDARDS

A motion to dismiss under *Federal Rule of Civil Procedure 12(b)(6)* tests the legal sufficiency of the claims alleged in the complaint. See *Parks Sch. of Business v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995)*. Dismissal [*5] under *FRCP 12(b)(6)* may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990)*. Hence, the issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Development Corp., 108 F.3d 246, 249 (9th Cir. 1997)*. When evaluating such a motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Cahill V. Liberty Mut. Ins. Co., 80 F.3d 336, 338 (9th Cir. 1996)*. "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Washington Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1996)*.

## IV. DISCUSSION

### A. Standing

At the outset, ASIC challenges Wahl's standing to pursue any of the claims she has alleged, arguing that she is not a party to the insurance agreement between ASIC and EMC. Wahl insists that under *Royal Surplus Lines, Ins. Co. v. Ranger Ins. Co., 100 Cal.App.4th 193, 122 Cal. Rptr. 2d 459 (2002)*, [*6] her status as an "additional insured" on the policy gives her standing. In *Royal Surplus,* an "additional insured" was permitted to sue an insurer that failed to provide the plaintiff a defense in certain underlying litigation. *See Royal Surplus, 100 Cal.App 4th at 200* ("An additional insured has standing to sue an insurer for breach of contract.")

ASIC, however, argues that this case is governed not by *Royal Surplus,* but instead by *Hatchwell v. Blue*

*Shield of California, 198 Cal.App.3d 1027, 244 Cal. Rptr. 249 (1988).* *Hatchwell* upheld the dismissal of a plaintiff-spouse (the wife) in an action challenging the denial of health insurance benefits to the other spouse (the husband), who was the named beneficiary of the policy. The court held that the wife's status as a "co-insured" or "dependent beneficiary" did not make her a "contracting party" with standing to sue for breach of contract based on the denial of benefits to her husband. *See Hatchwell, 198 Cal .App.3d at 1034.*

Neither *Royal Surplus nor Hatchwell* is precisely on point here. Unlike the *Royal Surplus* plaintiff, Wahl is not suing to enforce her right to benefits under the policy. Unlike the wife in *Hatchwell,* however, Wahl also is not suing to enforce the [*7] the contracting party's right to benefits under the policy.

At the pleading stage, Wahl has alleged sufficient facts to give rise to standing. As much as ASIC wishes to characterize its policy as a contract only between itself and EMC, entered into and paid for by EMC, the allegations, presumed true for purposes of this motion, are otherwise. In particular, even though there is no dispute that EMC arranged for the ASIC binder and policy to be placed, ASIC's contention that EMC rather than Wahl paid the premiums presents a factual question. Exhibit C to the FAC, for example, indicates that the premiums were to be paid from an "escrow" account. Money held in "escrow" by EMC by definition was *not* EMC's money-it was Wahl's money.

Additionally, the ASIC binder and subsequent policy provided insurance in the amount of $ 603,000. EMC's insurable interest in the property was only the amount owed under the deed of trust-$ 465,000. Thus, $ 138,000 of the policy limits could only have inured to the benefit of Wahl, not EMC. Thus, as alleged, the ASIC policy was paid for by Wahl and provided certain benefits directly to Wahl alone. Under these circumstances, the Court cannot conclude at the pleading [*8] stage that Wahl lacks standing. [2]

> 2    It may be the facts ultimately will support standing on some theories and claims but not others, and that some of the specific duties ASIC is alleged in the complaint to have breached ran only to EMC. Such matters cannot be parsed out at this juncture.

### B. Failure to state a claim

ASIC argues that even if Wahl has standing, she fails to state a cognizable claim. ASIC's arguments, however, all turn on how it believes certain clauses in Wahl's original Farmers' insurance policy and ASIC's subsequent policy should be construed and applied. Put simply, ASIC argues that the LLPE clause in Wahl's original policy permitted EMC to cut off/waive, any coverage under that policy, by choosing to procure acceptable substitute insurance elsewhere. ASIC contends that its binder and subsequent policy constituted such substitute insurance, and that coverage under the LLPE terminated with no period of overlapping coverage. [3]

> 3    ASIC argues in the alternative that if both policies were simultaneously in effect for any time period, the law would require pro rata apportionment of any benefits payable under the two policies. Thus, ASIC contends, both the apportionment rule [*9] and the fact that the ASIC policy provided benefits greater than the LLPE, mean that any overlapping coverage was not unnecessarily duplicative.

Wahl, in contrast, argues that the policy provisions should be read in such a way that the ASIC policy never came into effect-that it automatically terminated at inception. Wahl's theory is based on a provision of the ASIC policy providing for it to terminate when alternate insurance is in place; Wahl contends the LLPE constituted such alternate insurance. [4] Wahl further argues that ASIC's arguments fail as a factual matter because EMC did not act to obtain the binder or the ASIC policy until quite sometime *after* the Farmer's policy had expired. Wahl contends the ASIC coverage was only "backdated" to the day that the Farmer's policy expired. As a result, Wahl contends, EMC post-hoc provided unnecessary insurance for at *least* the period of time between the expiration of the Farmer's policy and the *actual* date the ASIC, binder was obtained.

> 4    ASIC contends that the provision on which Wahl relies only contemplates the ASIC policy terminating upon a subsequent acquisition of replacement insurance. Although such a reading may at first blush appear [*10] more natural, this is another interpretation issue not subject to determination at the pleading stage. ASIC contends that the provision on which Wahl relies only contemplates the ASIC policy terminating upon a *subsequent acquisition* of replacement insurance. Although such a reading may at first blush appear more natural, this is another interpretation issue not subject to determination at the pleading stage.

ASIC responds to this argument by offering a document it contends is a copy of the binder that was originally attached to a letter to Wahl submitted as Exhibit D to the FAC. Wahl objects that the binder is not adequately authenticated for it to be considered on a motion to dismiss. Whether considered or not, it does not resolve the factual question of when EMC acted to procure the

ASIC policy. The binder states an "effective date" that is simultaneous with the expiration of the Farmers' policy, but nothing about it rules out the possibility that it was backdated. [5]

> 5   Indeed, were the binder to be considered as urged by ASIC, it would appear to raise *additional* factual questions related to timing. The Exhibit D cover later, dated April 3, 2006, explained that the 60 day binder "is [*11] now 30 days old" and warned Wahl that unless she provided proof of acceptable alternate coverage, EMC would obtain a one-year policy, paid for through her escrow account. The copy of the binder ASIC contends was attached to that letter shows that it had *already* expired, on March 28, 2006.

Accordingly, even though policy interpretation issues largely present questions of law, ASIC has failed to show that the legal result of the interaction between the two policies can be determined at this juncture in the proceedings. The motion to dismiss will therefore be denied as to all claims other than the seventh claim for relief, brought under the California Consumer Legal Remedies Act. ("CLRA").

That claim presents a different issue. The question of whether insurance contracts are subject to the CLRA *at all* is presently pending before the California Supreme Court. *See Fairbanks v. Superior Court, 154 Cal. App. 4th 435, 64 Cal.Rptr.3d 623 (Cal.App. 2007), petition for review granted, 68 Cal. Rptr. 3d 273, 171 P.3d 1 (2007).* Regardless of how that court may eventually decide the

issue, however, Wahl has not alleged facts sufficient to state a claim within the CLRA, which regulates acts committed in connection with "an agreement between [*12] a consumer and any other person." *Cal. Civ. Code §§ 1770(a), 1761(e).* The code defines "consumer" as an individual who seeks or acquires household services. *Cal. Civ. Code § 1761(d).* While as noted above, the facts as alleged are sufficient to give Wahl standing to claim that premiums were paid with her money and that those premiums should be returned to her, that does not transform the transaction into one within the definitions of the CLRA. Accordingly, that claim will be dismissed. Although it is not apparent how the claim defect can be cured through amendment, because this is a first motion to dismiss, Wahl may attempt to amend the seventh claim for relief within 20 days of the date of this order, if in good faith she believes additional facts would address the issue set out herein.

## V. CONCLUSION

The motion to dismiss is denied, except as to the seventh claim for relief. Wahl may amend that claim within 20 days of the date of this order.

IT IS SO ORDERED.

Dated: 6-16-08

/s/ Richard Seeborg

RICHARD SEEBORG

United States Magistrate Judge

2008 U.S. Dist. LEXIS 53313, *

**PAMELA TILLMAN, Plaintiff, v. U.S. ENERGY SAVINGS CORP., Defendant.**

**08 C 1641**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION**

*2008 U.S. Dist. LEXIS 53313*

**July 14, 2008, Decided
July 14, 2008, Filed**

**COUNSEL:** [*1] For Pamela Tillman, Plaintiff: Arthur S. Gold, LEAD ATTORNEY, Gold & Coulson, Chicago, IL.

For U.S. Energy Savings Corporation, Defendant: Martin W. McManaman, LEAD ATTORNEY, Kevin J. Clancy, Lowis & Gellen, Chicago, IL; Ethan F Hayward, Lowis & Gellen, LLP, Chicago, IL.

**JUDGES:** Blanche M. Manning, United States District Judge.

**OPINION BY:** Blanche M. Manning

**OPINION**

**MEMORANDUM AND ORDER**

Plaintiff Pamela Tillman, on behalf of herself and a putative class, contends that defendant U.S. Energy Savings defrauded her and unjustly enriched itself in violation of Indiana and Illinois law by convincing her to enter into a five-year fixed rate contract to provide gas to her home in Indiana. U.S. Energy Savings has moved to dismiss Ms. Tillman's complaint, contending that it fails to allege fraud with the necessary degree of specificity and that Ms. Tillman's extracontractual claim of unjust enrichment fails as a matter of law because she signed a contract with U.S. Energy Savings. For the following reasons, Ms. Tillman's claims on behalf of a putative class of consumers seeking relief under the Illinois Consumer Fraud Act are dismissed as she lacks standing to pursue these claims, her fraud claim is dismissed without prejudice [*2] due to lack of specificity, and her unjust enrichment claim is dismissed with prejudice as it fails to state a claim for which relief may be granted.

**Background**

Ms. Tillman is a resident and citizen of Indiana. On August 17, 2007, she entered into a five-year contract with Indiana Energy Savings, which does business under the name U.S. Energy Savings, to supply natural gas to her home at a fixed price per therm, as opposed to a variable rate. Ms. Tillman alleges that she switched to a fixed rate plan because she was told she would save money compared with her prior provider, Northern Indiana Public Service Company ("NIPSCO"). Specifically, according to Ms. Tillman, U.S. Energy Savings showed her a chart which caused her to believe that U.S. Energy Saving's fixed rate plan was less than NIPSCO's rate over time. Ms. Tillman, however, ended up paying substantially more under the fixed rate plan than she had under her variable rate with her prior provider. [1]

> 1   The complaint also contains numerous allegations about incorrect statements made by unspecified people to unspecified customers at unspecified times, including claims that the customers were told that: (1) they would save money and be [*3] protected against increases in gas prices by switching to U.S. Energy Savings; (2) the U.S. Energy Savings sales representatives actually worked for People's Gas or Nicor; and (3) the Illinois Commerce Commission sent out the U.S. Energy Savings sales representatives. In addition, the complaint alleges that unspecified customers were not told by unspecified people that the contracts with U.S. Energy Savings were for five years and could only be terminated early if the customers paid a sizable termination fee. The complaint also alleges that unspecified people convinced unspecified customers at unspecified times that the U.S. Energy Savings gas was a good deal by comparing the natural gas to the rising prices of gasoline. Finally, the complaint alleges that U.S. Energy Savings trains its salespeople to tell customers that their gas prices will not rise over time.

The complaint's attachments include Ms. Tillman's contract with U.S. Energy Savings. The contract provides, among other things, that "[t]he Agreement is the entire agreement between the parties. No handwritten alterations to these terms and conditions or the Price are valid or binding. Customer agrees that Customer did not

reply [*4] on any oral representations or any marketing material other than such as are also reflected in writing herein." Complaint at Ex. A, p.2. It further provides that "[t]he Agreement and any renewal or amendment hereof shall be determined in accordance with the laws of the State of Indiana." *Id.* at Ex. A, p.2A.

Dissatisfied with her gas prices and the fact that she was locked into a five-year contract with U.S. Energy Savings unless she paid a hefty cancellation fee, Ms. Tillman filed a two-count complaint based on the Class Action Fairness Act and *Rule 23*, contending that the amount in controversy for all members of the putative class exceeds $ 5,000,000. In Count I, she contends that U.S. Energy Savings violated Indiana and Illinois' consumer fraud statutes, and in Count II, she asserts that U.S. Energy Savings has been unjustly enriched.

**Choice of Law**

Choice of law came immediately to mind when the court reviewed the pleadings in this case. The parties discuss the applicability of both Indiana and Illinois law and do not opine on the law applicable to Ms. Tillman's extracontractual claims. Choice of law is normally a threshold issue decided at the inception of a case. Nevertheless, as [*5] discussed below, the relevant Illinois and Indiana law is similar, so in the interests of expediency, the court will consider the issues currently briefed by the parties. The court trusts that the parties will address this issue (as well as the propriety of venue in Illinois) in future filings.

**Standing**

Ms. Tillman's standing to raise claims based on an Illinois statute is questionable as she is an Indiana citizen who never had any dealings with U.S. Energy Savings in Illinois. Ms. Tillman asserts that consideration of this issue is premature because it is possible that the court could certify a class containing Illinois citizens, despite the existence of another suit pending in Illinois which arguably addresses such a claim. *See People v. Illinois Energy Savings Corp.,* No. 08 CH 4913, Circuit Court of Cook County.

A court may defer consideration of Article III standing until after it rules on a motion to certify a class where "class certification issues are . . . logically antecedent to Article III concerns, and themselves pertain to statutory standing." *Payton v. County of Kane, 308 F.3d 673, 680 (7th Cir. 2002), quoting Ortiz v. Fibreboard Corp., 527 U.S. 815, 831, 119 S. Ct. 2295, 144 L. Ed. 2d 715 (1999)* (in an asbestos [*6] class action, the determination of whether the named plaintiffs had standing to bring claims on behalf of exposure-only class members should come after the issue of class certification had been de-

termined). Here, however, it is clear that Ms. Tillman could never be a class representative of a class consisting of Illinois citizens, as the Illinois Supreme Court has held that "a plaintiff may pursue a private cause of action under the Consumer Fraud Act if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co., 216 Ill.2d 100, 187, 835 N.E.2d 801, 296 Ill. Dec. 448 (Ill. 2005).*

Ms. Tillman is an Indiana citizen whose dealings with U.S. Energy Savings occurred exclusively in Indiana. This means that according to the Illinois Supreme Court, she could never assert a claim under the Illinois Consumer Fraud Act. Ms. Tillman has thus failed to convince the court that there is a colorable basis for her claim that she could serve as a class representative for Illinois citizens raising claims under the Illinois Consumer Fraud Act. Because the class certification issues vis-a-vis standing in this case are clear, they are not logically antecedent [*7] to Article III concerns and the court may consider Article III standing prior to class certification.

Accordingly, because Ms. Tillman could never be a member of a class raising claims under the Illinois Consumer Fraud Act, she cannot pursue these claims. Her request for relief under the Illinois Consumer Fraud Act is thus stricken due to her lack of standing. The court reserves the right to revisit this decision as warranted if other class representatives are added to this case.

**Fraud**

Because a class has not been certified, the court must consider whether Ms. Tillman's complaint states a colorable claim of relief owed to her based on specific events that happened to her. Thus, the court will not consider the numerous allegations in the complaint which do not relate to Ms. Tillman personally. Ms. Tillman contends that U.S. Energy Savings violated the Illinois Consumer Fraud and Deceptive Business Practices Act, *815 ILCS § 505/1 et seq.,* and the Indiana Deceptive Consumer Sales Act, *Ind. Code 24-5-0.5-1,* by inducing her to enter into a contract for natural gas at a fixed rate. [2] As discussed above, Ms. Tillman lacks standing to seek relief under the Illinois Consumer Fraud Act. The court [*8] thus turns to Indiana's similar statute.

> 2    The contract contains a choice of law provision specifying that Indiana law will apply. *See* Complaint at Ex. A, p.2A. However, it limits the application of Indiana law to questions of contract interpretation. *See id.* ("[t]he Agreement and any renewal or amendment hereof shall be determined in accordance with the laws of the State of Indiana"). Thus, the choice of law provision does

2008 U.S. Dist. LEXIS 53313, *

not necessarily foreclose reliance on another state's laws for extracontractual claims.

With respect to Indiana law, Ms. Tillman appears to be asserting that U.S. Energy Savings is liable for a "scheme, artifice, or device with intent to defraud or mislead." *Ind. Code 24-5-0.5-2.* [3] The parties agree that a fraud claim -- regardless of which state's statute is at issue -- must be pleaded with specificity. This is correct: *Rule 9(b)* requires the "who, what, when, where, and how" of the circumstances of the fraud or mistake. *Strohmaier v. Yemm Chevrolet, 211 F. Supp. 2d 1036, 1044 (N.D. Ill. 2001); Fed. R. Civ. P. 9(b)* ("in all averments of fraud or mistake, the circumstances constituting fraud or mistakes should be stated with particularity"). Thus, it is well-established [*9] that a plaintiff alleging fraud must plead "the identity of the person making the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Bankers Trust Co. v. Old World Republic Ins. Co., 959 F. 2d 677, 683 (7th Cir. 1990).*

> 3   In the interests of completeness, the court notes that Illinois' statute is similar. To prevail on her claim based on Illinois' consumer fraud statute, Ms. Tillman "must establish that: (1) the defendant undertook a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of trade and commerce; (4) actual damage to the plaintiff occurred; and (5) the damage complained of was proximately caused by the deception." *Davis v. G.N. Mortg. Corp., 396 F.3d 869, 883 (7th Cir. 2005).*

Ms. Tillman's complaint largely consists of general statements about what other unspecified people were purportedly told, at unspecified times, at unspecified places, by unspecified people. This is not enough to support a fraud claim brought by Ms. Tillman. Similarly, Ms. Tillman's argument that she need not plead reliance [*10] because U.S. Energy Savings' employees used a script when speaking to her does not transform her general allegations into specific ones. Reliance is not part of the "who, what, when, where, and how" of the alleged fraud.

Essentially, Ms. Tillman is attempting to proceed with a fraud claim that is supported by conclusory claims about what may have happened to other, unnamed people. At this point in the proceedings, however, she is the only plaintiff and to survive a motion to dismiss and proceed forward, she must plead fraud with respect to herself and with specificity. Accordingly, U.S. Energy Savings' motion to dismiss Ms. Tillman's fraud claims for lack of specificity is granted.

**Unjust Enrichment**

U.S. Energy Savings asserts that Ms. Tillman's unjust enrichment claim fails as a matter of law because the parties entered into a contract governing the transactions at issue. Under both Illinois and Indiana law, "when the rights of parties are controlled by an express contract, recovery cannot be based on a theory implied in law." *SMC Corp. v. PeopleSoft USA, Inc., No. 1:00-CV-01095-LJM-VS, 2004 U.S. Dist. LEXIS 22811, 2004 WL 2538641 at *3 (S.D. Ind. Oct. 12, 2004); see also Prima Tek II, L.L.C. v. Klerk's Plastic Industries, B. V., 525 F.3d 533, 541 (7th Cir. 2008)* [*11] ("Illinois law is again clear: damages for unjust enrichment are not awardable when, as here, there is a contract between the parties on the subject in dispute").

Ms. Tillman contends that her unjust enrichment claim is based on fraud, as opposed to contract or quasi-contract. However, she has not attempted to plead a state law claim of fraud: she has sought damages for unjust enrichment, which is a quasi-contract theory. *See Prudential Ins. Co. of America v. Clark Consulting, Inc., 548 F.Supp. 2d 619, 622 (N.D. Ill. 2008)* (under Illinois law, "[u]njust enrichment is a 'quasi-contract' theory that permits courts to imply the existence of a contract where none exists in order to prevent unjust results"); *Blue Frog Mobile NV Inc. v. Navicomm LLC, No. 1:06-CV-1215-JDT-TAB, 2007 U.S. Dist. LEXIS 83243, 2007 WL 3334793, at *2 (S.D. Ind. Nov. 8, 2007)* (under Indiana law, "the existence of an express contract precludes application of quantum meruit because a contract provides a remedy at law" so a plaintiff who did not enter into a contract with the defendant could pursue an unjust enrichment claim).

Ms. Tillman attached the contract she signed with U.S. Energy Savings to her complaint, and the heart of the complaint is [*12] that Ms. Tillman was allegedly defrauded when she agreed to sign the contract at issue. Moreover, Ms. Tillman contends that she was damaged by the fixed prices for gas listed in the contract. She thus appears to be attempting to avoid the contract because she now believes it is unfair. Ms. Tillman's complaint, as it is currently worded, thus sounds in contract or quasi-contract and, in any event, she has clearly entered into a contract with U.S. Energy Savings. She thus cannot pursue an unjust enrichment claim. Accordingly, Count II is dismissed with prejudice.

**Conclusion**

U.S. Energy Saving's motion to dismiss [# 13] is granted in part and denied in part. Specifically, Ms. Tillman's claims on behalf of a putative class of consumers seeking relief under the Illinois Consumer Fraud Act

2008 U.S. Dist. LEXIS 53313, *

are dismissed without prejudice as she lacks standing to pursue these claims, her fraud claim based on the Indiana Deceptive Consumer Sales Act is dismissed without prejudice due to lack of specificity, and her unjust enrichment claim is dismissed with prejudice as it fails to state a claim for which relief may be granted. In light of these rulings, the court will not reach U.S. Energy Saving's request that [*13] this court stay proceedings seeking relief under the Illinois Consumer Fraud Act under the *Colorado River* abstention doctrine. Ms. Tillman may, consistent with this order and counsel's Rule 11 obligations, file an amended complaint by August 11, 2008.

DATE: July 14, 2008

/s/ Blanche M. Manning

Blanche M. Manning

United States District Judge