IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GRISSELLE RAMOS, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PLAYTEX PRODUCTS, INC., RC2 CORPORATION, LEARNING CURVE BRANDS, INC., and MEDELA, INC.,<br><br>Defendants. | No. 08 CV 2703<br><br>Judge Joan H. Lefkow |
| DINA SCALIA, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PLAYTEX PRODUCTS, INC., RC2 CORPORATION, LEARNING CURVE BRANDS, INC., and MEDELA, INC.,<br><br>Defendants. | No. 08 CV 2828<br><br>Judge Joan H. Lefkow |
| JESSICA SMITH, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PLAYTEX PRODUCTS, INC., RC2 CORPORATION, LEARNING CURVE BRANDS, INC., and MEDELA, INC.,<br><br>Defendants. | No. 08 CV 3352<br><br>Judge Joan H. Lefkow |

**MEMORANDUM OPINION AND ORDER**

On May 9, 2008, plaintiff Grisselle Ramos filed a complaint on behalf of herself and a putative class of other similarly situated individuals against defendants Playtex Products, Inc. ("Playtex"), RC2 Corporation ("RC2"), Learning Curve Brands, Inc. ("Learning Curve"),[1] and Medela, Inc. ("Medela") (collectively, "defendants") in case No. 08 C 2703 (the "*Ramos* Action").  Subsequently, plaintiffs Dina Scalia and Jessica Smith each filed separate but essentially identical putative class actions against the same defendants, in cases Nos. 08 C 2828 (the "*Scalia* Action") and 08 C 3352 (the "*Smith* Action"), respectively.  On June 10 and 27, 2008, the court granted the parties' motions to reassign and consolidate the *Scalia* and *Smith* actions with the *Ramos* action.

Plaintiffs[2] allege that they each purchased one or more of a certain type of product from the defendants:  coolers/carrying cases constructed from vinyl plastic that are made for storing breast milk ("cooler carriers").[3]  Plaintiffs allege that the vinyl plastic from which these products were constructed contains lead.

According to the complaints, the Center for Environmental Health ("CEH"), an environmental group based in California, determined that defendants' cooler carriers contained high levels of lead and recommended that parents discard the vinyl coolers and vinyl cases used for storing milk, or other infant products.  Plaintiffs further allege that, despite the CEH's report,

---

[1] According to plaintiffs' complaints, Learning Curve is a subsidiary of RC2.  *E.g.*, Ramos Compl. ¶ 11.

[2] References to "plaintiffs" refer to plaintiffs generally, including those in the *Ramos*, *Scalia*, and *Smith* Actions.

[3] Plaintiffs identify these products as (a) "a vinyl cooler for storing breast milk made by Medela," (b) "a carrying case for a First Years 'Natural Transitions' breast pump made by RC2," and (c) "a Playtex 'Fridge to Go' vinyl baby bottle cooler."  Ramos Compl. ¶ 1.

defendants have not offered to reimburse plaintiffs or the class for the costs of the cooler carriers. Plaintiffs note, however, that "[a]t one time, Defendant (Medela) offered to replace the product, but only at some undetermined date." Ramos Compl. ¶ 5.

Plaintiffs assert the same claims against all three defendants: unfair and deceptive acts and practices (Count I), breach of implied warranty of merchantability (Count II), negligence (Count III), and unjust enrichment (Count IV).

The parties have filed a multitude of motions, many of which concern the same issues or are otherwise redundant. The instant memorandum opinion will address the following motions:

(1) defendant Medela's motion to sever claims against Medela [#26];

(2) defendant Playtex's motion to sever claims against Playtex [#65];

(3) plaintiffs' motion to strike defendant Medela's answers and defenses [#43];

(4) defendant Medela's motion for entry of a case management order pursuant to Rule 16(c)(12) [#46];

(5) defendant Playtex's motion to dismiss plaintiffs' complaint for lack of standing or, in the alternative, for more definite statement [#62];

(6) defendants RC2 and Learning Curve's motion to dismiss plaintiff's class action complaints [#68]; and

(7) plaintiffs' motion for leave to file their consolidated amended complaint [#86].

All of these motions except for the last, which was noticed for presentment on August 28, 2008, appear to be fully briefed.

I.     **Defendant Medela's Motion to Sever Claims Against Medela**

Medela has moved pursuant to Rules 20 and 21 of the Federal Rules of Civil Procedure to sever the claims against Medela from plaintiffs' claims against the other defendants. The other defendants have filed responses in support of Medela's motion, requesting that the claims against them also be severed from those against the other defendants.[4] Additionally, Playtex has separately filed its own motion to sever.

Under Rule 20, multiple defendants may be joined in one action if both (a) the plaintiffs' claims against them "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences," *and* (b) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Rule 21 provides that "[m]isjoinder of parties is not a ground for dismissing an action," but that "the court may . . . sever any claim against a party." Fed. R. Civ. P. 21.

Medela contends that the claims against it are not properly joined with the claims against the other three defendants—RC2, Learning Curve, and Playtex—and that the plaintiffs "indiscriminately lump[ed] together all claims against all defendants." Dkt. No. 28, at 1. First,

---

[4] On June 23, 2008, defendants RC2 and Learning Curve filed a response in support of Medela's motion to sever claims and requesting that the claims against them be severed from the claims against Medela and Playtex. Dkt. No. 41. On the same day, Playtex also filed a separate response in support of Medela's motion to sever and indicated its intent to file its own separate motion to sever. Dkt. No. 42.

Medela argues that it is unrelated to the other defendants and that plaintiffs' claims[5] against Medela are not logically connected to the claims against the other defendants:

> Defendants manufacture different products, have different marketing, and have different purchasers who have different children. Thus key factual and legal issues, such as whether there is exposure to lead, causation, and damages will be different for each defendant, each product, and each plaintiff.

Dkt. No. 28, at 1. Second, Medela argues that plaintiffs' claims against it do not raise any questions of law or fact that are common to all the parties.

In response, plaintiffs argue that their claims against all defendants arise from logically related transactions and occurrences and will require overlapping proof and duplication of testimony. Dkt. No. 49, at 6–7 (citing 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1653 (3d ed. 2008) ("[C]ourts are inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and to the court.")). In support of this point, plaintiffs cite their allegations that (1) all of the defendants sold cooler carriers tainted with lead; (2) defendants failed to disclose the fact that their cooler carriers contained lead; (3) defendants' nondisclosure of the lead content constitutes a material omission; (4) plaintiffs have been injured by the exposure or risk of exposure to lead from the cooler carriers sold by

---

[5] This motion was filed before the *Scalia* and *Smith* Actions were consolidated with the *Ramos* Action, and thus refers only to the claims brought by Ramos on behalf of herself and others similarly situated. Because the complaints filed in each of the three cases are essentially identical and are now consolidated, the court will construe this motion as pertaining to all three actions and refer generally to "plaintiffs' claims," rather than differentiating between the three complaints.

defendants; and (5) CEH found the cooler carriers sold by each of the defendants to have high lead content. Dkt. No. 49, at 7.

None of the allegations cited by plaintiffs, however, show that their claims against the various defendants arise from a common transaction, occurrence, or series of transactions or occurrences, as required by Rule 20(a)(2). Indeed, none the allegations indicate that there was any logical relationship between each defendant's production, marketing, or sales of the cooler carriers;[6] rather, plaintiffs' allegations suggest merely that each defendant manufactured, marketed, and sold similar products and engaged in similar, as opposed to related, conduct. *See DIRECTV, Inc.* v. *Delaney*, No. 03 C 3444, 2003 WL 24232530, at *4 (N.D. Ill. Nov. 20, 2003) ("[B]ecause each defendant made different purchases and none of the named defendants is alleged to have acted in connection with any other, we agree . . . that the claims against these defendants are not logically related."). Likewise, although the fifth allegation indicates that CEH made similar findings regarding the lead content of each of the defendants' products, CEH is an independent third-party that was not directly involved in the central transactions and occurrences at issue in this case.

The allegations cited by plaintiffs do highlight, however, a number of the key factual issues presented in this case. For example, in order to prevail against Medela, plaintiffs will

---

[6] This statement is, of course, not applicable as between RC2 and Learning Curve, because those two defendants have a parent–subsidiary relationship. (Learning Curve, unlike the other three defendants, is not alleged to have manufactured any of the products at issue in this litigation, but may be involved with the licensing and distribution of RC2's products. *See* Ramos Compl. ¶ 1; Dkt. No. 28, at 2.) Rather than restating this distinction throughout this analysis, the court will assume for the sake of simplicity that the reader understands this minor exception to the general proposition that defendants are separate and independent from one another.

have to prove, among other things, that (1) Medela sold cooler carriers that contained lead; (2) Medela failed to disclose the fact that its product contained lead; (3) Medela's nondisclosure of the lead content constitutes a material omission; and (4) plaintiffs have been injured by exposure or risk of exposure to lead from the cooler carriers sold by Medela. As in *Directv, Inc.* v. *Delaney*, "The jury's resolution of these fact-specific questions as to a given defendant is completely independent of its tasks in answering those questions with regard to the other defendants." *Id.*

Plaintiffs reliance on *MyMail, Ltd.* v. *Am. Online, Inc.*, 223 F.R.D. 455 (E.D. Tex. 2004), is also unpersuasive. That case involved allegations of patent infringement against several different defendants. In rejecting the defendants' argument that joinder is inappropriate where unrelated defendants are alleged to have infringed the same patent, the court held that "such a per se rule . . . elevates form over substance. Such an interpretation does not further the goals of Rule 20, especially for discovery and motion purposes." *Id.* at 457. That court's rejection of such a per se rule, however, offers limited support for plaintiffs' position in this case. First, plaintiffs' claims in this case are for consumer fraud, breach of implied warranty, negligence, and unjust enrichment, not patent infringement as in *MyMail*. Indeed, the court's decision in *MyMail* was based in part on the fact that the court was not yet in a position to determine whether the different defendants' products or methods were substantially similar or dissimilar to one another—similarity being an issue that is a central to patent infringement suits but largely irrelevant to the plaintiffs' claims in this case. *See id.* Here, there is neither a patent nor any other logical link that connects the defendants' different products. Furthermore, in *MyMail*, the court noted that the plaintiffs' complaint included allegations that the defendants utilized shared

resources.  *Id.*  Here, in contrast, there is no indication that defendants shared resources, had a common policy or agreement, or otherwise acted jointly.

Plaintiffs also argue that Medela's motion is premature because severance issues are more appropriately addressed at later stages of litigation, after pretrial proceedings have been completed.  Plaintiffs acknowledge, however, that Rule 21 provides that misjoinder may be addressed "at any time."  Fed. R. Civ. P. 21.  Where as here, improper joinder is clear from the face of the complaint, courts have granted motions to sever at early stages of litigation.  *See, e.g.*, *Fonovisa, Inc.* v. *Does 1–9*, No. 07-1515, 2008 WL 919701, at *6 (W.D. Pa. Apr. 3, 2008); *DIRECTV* v. *Loussaert*, 218 F.R.D. 639, 642–44 (S.D. Iowa 2003).

Because plaintiffs' claims against the different defendants fail to satisfy the same transaction or occurrence requirement, joinder of these claims is improper regardless of whether plaintiffs have satisfied the further requirement of Rule 20(a)(2) that their claims involve a common question of fact or law.  *See Graziose* v. *Am. Home Prods. Corp.*, 202 F.R.D. 638, 641 (2001) ("[T]he law clearly requires that *both* requirements must be met.").  The court must therefore grant Medela's motion [#26] and sever plaintiffs' claims against the different defendants pursuant to Rule 21.  Plaintiff must refile its present claims as three separate complaints:  (1) one against Playtex, (2) one against RC2 and Learning Curve, and (3) one against Medela.

## II.     Defendant Playtex's Motion to Sever Claims Against Playtex

In addition to filling a response in support of Medela's motion to sever, *see* Dkt. No. 42, Playtex filed its own, separate motion to sever.  In light of the court's granting of Medela's motion to sever defendants' claims, Playtex's motion to sever [#65] is moot.


### III. Plaintiffs' Motion to Strike Defendant Medela's Answers and Defenses

Plaintiffs have moved to strike certain portions of Medela's initial responsive pleading for failure to comply with Rule 8 of the Federal Rules of Civil Procedure and Local Rule 10.1. First, plaintiffs argue that Medela's "Preliminary Statement," a four paragraph preface to Medela's answers and defenses, improperly contains "a variety of factual assertions and legal conclusions, much of which is redundant of its denials, and none of which is made in response to any specific allegations by plaintiff." Dkt. No. 43, at 1. Second, plaintiffs argue that in its answers to certain paragraphs of the complaint, Medela incorrectly asserts that "no response is required" to allegations that "state a legal conclusion," *see, e.g.*, Dkt. No. 24, ¶ 13–14. Third, plaintiffs argue that Medela impermissibly asserts that particular documents or legal provisions "speak for themselves" without admitting or denying plaintiffs' allegations concerning those documents or legal provisions, *see, e.g.*, Dkt. No. 24, ¶¶ 38–39. Fourth, plaintiffs contend that Medela's answers are improper where it asserts that plaintiffs' allegations are "vague and ambiguous" and "demands strict proof" of them, *see, e.g.*, Dkt. No. 24, ¶¶ 17–23. Fifth, plaintiffs argue that certain of the defenses that Medela asserts are not proper affirmative defenses. Finally, plaintiffs contend that certain of the defenses asserted by Medela are inadequately pleaded.

In light of defendants' motions to sever, which the court is granting herein, the answers which are at issue in this motion will soon be superseded by amended pleadings. Plaintiffs' motion to strike certain portions of Medela's answer and defenses is thus effectively mooted. Nevertheless, because Medela and the other defendants might otherwise raise the same or similar

issues in their future responsive pleadings, and thus prompt the plaintiffs to file another motion to strike on the same or similar grounds, the court will, in the interest of judicial efficiency, briefly address the concerns raised in plaintiffs' motion.

First, a preliminary statement is generally unnecessary and improper in the context of a defendant's answer to a complaint. Defendants are instructed to limit their answers to "numbered paragraphs each corresponding to and stating a concise summary of the paragraph to which it is directed," as required by Local Rule 10.1.

Second, as Judge Shadur has aptly explained, "declin[ing] to respond to an allegation because it 'states a legal conclusion' . . . violates the express Rule 8(b) requirement that all allegations must be responded to." *State Farm Mut. Auto. Ins. Co.* v. *Riley*, 199 F.R.D. 276, 278 (N.D. Ill. 2001) (Shadur, J.). Defendants are instructed to respond to each paragraph of a complaint in accord with Rule 8(b), by admitting or denying the relevant allegations, and reminded that "[a]n allegation . . . is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6).

Third, defendants are directed to avoid the use of colloquialisms such as "the document speaks for itself." *See State Farm*, 199 F.R.D. at 279 (Shadur, J.) ("This Court has been attempting to listen to such written materials for years (in the forlorn hope that one will indeed give voice)—but until some such writing does break its silence, this Court will continue to require pleaders to employ one of the three alternatives that are permitted by Rule 8(b) in response to all allegations about the contents of documents (or statutes or regulations).").

Fourth, the Rules provide no basis for a defendant to "demand strict proof," *see id.* at 278, and defendants are instructed to avoid such language in their answers.

Finally, defendants are instructed to plead their affirmative defenses in accord with Rule 8(c) and to heed Judge Shadur's advice:

> It is unacceptable for a party's attorney simply to mouth [affirmative defense]s in formula-like fashion ("laches," "estoppel," "statute of limitations" or what have you), for that does not do the job of apprising opposing counsel and this Court of the predicate for the claimed defense—which is after all the goal of notice pleading.

*State Farm*, 199 F.R.D. at 279.

## IV.    Defendant Medela's Motion for Entry of a Case Management Order Pursuant to Rule 16(c)(12)

Medela has moved pursuant to Rule 16(c) for entry of a case management order requiring plaintiffs

> to present, prior to the exchange of initial disclosures or any other discovery, the factual information that constitutes the basis for their allegations and claims of lead exposure, including the following information: (1) the specific Medela product(s) at issue in this case; (2) evidence of actual exposure to lead (i.e., human contact with lead in the product); and (3) the nature and extent of such exposure to lead.

Dkt No. 46, at 1–2.  Such orders are commonly referred to as "*Lone Pine* orders"[7] and have been employed by various state and federal courts.  *See, e.g.*, *Steering Comm.* v. *Exxon Mobil Corp.*, 461 F.3d 598 (5th Cir. 2006); *Bell* v. *Exxon Mobil Corp.*, No. 01-04-00171-CV, 2005 Tex. App. LEXIS 1680 (Tex. Ct. App. 1st Dist. Mar. 3, 2005).  *Lone Pine* orders can be generally described as "pre-discovery orders designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation by requiring plaintiffs to produce some evidence to support a credible claim."  *Steering Comm.*, 461 F.3d at 604 n.2.  Such orders are permitted by Rule 16(c)(2)(L), which provides district courts with broad discretion to "adopt[] special

---

[7] This name refers to an opinion by the Superior Court of New Jersey, *Lore* v. *Lone Pine Corp.*, 1986 WL 637507 (N.J. Super. Law Div. Nov. 18, 1986).

procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." Fed. R. Civ. P. 16(c)(2)(L); *Acuna* v. *Brown & Root Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

The other defendants have filed responses in support of Medela's motion for a case management order. *See* Dkt. No. 79 (Playtex's Response); Dkt. No. 81 (RC2 and Learning Curve's Response). Because Medela's motion is equally applicable to plaintiffs' claims against the other defendants, the court will construe this motion with respect to all of plaintiffs' claims.

In support of its motion, Medela argues that plaintiffs have alleged only that they have data from a third party (CEH) showing that defendants' products contain lead and have not presented a factual basis for their allegations that plaintiffs were actually exposed to lead from defendants' products or injured by such exposure. Without actual exposure to lead, Medela argues, there can be no harm from lead in a product. Medela thus asks that plaintiffs be required to present the factual bases for their allegations of actual exposure and consequent injury.

In response, plaintiffs argue that Medela's motion "rests on a fundamental misunderstanding of what this case is about." Dkt. No. 83 (Pls.' Resp.), at 1. Plaintiffs contend that Medela has attempted to distort plaintiffs' complaint into a toxic tort action when, in fact, it is a consumer fraud case. Plaintiffs assert that their claims are for consumer fraud, breach of implied warranty, negligence, and unjust enrichment, none of which requires a showing of actual exposure to lead from defendants' products. A *Lone Pine* order would thus be pointless and inappropriate, plaintiffs argue, because such orders are used only in toxic tort cases.

To be sure, plaintiffs' complaint contains numerous allegations that children were "exposed" to lead from defendants' products. *See, e.g.*, Ramos Compl. ¶ 6 ("As a result of

Defendant's . . . conduct, . . . children of the class have been significantly exposed to a known hazardous substance."). Nevertheless, plaintiffs explicitly assert that they "do not need to allege actual exposure to lead to establish their claims, and they did not allege actual exposure to lead in their Complaint." Dkt. No. 83 (Pls.' Resp.), at 4. The misunderstanding, according to plaintiffs, stems from Medela's interpretation of the word "expose" in the technical sense of actual exposure rather than according to its natural meaning: "[t]o place in a position where the object spoken of is *open to danger*." Dkt. No. 83 (Pls.' Resp.), at 4 & n.1 (quoting BLACK'S LAW DICTIONARY 579 (6th ed. 1990)) (emphasis added). Plaintiffs illustrate this point by reference to the following statement from their complaint: "As a result of such exposure, the children are at an increased risk of being poisoned by lead." Ramos Compl. ¶ 6. If this sentence were alleging actual exposure to lead, plaintiffs argue, it would make no sense to speak of children being "*at an increased risk* of being poisoned," as such poisoning would already have occurred.

As Medela points out, courts generally use *Lone Pine* orders to require the plaintiffs to detail the existence, manner, and extent of exposure—that is, *actual* exposure—to harmful substances. *See, e.g.*, *Abuan* v. *General Elec. Co.*, 3 F.3d 329 (9th Cir. 1993) (affirming district court's issuance of *Lone Pine* order where class of workers and others alleged harm from toxic chemicals emitted after a transformer ruptured at a power plant); *Baker* v. *Chevron*, No. 05 CV 227, 2007 U.S. Dist. LEXIS 6601 (S.D. Ohio Jan. 30, 2007) (enforcing *Lone Pine* order where class of town residents alleged damage from toxic chemicals emitted by a gasoline refinery); *Bell*, 2005 Tex. App. LEXIS 1680 (affirming lower court's *Lone Pine* order where plaintiffs alleged damage from toxic chemicals released by plant explosion). In the cases cited by Medela,

the case management orders generally require plaintiffs to submit affidavits from qualified experts, such as physicians or scientists, supporting plaintiffs' claims of exposure—meaning, again, *actual* exposure—and consequent harm.  *See, e.g.*, *Abuan*, 3 F.3d 329, 332; *Baker* v. *Chevron*, 2007 U.S. Dist. LEXIS 6601, at *3;  *Bell*, 2005 Tex. App. LEXIS 1680, at *1–2 & n.1.

In their response, the plaintiffs clearly state that they are not alleging actual exposure to lead; rather, they are alleging exposure to the risk of actual exposure to lead.  In light of plaintiffs' representations, the court envisions that little, if any, benefit would result from the issuance of the case management order proposed by Medela, which would require plaintiffs to provide evidence of actual exposure to lead and the nature and extent of such exposure to lead.  The court therefore denies Medela's motion for entry of a case management order [#46].

Before moving on, however, it is worth noting some unusual statements that plaintiffs made in the final section of their response to Medela's motion for a case management order.  In addition to the arguments discussed above, plaintiffs asserted,

> [A] Lone Pine order is unwarranted because continued litigation is unlikely with respect to plaintiffs' claims against Medela.  In plaintiffs' view, Medela's offer to issue a refund or a replacement product to its purchasers is the type of relief requested by Plaintiffs in this case; thus there will not be any efficiency gains from adopting a "*Lone Pine*"-type procedure.  Indeed, Medela's offer renders its motion moot.  Medela's willingness to offer a refund or a lead-free replacement product to its purchasers constitutes a significant benefit to the public.  Accordingly, plaintiffs' counsel intends to file a motion for attorney's fees and costs shortly.

Dkt. No. 83 (Pls.' Resp.), at 6–7.  Plaintiffs thus suggest that their case against Medela has been mooted by Medela's offer to provide refunds or replacement products to purchasers.

In its reply, Medela responds to these comments at some length, arguing that the court "could proceed to dismiss all claims against [Medela] as frivolous or, in Plaintiffs' words, 'moot.'"  Dkt. No. 85 (Def. Medela's Reply), at 3–4.  Medela further argues that, at a minimum,

14

the court should strike all claims for medical monitoring, which plaintiffs requested in their complaint's prayer for relief. Ramos Compl. at 21 (requesting "damages in the amount of monies paid or to be paid for lead testing of the children exposed"). Because the issue of dismissal was raised only on reply, it is not properly before the court on Medela's motion for entry of a case management order. On a similar note, plaintiffs' request for lead testing is primarily an issue of damages, as opposed to an element of any of their claims, and, in any event, need not be addressed on Medela's motion for entry of a case management order.

V.      **Defendant Playtex's Motion to Dismiss Plaintiff's Complaints**

Playtex has moved pursuant to Rules 12(b)(1) and 12(e) of the Federal Rules of Civil Procedure for dismissal of plaintiffs' claims based on lack of standing or, in the alternative, to order plaintiffs to amend their complaints to provide a more definite statement of their claims. Playtex's central argument in support of its motion is that the named plaintiffs do not claim that any of them actually purchased a Playtex product; rather, plaintiffs allege merely that they purchased "one or more" of the three cooler carrier products specified in the complaint, *see* Ramos Compl. ¶¶ 1, 8, each of which was manufactured by a different defendant. Thus, Playtex contends, it is possible that none of the plaintiffs have purchased a Playtex cooler carrier and, therefore, cannot establish that they have suffered an "injury in fact"—an essential element of "the irreducible constitutional minimum of standing." *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)—that is traceable to Playtex's conduct.

In response, plaintiffs argue that they have established an injury fact that is traceable to Playtex's wrongful conduct and that, in any case, Playtex's motion to dismiss is moot in light of plaintiffs' pending motion for leave to file a consolidated amended complaint. Unlike their

original complaints, the amended consolidated complaint that plaintiffs seek leave to file indicates which products were purchased by each of the named plaintiffs.

The court agrees that Playtex's motion is moot—not because of plaintiffs' pending motion for leave to file an amended complaint but because the court is granting Medela's motion to sever, which will require plaintiffs to file three separate complaints for their claims against the different defendants. Playtex's motion [#62] is therefore denied.

## VI.    Defendants RC2 and Learning Curve's Motion to Dismiss Plaintiffs Complaints

RC2 and Learning Curve have moved pursuant to Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss plaintiffs' complaints based on lack of standing or failure to state a claim upon which relief may be granted. Their central argument in support of the motion to dismiss, much like that of Playtex, is that none of the named plaintiffs claims that she actually purchased an RC2 or Learning Curve product. Thus, RC2 and Learning Curve contend, plaintiffs lack standing, as they cannot establish that they have suffered an injury in fact that is traceable to RC2 or Learning Curve's conduct. RC2 and Learning Curve further argue that plaintiffs' consumer fraud claims should be dismissed for failure to comply with the heightened pleading requirements of Rule 9(b), and that plaintiffs also fail to state a claim with respect to their breach of implied warranty, negligence, and unjust enrichment counts.

RC2 and Learning Curve's motion to dismiss, like that of Playtex, is moot because the court is granting Medela's motion to sever, which will require plaintiffs to file three separate complaints for their claims against the different defendants. RC2 and Learning Curve's motion [#70] is therefore denied.

**VII.     Plaintiffs' Motion for Leave to File Their Consolidated Amended Complaint**

Plaintiffs have moved to file an amended complaint which consolidates their three original complaints into a single complaint and adds a number of new allegations. As discussed above, the court is granting Medela's motion to sever, which will require plaintiffs to file three separate complaints for their claims against the different defendants. Plaintiffs' motion [#86] is therefore denied as moot.

### CONCLUSION AND ORDER

For the reasons set out above, the court hereby enters the following orders:

(1) Defendant Medela's motion to sever [#26] is granted. Plaintiff must refile its present claims as three separate complaints: (a) one against Playtex, (b) one against RC2 and Learning Curve, and (c) one against Medela.

(2) Defendant Playtex's motion to sever claims against Playtex [#65] is denied as moot.

(3) Plaintiffs' motion to strike defendant Medela's answers and defenses [#43] is denied as moot.

(4) Defendant Medela's motion for entry of a case management order [#46] is denied.

(5) Defendant Playtex's motion to dismiss [#62] is denied as moot.

(6) Defendants RC2 and Learning Curve's motion to dismiss [#68] is denied as moot.

(7) Plaintiffs' motion for leave to file their consolidated amended complaint [#86] is denied as moot.

Dated: August 27, 2008        Enter: _____
                                     JOAN HUMPHREY LEFKOW
                                     United States District Judge